# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| In re: ) | |
| ) | Case No. 3:19-bk-1971 |
| CAPSTONE PEDIATRICS, PLLC, ) | |
| ) | Chapter 11 |
| Debtor. ) | |

**EXPEDITED MOTION TO APPOINT
JIM DAVIS AS CHIEF RESTRUCTURING OFFICER AND
CHIRON ADVISORY SERVICES LLC AS TURNAROUND ADVISORY FIRM**

Capstone Pediatrics, PLLC ("Debtor"), pursuant to Bankruptcy Rule 9014 and LBR 9075-1, hereby files this Expedited Motion (the "CRO Motion") requesting that the Court authorize the Debtors' employment and retention of Jim Davis as the Chief Restructuring Officer and Chiron Advisory Services, LLC ("Chiron") as turnaround advisory firm in this chapter 11 case. The Debtor offers the following in support of this Motion:

**COMPLIANCE WITH LBR 9075-1**

1. <u>Summary of Relief Requested</u>. The Debtor requests authorization from the Court to retain Jim Davis as the Chief Restructuring Officer ("CRO") and Chiron as the turnaround advisory firm on the terms set forth herein below.

2. <u>Basis for Urgency</u>. Contemporaneously herewith, the Debtor has filed a motion seeking approval of debtor-in-possession financing and use of cash collateral (the "DIP Motion"). The DIP Motion provides that the proposed DIP financing is conditioned on the Debtor retaining an independent CRO, who is not removable by the Debtor's current management without Court Order. The Debtor will be unable to operate in the ordinary course and pay its current expenses

without the proposed DIP financing. Thus, the Debtor must be authorized to retain a CRO, on and emergency basis, in order to comply with the DIP Financing terms.

3. <u>Notice</u>. This Motion has been served on (i) all parties consenting to electronic service via the Courts CM/ECF system, (ii) the Office of the United States Trustee via email, (iii) the 20 largest unsecured creditors and all secured creditors via email, fax or U.S. Mail. This Motion has also been emailed to all parties asserting a security interest in the debtor's collateral.

4. <u>Suggested Hearing Date</u>. The Debtor requests a hearing day of Tuesday, April 2, 2019 at 10:00 a.m. in Court Room 1, Customs House, 701 Broadway, Nashville, Tennessee 37203.

5. <u>Supporting Argument</u>. Debtor supports this Motion as set forth below.

## SUMMARY OF RELIEF REQUESTED

6. The Debtor's filing of this Chapter 11 Bankruptcy case represents its second filing in this Court. Prior to filing this petition, the Debtor has worked closely with its former pre-petition lender and currently proposed debtor-in-possession lender, CDS Business Services, Inc. d/b/a Newtek Business Credit ("CDS") and the United States of America, acting through its agency the Internal Revenue Service (the "IRS"), to formulate a plan to finance the Debtor's business while the Debtor seeks to achieve the sale of its assets through §363 of the Bankruptcy Code (the "363 Sale"). One of the requirements of CDS and the IRS is that the Debtor retain an independent CRO to manage the Debtors business through the Chapter 11 process and help the Debtor achieve a sale of its assets. Prior to the Petition date, the Debtor had engaged Chiron and Mr. Davis to help the Debtor identify potential buyers for the business. Based on Chiron's and Mr. Davis' recent experience with the Debtor, Chiron and Mr. Davis's experience in the healthcare and turnaround industries, and the agreement of CDS and the IRS, the Debtor believes that Chiron and Mr. Davis are the ideal candidates to serve as the turnaround advisory firm and CRO in this case.

## INTRODUCTION

7. On March 28, 2019 (the "**Petition Date**"), the Debtor commenced this case by filing a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

8. The Debtor is in possession of its property and is managing its affairs as a debtor in possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code. No Trustee has been appointed, nor has a committee of unsecured creditors been appointed.

9. This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1334. The subject matter of this motion is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(A). Venue is proper pursuant to 28 U.S.C. § 1408.

## BACKGROUND

10. This case represents a second petition by Debtor in this Court, the prior Bankruptcy Case, case no. 3:15-bk-09031 (the "**First Bankruptcy Case**"), having been voluntarily dismissed by Debtor on May 21, 2018 via a structured dismissal that maintained certain creditor liens and priorities thereof, as discussed in more detail in the motion seeking approval of debtor-in-possession financing filed contemporaneously herewith.

