# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| In re: ) | |
| ) | Case No: 3:19-bk-1971 |
| CAPSTONE PEDIATRICS, PLLC, ) | Chapter 11 |
| ) | Judge _____ |
| Debtor. ) | |

## DECLARATION OF WINNIE TOLER IN SUPPORT OF DEBTOR'S MOTIONS FOR VARIOUS FIRST DAY RELIEF

The declarant, Winnie Toler, makes the following statement under penalty of perjury:

1. I am the Chief Operating Officer ("COO") of Capstone Pediatrics, PLLC ("Capstone" and/or "Debtor"), and have held said position since October of 2013.

2. As COO of Capstone, I have extensive knowledge of Capstone's operations and financial condition from at least October 2013 to present.

3. On March 28, 2019 (the "Petition Date"), Capstone filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

4. To enable Capstone to conduct the Chapter 11 Case in an efficient manner, Capstone has requested various types of relief in certain "first day motions" (each, a "First Day Motion" and collectively, the "First Day Motions"). The First Day Motions seek relief (a) ensuring the continuation of Capstone's cash management system; (b) providing for the post-petition payment of employee wages in the normal course of business and payroll schedule; (c) providing for the continuation of necessary utility services to Capstone; (d) appointment of a chief restructuring officer and turnaround advisory firm; (e) securing post-petition financing and (f) extension of time for filing schedules and statement of financial affairs.

5. I submit this Declaration (the "Declaration") in support of the First Day Motions. I am familiar with the contents of each First Day Motion (including the exhibits attached thereto) and believe that the relief sought (i) is necessary to preserve the value of Capstone's assets, (ii) is integral to the ongoing operation of the business, and (iii) serves the best interests of Capstone, the estate, creditors and other parties-in-interest.

6. Except as otherwise indicated, all facts set forth in this Declaration are based in my personal knowledge and materials provided by my staff or information obtained from my review of relevant documents. If called upon to testify, I would competently testify to the facts set forth herein.

7. Part I of this Declaration describes Capstone basis for this Chapter 11 filing. Part II sets forth the additional specific facts supporting each of the First Day Motions.

## PART 1

### I. Summary of Basis for Chapter 11 Filing

8. This case represents a second petition by Debtor in this Court, the prior Bankruptcy Case, Case No. 3:15-09031 (the "First Bankruptcy Case"), having been voluntarily dismissed by Debtor on May 21, 2018 *via* a structured dismissal that maintained certain creditor liens and priorities thereof, as discussed in more detail in Debtor's Expedited Motion for Interim and Final Orders Authorizing Debtor to Obtain Post-Petition Financing on a Senior Secured Superpriority Basis Pursuant to 11 U.S.C. § 364 (DE No. 4). That structured dismissal was based on Debtor's representations that it had successfully used the protections of the Bankruptcy Code in the First Bankruptcy Case for maximum benefit by rejecting unprofitable leases and contracts and using the protections of the automatic stay to streamline processes and reduce inefficiencies, thereby curing the issues that had threatened its ability to operate as a going concern on the First

Bankruptcy Case petition date. However, as represented by Debtor in the motion to dismiss the First Bankruptcy Case, certain ever increasing administrative costs to staying in bankruptcy, combined with the fact that the efficiencies achieved could not support a reorganization to be effectuated within the time frame contemplated under § 1129 of the Bankruptcy Code, and the fact that Debtor's principal s were seeking a sale of their membership interests, which sale Debtor believed could more easily be achieved outside the bankruptcy process, warranted dismissal.

9. Debtor has filed the instant case because, notwithstanding its principals' aspirations to effectuate a quick sale outside of bankruptcy after dismissal of the First Bankruptcy Case, those efforts have been unsuccessful.

10. Beginning with the filing of two large tax liens by the IRS within days after dismissal of the First Bankruptcy Case, and the subsequent termination of the line of credit from its senior secured lender shortly thereafter, Debtor's business fortunes have declined consistently since the dismissal of the First Bankruptcy Case. Debtor's principals soon thereafter recognized that, particularly in light of the substantial IRS tax liens, there is no possibility of a sale of the membership equity of Debtor, since those tax liens attach to any newly created accounts receivable of Debtor.

11. Thus, in August of 2018, Debtor realized that it needed to sell is assets rather than membership interest, and in that regard, retained investment banking firm Chiron Financial, LLC ("Chiron") to serve as its exclusive investment banker during the sales process.