11. Debtor has filed the instant case because, notwithstanding its principals' intentions to effectuate a quick sale or obtain an equity infusion outside of bankruptcy, those efforts have been unsuccessful to date. Beginning with the filing of two large tax liens by the IRS within days after dismissal of the First Bankruptcy Case, and the subsequent termination of the line of credit from CDS shortly thereafter, the Debtor's ability to achieve a reorganization or sale outside of bankruptcy have been greatly curtailed. The Debtor and its principals now recognize that, particularly in light of the substantial IRS tax liens, a sale of assets free and clear of liens in bankruptcy is likely its only viable option.

12. The Debtor does not have the liquidity to survive for any period of time without post-petition financing and has filed the DIP Motion in order to obtain the necessary financing to support this case.

13. One of the requirements of the DIP financing proposed in the DIP Motion is the appointment of an independent CRO not removable by Debtor's current management without Court order. Thus, the Debtor is filing this motion to retain the CRO in compliance with the DIP Motion. Furthermore, the Debtor recognizes that it needs the CRO's guidance and expertise to assist the Debtor during this case and in the pursuit of a sale of its assets in short order, which is also required under the proposed DIP financing.

## SCOPE OF CRO AND CHIRON RESPONSIBILITIES

A. **Description of Services**.

    a. <u>CRO Duties and Powers</u>. Jim Davis shall provide services in the role of CRO of the Debtor, including supervision and oversight of the daily operation of the Debtor, preparation of a plan of reorganization, oversight of information preparation on the Debtor for use by prospective lenders including a debtor-in-possession ("DIP") lender, investors, and buyers, and negotiation with third-party exit financing sources and/or prospective purchasers in connection with a 363 Sale (and control over all aspects thereof within the allowable limits of the Bankruptcy Code, as authorized by the Bankruptcy Court). In his capacity as CRO, Mr. Davis will, upon approval by the Bankruptcy Court, have the authority to:

        (i) Open and close bank accounts for the Debtor including separate payroll accounts;

        (ii) Write checks for the Debtor and transfer funds of the Debtor;

(iii) Monitor and insure timely payment of all payroll and other taxes due to applicable taxing authorities;

(iv) Cause the Debtor to modify, amend, terminate and/or enforce any of its any contractual rights;

(v) Cause the Debtor to enter into any agreement or contract that is reasonably necessary to the completion of the 363 Sale or exit financing;

(vi) Cause the Debtor to comply with all Guidelines of the Office of the United States Trustee;

(vii) Cause the Debtor to pursue, settle or compromise any litigation, controversy or other dispute involving the Debtor;

(viii) Make employment-related decisions following consultation with the Debtor's counsel;

(ix) Collect, account for, and pay all taxes as required by applicable law, including 26 U.S.C. §§ 3102 and 3402, and assume responsibility for such tax payments during the course of the CRO's approved engagement, as set forth by applicable law including 26 U.S.C. § 6672;

(x) Cause the Debtor to exercise the Debtor's rights under the Debtor's agreements and other agreements in favor of the Debtor;

(xi) Negotiate and enter into agreements with potential DIP lenders;

(xii) Complete a sale of the Debtor's assets pursuant to 11 U.S.C. § 363 and/or secure exit financing;

(xiii) Act on behalf of the Debtor, as may be specifically ordered by the Bankruptcy Court, including with respect to having the sole authority to write checks, otherwise

make payments, and schedule accounts receivable in official reports filed in the Bankruptcy Court and any other reports provided to relevant stakeholders;

(xiv) Cause the Debtor to prepare one or more plans of reorganization;

(xv) Take all such other acts as may be reasonably necessary and appropriate in the management or operation of the Debtor or its bankruptcy estate;

(xvi) Use additional personnel as may be necessary at its reasonable discretion ("Additional Personnel).

b. <u>Communication with Debtor Lenders and Lessors</u>. In furtherance of the objectives of this Engagement Agreement, the Debtor agrees that its primary lenders and lessors (collectively the "Creditors") in their role as lenders and lessors to the Debtor, will be able to communicate with Mr. Davis in its role as CRO for the Debtor and with Chiron in its role as financial services provider and investment banker. Mr. Davis and Chiron, by and through Mr. Davis, shall have the sole authority to schedule accounts receivable to lenders, including those against which advances are to be requested, and shall have sole authority to request advances from lenders. The Creditors shall have reasonable access to Debtor records and documents that are appropriate for disclosure to the Creditors, including reports generated by the CRO.