12. Unfortunately, Debtor has now realized that potential buyers are wary of attempting to execute an acquisition of Debtor's assets outside the bankruptcy process. Indeed, despite working for a number of months to streamline its operations and prepare for an out-of court restructuring and sale, Debtor has defaulted on certain leases and has subsequently reduced

the number of its locations to amount that is comparable within the industry. In addition, the Debtor has not been able to timely pay various vendors. The arrearages could not be cured, and working out resolutions with the Debtor's creditors could not be accomplished through and out-of-court restructuring.

13. As such, Debtor has realized that the only option left is to effectuate a sale of Debtor's assets free and clear of liens in Bankruptcy. However, a Chapter 7 liquidation of Debtor's assets would not yield nearly as much as would a sale of the Debtor's assets in full as a going concern business. Therefore, a Chapter 11 filing, followed by an expedient § 363 motion, is the only option for securing any material value of Debtor so as to maximize the value of the Debtor's bankruptcy estate, and to provide as much of a return as possible to the Debtor's creditors.

## II. **Overview of Capstone Pediatrics, PLLC**

14. The Debtor is one of the largest independent privately held pediatric practices in the Middle Tennessee region. Its mission to deliver personalized, quality care to improve and maintain its patients' health and wellbeing. The Debtor employs 15 medical professionals, and has between 25,000 and 35,000 patients. In 2017, it experienced gross revenues of $22,817,640.00 and patient visits of approximately 120,000.

### A. **Medical Practice**.

The Debtor's medical practice is primarily comprised of general pediatrics and other specialties.

#### 1. General Pediatrics.

The Debtor is comprised of a general pediatric group that includes board certified pediatricians and certified pediatric nurse practitioners. In addition, the Debtor offers a pediatric

4
Case 3:19-bk-01971    Doc 8    Filed 03/28/19    Entered 03/28/19 16:29:57    Desc Main
Document    Page 4 of 9

hospitalist program with two physician hospitalists and two pediatric nurse practitioner hospitalists. The Debtor's long-term goal is to transform the general pediatric program into a 100% office-based general pediatric practice.

2. <u>Specialties</u>.

The Debtor offers specialists in the areas of Developmental-Behavioral Pediatrics, Audiology-Diagnostics, Behavioral Health, and Hospitalist services.

i. *Developmental-Behavioral Pediatrics*.

The Debtor's behavioral-developmental specialists care for children with developmental difficulties and behavioral changes. The Debtor evaluates each individual patient to determine his/her needs related to the following areas: Attention Deficit Disorder, Attention Deficit Hyperactivity Disorder, cognitive and social developmental delays, Autism, depression and anxiety, learning disorders, delayed speech and language, habit disorders, regulatory disorders pertaining to sleep, or feeding problems, and other behavioral and development problems.

ii. *Audiology*.

The Debtor offers outpatient diagnostic audiology services. This program meets the needs of newborns who have failed their initial hearing screens, children with neurodevelopmental disorders with concurrent hearing problems, and any child with a suspected hearing loss. The Debtor uses state-of-the-art technology to test and treat children with hearing loss. The Debtor works closely with the family, primary care provider, and other professionals to identify and coordinate an individualized treatment plan.

### B. Locations.

The Debtor currently has, or immediately prior to the filing of Chapter 11 had, locations in the Middle Tennessee area at the following locations: (i) Clarksville, (ii) Antioch (Southern Hills), and (iii) Smyrna.

### C. Payors.

Capstone Pediatrics currently has contracts with Commercial, Tricare, and TennCare (Medicaid) payers, and expects to continue receiving payments from AIG, Aetna, Amerigroup, Blue Cross Blue Shield, Champus/Tricare, Cigna, Community Health Alliance, Humana, self-payers, United Healthcare, and United Medical Resources. This list is not exclusive. As of the petition date, the Debtor's accounts receivable total approximately $1.7 million, with over half of such receivables being within 60-day terms.

## PART II

15. Shortly after filing this Chapter 11 Case, several First Day Motions were filed. Approval of each First Day Motion is an important element of its bankruptcy efforts and is necessary to continue operations in the ordinary course of business. Factual information with respect to each First Day Motion is provided below and in each First Day Motion.