### QUALIFICATIONS AND TERMS OF ENGAGEMENT

14. Attached hereto as Exhibit A are the terms of the proposed engagement between the Debtors, Mr. Davis, and Chiron. Mr. Davis has agreed to reduce his customary hourly rate by 30% for this engagement from $535 per hour to $375 per hour for matters within the scope of his employment as CRO and will be assisted by an Analyst or Associate from the Chiron team at a rate of $275 per hour to assist him in analyzing data, preparation of bankruptcy schedules, projecting cash flows and preparing monthly reports and reconciling the thirteen week cash budget

among other required tasks. The primary goal in filing this case is to achieve a sale of all assets pursuant to Section 363 of the Bankruptcy Code. Mr. Davis and Chiron will be leading the sale process for the Debtor and will be compensated for those services based on the results achieved as outlined in the engagement letter. Further Mr. Davis and Chiron have been instrumental in procuring the Debtor-in-Possession financing and will earn a fee upon the closing of the DIP financing.

15. Mr. Davis and Chiron understand that the proposed DIP Lender requires a CRO to ensure that postpetition payroll tax liabilities being accrued to the IRS are paid when and as due by the CRO. In addition, the proposed DIP Lender requires any CRO to agree to assume responsibility for collecting, accounting for, and paying all taxes as required by applicable law, including 26 U.S.C. §§ 3102 and 3402, and assume responsibility for such tax payments during the course of the CRO's approved engagement, as set forth by applicable law including 26 U.S.C§ 6672. Finally, the proposed DIP Lender requires any CRO approved by this Court to have the sole check-writing authority and sole authority to schedule accounts receivable in reports to the proposed DIP Lender on the Debtor's behalf. Mr. Davis and Chiron understand these requirements and agree to be bound thereby if approved by the Court.

**PROPOSED REPORTING OF PAYMENT OF COMPENSATION
AND DISINTERESTEDNESS**

16. The Debtors are seeking to retain Mr. Davis and Chiron pursuant to § 363(b)(1). The Debtors request that Mr. Davis not be required to submit fee applications pursuant to Sections 330 and 331 of the Bankruptcy Code. To maintain transparency and to comply with the protocol applicable to the retention of personnel under Section 363 of the Bankruptcy Code, Mr. Davis and Chiron will file reports of compensation earned and expenses incurred and paid on a monthly basis (the "Monthly Reports") with the Court and provide notice to the Office of the

United States Trustee and counsel to any unsecured creditors committee, the proposed DIP Lender and the IRS. Such reports will (a) summarize the services provided to the Debtors, (b) summarize the compensation earned by Mr. Davis and Chiron (if applicable), and (c) itemize the expenses incurred. Notice for the Monthly Reports will provide for a time period of at least 14 days for objections by parties in interest. All compensation will be subject to review by the Court in the event an objection is timely filed. Further, all compensation outlined in the engagement shall be subject to the Court determining the reasonableness of the fees upon a final request for approval of same to be submitted by Mr. Davis and Chiron.

17. Mr. Davis and Chiron are "Disinterested Persons" for purposes of this engagement. Except as may be set forth in the Declaration of Jim Davis, Chiron has no connection with the debtor, its creditors or other parties in interest in these cases, it is not a creditor of the debtor, does not hold any interest adverse to the debtors estate and believes it is a "Disinterested Person" as that term is defined within § 101 (14) of the Bankruptcy Code. Chiron will supplement its affidavit if additional disclosures are deemed necessary.

## LAW AND ARGUMENT

## MR. DAVIS SHOULD BE EMPLOYED AS CRO PURSUANT TO 11 U.S.C. § 363.

18. The Debtors submit that the retention of Mr. Davis as CRO and Chiron as turnaround advisory firm is proper under section 363 of the Bankruptcy Code. Section 363(b) of the Bankruptcy Code provides, in relevant part, that a debtor-in-possession, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Section 363 of the Bankruptcy Code provides that transactions not in the ordinary course of business must be approved by court order. If a debtor's proposed use of its assets pursuant to section 363(b) of the Bankruptcy Code represents a reasonable

business judgment on the part of the debtor, such use should be approved. *See, e.g.*, *Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) (citing *Fulton State Bank v. Schipper (In re Schipper)*, 933 F.2d 513, 515 (7th Cir. 1991)); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983); *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 175-76 (D. Del. 1991) (courts have applied the "sound business purpose" test to evaluate motions brought pursuant to section 363(b)); *Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct").