**A. Expedited Motion for Interim and Final Orders: (I) Authorizing the Debtor to Obtain Postpetition Financing on a Senior Secured Superpriority Basis Pursuant to 11 U.S.C. § 364, (II) Authorizing Use of Collateral and Granting Adequate Protection Pursuant to 11 U.S.C. §§ 361 and 363; (III) Scheduling Final Hearing Pursuant to Bankruptcy Rule 4001; and (IV) Granting Related Relief ("<u>DIP Loan/Cash Collateral Motion</u>") (Docket No. 4)**

The Debtor requires the use of its cash collateral and DIP loan in order to maintain its business operations and make payments to vendors and employees. The Debtor has to fund its payroll account on April 5, 2019, as well as pay for necessary materials and goods to continue its

operations. A separate affidavit supporting the DIP Loan/Cash Collateral Motion is being submitted in contemporaneously with that motion.

      **B.**     **Expedited Motion for Entry of an Order (I) Deeming Utility Companies Adequately Assured of Payment under § 366 of the Bankruptcy Code; (II) Prohibiting Utility Companies from Altering, Refusing or Discontinuing Utility Services; and (III) Establishing Procedures for Resolving Requests for Additional Assurance ("<u>Utility Motion</u>") (Docket No. 5)**

The Debtor requires uninterrupted utility service to continue its operations. The Debtor seeks only interim relief pursuant to 11 U.S.C. §§ 105 and 366. In connection with the operation of its business, the Debtor obtains electricity, water, telephone, gas, internet and/or other services of this general character (collectively, "Utility Services") from various utility companies (the "Utility Companies"). A list of all, or substantially all, of the Utility Companies that were providing services to the Debtor as of the Petition Date is attached to the Utility Motion as Exhibit A. The relief requested herein is requested with respect to all Utility Companies providing services to the Debtor and is not limited to those listed on Exhibit "A." The Utility Services are essential to the Debtor's operations and, therefore, must continue uninterrupted during the pendency of the Debtor's Chapter 11 case.

      **C.**     **Expedited Motion for Entry of Order Authorizing Maintenance and Use of Existing Bank Accounts, and Cash Management System ("<u>Cash Management Motion</u>") (Docket No. 6)**

The Debtor hereby seeks authority to maintain its "Capstone Pediatrics PLLC Operating Account", its "Capstone Pediatrics PLLC Payroll Account," and the The Debtor further seeks authority to continue to make, receive, and process payments as it did prior to the petition date. The Debtor's system is efficient, transparent, and not prejudicial to any creditors. Changing the Debtor's system for accounting and using cash would be disruptive, cause undue burden, and

increase administrative costs for the Debtor. The Operating Account and Payroll Account must be maintained in order for Debtor to operate its business on an uninterrupted basis.

      **D.**      **Expedited Motion for Authorization to Pay Prepetition Wages, Compensation and Employee Benefits ("<u>Employee</u> Wage <u>Motion</u>") (Docket No. 7)**

The Debtor makes payroll to its workforce in arrears. Therefore, as of its petition filing date, the Debtor owed its workforce for wages accrued prepetition. The Debtor must fund its payroll account on April 4, 2019 to make the April 5, 2019 payroll. Failure to make this payroll on its scheduled date would be a devastating burden to its employees and would greatly harm the Debtor's operations and business and pursuit of the requested sale of its assets, because if employees are not compensated for work they have performed, it is likely that they will vacate their positions and leave the Debtor unable to provide patient care to appropriate standards. It is extremely important that the Debtor maintains a "business as usual" image to its employees, and granting this Motion is consistent with that goal.

      **E.**      **Expedited Motion to Appoint Jim Davis as Chief Restructuring Officer and Chiron Advisory Services, LLC as Turnaround Advisory Firm ("CRO Motion") (Docket No. 8).**

Contemporaneously herewith, the Debtor has filed a motion seeking approval of debtor-in-possession financing and use of cash collateral (the "DIP Motion"). The DIP Motion provides that the proposed DIP financing is conditioned on the Debtor retaining an independent CRO, who is not removable by the Debtor's current management without Court Order. The Debtor will be unable to operate in the ordinary course and pay its current expenses without the proposed DIP financing. Thus, the Debtor must be authorized to retain a CRO, on and emergency basis, in order to comply with the DIP Financing terms.

16. I have reviewed all the motions referred to herein, and verify and incorporate by reference as though stated verbatim herein all facts stated in said motions.

Date: March 28, 2019

_____
Winnie Toler
Chief Operating Officer
Capstone Pediatrics, PLLC