19. Bankruptcy courts routinely analyze the propriety of the employment of CROs, restructuring advisors, and restructuring professionals under Section 363, and in doing so have determined that it is an appropriate exercise of business judgment. *See, e.g., In re Copenhave, Inc.*, 506 B.R. 757, 762 (Bankr. C.D. Ill. 2014); *In re Powermate Holding Corp.*, Case No. 08-10498 (Bankr. D. Del. Apr. 15, 2008); *In re DJK Residential, LLC*, Case No. 08-10375 (Bankr. S.D.N.Y. Feb. 25, 2008); *In re Movie Gallery, Inc.* Case No. 07-33849 (Bankr. E.D. Va. Oct. 18, 2007); *In re Am. Home Mortgage Holdings. Inc.*, Case No. 07-11047 (Bankr. D. Del. Sept. 4, 2007); *In re Medicor Ltd.*, Case No. 07-10877 (Bankr. D. Del. Aug. 24, 2007); *In re Calpine Corp.*, Case No. 05-60200 (Bankr. S.D.N.Y. Jan. 17, 2007); *In re ACR Mgmt., LLC*, Case No. 0427848 (Bankr. W.D. Pa. June 16, 2004); *In re Cable & Wireless USA, Inc.*, Case No. 03-13711 (Bankr. D. Del. Jan. 14, 2003); *In re Mirant Corn.*, Case No. 03-46590 (Bankr. N.D. Tex. Sept. 29, 2003); *In re Fleming Cos., Inc.*, Case No. 03-10945 (Bankr. D. Del. June 25, 2003); *In re NRG Energy, Inc.*, Case No. 03-13024 (Bankr. S.D.N.Y. June 2, 2003); *In re Exide Techs., Inc.*,

Case No. 02-11125 (Bankr. D. Del. May 10, 2002); *In re Enron Corp.*, Case No. 01-16034 (Bankr. S.D.N.Y. Mar. 12, 2002).

20. Mr. Davis and Chiron are well-qualified for the proposed engagement. In addition, and importantly, Mr. Davis and Chiron are able to implement a sale process that seeks to maximize the value for this estate. The Chiron team has (i) regularly been involved in large and complex Chapter 11 cases, (ii) worked with management teams, directors, and officers to become fully informed about the history of a company's financial transactions and business model, and (iii) testified in court about its findings with respect to a company's financial position. The retention of Mr. Davis and Chiron permits the Debtors to remain in possession, while at the same time ensuring that all parties in interest have necessary access to all pertinent information related to this Chapter 11 case and provides the safeguards demanded by the DIP Lender and the IRS.

## **REQUEST FOR WAIVER OF BANKRUPTCY RULE 6004(h)**

21. The Debtors respectfully request a waiver of the 14-day stay of effectiveness imposed by Bankruptcy Rule 6004(h) so that the relief requested herein can take effect immediately upon entry of an order approving this motion.

## **CONCLUSION**

WHEREFORE, pursuant to 11 U.S.C. § 363, the Debtors respectfully request the Court to appoint Mr. Davis as CRO and Chiron as a turnaround advisor firm in this bankruptcy case.

Respectfully submitted,

/s/ David W. Houston, IV
David W. Houston, IV (20802)
Emily C. Taube (019323)
BURR & FORMAN LLP

222 Second Avenue South, Suite 800
Nashville, Tennessee 37201
Telephone: (615) 724-3215
Facsimile: (615) 724-3315
dhouston@burr.com
etaube@burr.com
*Counsel for Capstone Pediatrics, PLLC*

## CERTIFICATE OF SERVICE

On March 28, 2019, this document was electronically served on all parties consenting to the Court's CM/ECF system. On March 28, 2019, this document shall be served upon the Debtors' 20 largest unsecured creditors and all parties that have requested notice in this cases pursuant to Federal Rule of Bankruptcy Procedure 2002.

/s/ David W. Houston, IV