# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| In re: ) | |
| ) | Case No. 3:19-bk-01971 |
| CAPSTONE PEDIATRICS, PLLC, ) | |
| ) | Chapter 11 |
| Debtor. ) | |

**EXPEDITED MOTION FOR INTERIM AND FINAL ORDERS: (I) AUTHORIZING THE DEBTOR TO OBTAIN POSTPETITION FINANCING ON A SENIOR SECURED SUPERPRIORITY BASIS PURSUANT TO 11 U.S.C. § 364; (II) AUTHORIZING USE OF COLLATERAL AND GRANTING ADEQUATE PROTECTION PURSUANT TO 11 U.S.C. §§ 361 AND 363; (III) SCHEDULING FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001; AND (IV) GRANTING RELATED RELIEF**

Capstone Pediatrics, PLLC ("**Debtor**"), pursuant to Bankruptcy Rule 9014 and LBR 9075-1, hereby files this expedited motion (the "**Motion**") requesting entry of interim and final orders: (1) authorizing it to obtain post-petition financing and other extensions of credit from CDS Business Services, Inc. d/b/a Newtek Business Credit ("**CDS**") and grant senior security interests and liens and accord super-priority claim status in favor of CDS pursuant to Sections 364(c) and 364(d)(1) of Title 11 of the United States Code (the "**Bankruptcy Code**"); (2) authorizing it to use collateral of CDS, Newtek Small Business Finance, LLC ("**NSBF**") and the United States of America, in this case acting through its agency the Internal Revenue service (the "**IRS**"), and provide adequate protection for said use pursuant to Sections 361 and 363 of the Bankruptcy Code; (3) giving notice and scheduling of a final hearing pursuant to Bankruptcy Rule 4001(b)(2) and (c)(2) and (4) for related relief. In support of its request for expedited relief, Debtor relies on the Declaration of Winnie Toler in Support of First Day Motions (the "**Toler Declaration**"), filed concurrently with this Motion. In further support of this Motion, Debtor states as follows:

1

## I. COMPLIANCE WITH LBR 2081-1(f)

PURSUANT TO LBR 2081-1(F), NOTICE IS HEREBY GIVEN that, in this Motion, Debtor: (i) proposes to grant a post-petition priming lien and security interest and super-priority administrative claim to one of its prepetition lenders, CDS (see numbered paragraphs 21 & 23); (ii) stipulates to the amount of certain pre-petition obligations owed to certain pre-petition creditors, and stipulates to the validity and extent of pre-petition liens securing those obligations (see numbered paragraph 23); (iii) requests findings, conclusions or holdings as to the amount of certain pre-petition debts, and the validity, priority and extent of liens securing those debts, which findings affect the rights of third parties other than the debtor and creditor (see numbered paragraph 23); (iv) stipulates that Debtor has no claims, set off rights, surcharge rights, avoidance actions and subordination actions against certain creditors and moreover releases any such claims it might have and of which it is otherwise unaware, although other parties in interest are provided an opportunity until forty-five days after entry of a Final Order granting this Motion to contest such validity and release (see numbered paragraphs 23 & 24); (v) authorizes adequate protection in the form of payments to the IRS, and in the form of replacement liens to CDS and NSBF on post-petition assets as set forth below, in exchange for the priming lien and use of assets in which they have pre-petition liens (see paragraphs 27 & 28 below), and (vi) agrees to a "carve-out" for payment of professional fees and expenses and payment of U.S. Trustee fees (numbered paragraph 29 below).

## II. COMPLIANCE WITH LBR 9075-1

1. <u>Summary of Relief Requested</u>. The Debtor requests authorization to obtain Debtor in Possession Financing (the "**DIP Facility**") from CDS consistent with the terms set forth in the Accounts Receivable Administration Agreement (the "**DIP Loan Agreement**") attached hereto

2

33173384 v1
Case 3:19-bk-01971    Doc 20-1    Filed 03/29/19    Entered 03/29/19 14:23:52    Desc
Exhibit A - Corrected Expedited Motion for DIP Financing    Page 2 of 20

as **Exhibit A**, in exchange for giving CDS super-priority claim status and granting a senior priming lien in the IRS's prepetition Collateral Securing its Debt, and a senior Lien in all post-petition assets of the Debtor on an interim and final basis. Debtor also seeks permission to use assets constituting secured creditors' collateral ("**Collateral**") and provide adequate protection as necessary to compensate for the use of Collateral.

2. Basis for Urgency: Debtor lacks immediately available funds to continue its operations in the ordinary course of business. Debtor needs financing in order to fund operations until it can reach a sale of all of its assets pursuant to § 363 of the Bankruptcy Code. Debtor must have access to DIP financing and use of collateral, including cash collateral, requested herein to fund, among other expenses, its payroll and pay all current expenses of the business. Without the DIP financing and use of collateral, Debtor cannot survive long enough in bankruptcy to effectuate the anticipated §363 sale.

3. Notice: This Motion has been served on: (i) all parties consenting to electronic service via the Court's CM/ECF system, (ii) the Office of the United States Trustee via email, (iii) the 20 largest unsecured creditors and all secured creditors via email, fax, or U.S. mail. This motion has also been emailed to all parties asserting a security interest in the Debtor's Collateral.

4. Suggested Hearing Date: The Debtor requests a hearing date of Tuesday, April 2, 2019 at 10:00 a.m. in Courtroom 1, Customs House, 701 Broadway, Nashville, Tennessee 37203.

5. Supporting Argument: Debtor supports this motion as set forth below.

### III.  FACTS

6. On March 28, 2019 (the "**Petition Date**"), the Debtor commenced this case by filing a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

7. The Debtor is in possession of its property and is managing its affairs as a debtor in possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code. No Trustee has been appointed, nor has a committee of unsecured creditors been appointed.

8. Debtor is a pediatric and healthcare operation with multiple locations and a sizeable committed patient base.

9. This case represents a second petition by Debtor in this Court, the prior Bankruptcy Case, case no. 3:15-bk-09031 (the "**First Bankruptcy Case**"), having been voluntarily dismissed by Debtor on May 21, 2018 via a structured dismissal that maintained certain creditor liens and priorities thereof, as discussed in more detail below. That structured dismissal was based on Debtor's representations to this Court that it had successfully used the protections of the Bankruptcy Code in the First Bankruptcy Case for maximum benefit by rejecting unprofitable leases and contracts, and using the protections of the automatic stay to streamline processes and reduce inefficiencies, thereby curing the issues that had threatened its ability to operate as a going concern on the First Bankruptcy Case petition date. However, as represented by Debtor in the motion to dismiss the First Bankruptcy Case, certain ever increasing administrative costs to staying in bankruptcy, combined with the fact that the efficiencies achieved could not support a reorganization to be effectuated within the time frame contemplated under § 1129 of the Bankruptcy Code, and the fact that Debtor's principals were seeking a sale of either their membership interests in Debtor or of Debtor's assets, which sale they believed could more effectively be achieved outside of bankruptcy, warranted dismissal.

10. Debtor has filed the instant case because, notwithstanding its principals' stated intentions to effectuate a quick sale or obtain an equity infusion outside of bankruptcy, those efforts have been unsuccessful to date. Beginning with the filing of two large tax liens by the IRS within

4

days after dismissal of the First Bankruptcy Case, and the subsequent termination of the line of credit from CDS, the Debtor's DIP Lender in the First Bankruptcy Case, shortly thereafter, Debtor's ability to achieve a reorganization or sale outside of bankruptcy has been greatly curtailed. The Debtor and its principals now recognize that, particularly in light of the substantial IRS tax liens, a sale of assets free and clear of liens in bankruptcy is likely the only viable option. While the assets could be sold in Chapter 7, Debtor submits that the value of Debtor's assets is much greater if sold as a going concern.

11. There is value in the Debtor's General Intangibles as of the Petition Date, primarily consisting of goodwill associated with the ability to take over Debtor's existing substantial patient base as a going concern, and the location and identification of its facilities. However, if Debtor's operations cease for any extended period of time as a result of its inability to obtain the DIP financing necessary to support a §363 sale, the value associated with the different components of General Intangibles will bring appreciably less funds if sold on a piecemeal basis in Chapter 7. In short, given the nature of Debtor's business, continued operation and servicing of the existing customer base is essential to maintain the ongoing business/enterprise value in order to capture the maximum sale price.

12. Therefore, a Chapter 11 filing, followed by an expedient § 363 motion, is the only option for securing any material value of Debtor. The Debtor simply does not have the liquidity to survive for any period of time without post-petition financing.

13. The IRS is a pre-petition secured creditor, via perfected tax liens, secured by all assets of Debtor, including those assets in existence at the time the underlying tax assessments were made and all-after acquired assets. The terms of the DIP Facility require a priming lien over and above the IRS liens, without which there would be no accounts receivable against which CDS

5

33173384 v1
Case 3:19-bk-01971   Doc 20-1   Filed 03/29/19   Entered 03/29/19 14:23:52   Desc
Exhibit A - Corrected Expedited Motion for DIP Financing   Page 5 of 20

could lend as a secured creditor in the first days of this case, as well as a post-petition senior lien on all assets of Debtor, in order to secure CDS' advances thereafter. The IRS has consented to this priming lien and the other DIP protections set forth herein, in exchange for adequate protection set forth herein.

14. Debtor cannot fund ongoing operations without DIP financing. CDS has indicated a willingness to extend secured post-petition credit to Debtor, but only under the terms and conditions set forth herein and in the DIP Facility. The DIP Facility requires, inter alia, the existence of outstanding A/R/ as of the Petition Date against which to lend, which necessarily requires CDS obtaining a priming lien on the IRS' pre-petition Collateral, as well as being a senior lien on all post-petition assets of Debtor.

15. A condition of the DIP financing herein is the appointment of an independent Chief Restructuring Officer ("CRO") not removable by Debtor's management without court order. A motion to retain the CRO is being contemporaneously filed with the instant motion. With the CRO's guidance, Debtor will file a §363 sale motion for a sale of its assets within 45 days of the Petition Date, another requirement under the DIP financing proposed herein.

16. Pursuant to §§364(a) and (b) of the Bankruptcy Code, Debtor asserts that it has attempted, and is unable, to obtain either unsecured credit or unsecured credit allowable under Bankruptcy Code §503(b)(1) as an administrative expense in the amounts and on as favorable terms as are being agreed to by CDS.

**Secured Creditors, Liens and Amounts Owed**

17. As of the Petition Date, all of Debtor's assets are subject to liens in the following order of priority, as applicable to asset category:

(a) CDS holds a valid, properly perfected senior priority first security lien in all general intangibles, accounts receivable, cash and cash equivalents and other assets related thereto,

and proceeds thereof, subject to the priming senior liens of the IRS in certain accounts receivable and proceeds thereof ("**A/R**") as set forth in subparagraphs (b)(1) and (b)(2) herein below. CDS also holds a valid, properly perfected second priority lien in all other assets of Debtor, and proceeds thereof, junior only to Newtek Small Business Finance, LLC ("**NSBF**") as set forth below (the "**CDS Prepetition Liens**"). The amount owed by Debtor to CDS as of the Petition Date is $1,442,983.55, which debt is valid, existing, and not subject to any defense, offset or counterclaim (the "**CDS Prepetition Lien Obligations**"). Debtor asserts that CDS is an undersecured creditor, and therefore entitled to adequate protection for Debtor's use of CDS' Collateral;

(b)(1) The IRS has a validly perfected, senior lien in A/R created by Debtor on or after July 14, 2018, pursuant to 26 U.S.C. § 6323, as a result of two IRS Tax Liens filed on May 30, 2018 for unpaid payroll taxes in the amount of $2,777,837.85;

(b)(2) The IRS also has a validly perfected, senior lien in A/R created by the Debtor on or after August 9, 2018, pursuant to 26 U.S.C. § 6323, as a result of a June 25, 2018 IRS Tax Lien for unpaid payroll taxes in the amount of $827,898.33;

(b)(3) The IRS also has a validly perfected, senior lien in A/R created by the Debtor on or after April 22, 2019, pursuant to 26 U.S.C. §6323, as a result of a March 8, 2019 IRS Tax Lien for unpaid payroll taxes in the amount of $1,085,437.67;

(b)(4) The amount owed by Debtor to the IRS on the Petition Date is at least $4,691,173.67. The IRS is undersecured by these liens, since the amount of A/R as of the Petition Date is only $1,889,569.12;

(c) NSBF has a valid, properly perfected lien in all assets of Debtor, tangible and intangible, and the proceeds thereof, subject only to the senior lien of CDS in General Intangibles and cash and cash equivalents of Debtor, and subject to the senior liens of CDS and

7

33173384 v1

Case 3:19-bk-01971    Doc 20-1    Filed 03/29/19    Entered 03/29/19 14:23:52    Desc
Exhibit A - Corrected Expedited Motion for DIP Financing    Page 7 of 20

the IRS in the Debtor's A/R, as set forth above (the "**NSBF Prepetition Liens**"). The amount owed by Debtor to NSBF is not less than $2,569,235.78 (the "**NSBF Prepetition Lien Obligations**"). Debtor asserts that NSBF is an undersecured creditor, and therefore entitled to adequate protection for Debtor's use of the NSBF Collateral.

(d) McKesson Corporation holds a lien on all of Debtor's assets, junior to each of the foregoing named secured creditors. As a result, Debtor asserts that McKesson is completely unsecured.

18. As stated above, as of the Petition Date, Debtor has $1,889,569.12 in outstanding A/R, all of which was created on or after July 14, 2018 and $24,923.67 in cash on hand, all of which represents proceeds of A/R created on or after July 14, 2018. Therefore, the IRS, being owed in excess of $4.6 million as of the Petition Date, is an undersecured creditor. Because a substantial portion of the outstanding A/R is in the form of monies owed from the United States Government, via Medicare and Medicaid payments, the IRS would be entitled to relief from the automatic stay in order to exercise offset and/or recoupment rights. Exercising offset rights by offsetting payments of Medicare and Medicaid payments would immediately terminate Debtor's business and destroy the value of the company. Therefore, IRS requires adequate protection in order to prevent it from so moving for stay relief.

19. The IRS has agreed to allow the priming lien on its pre-petition Collateral, and to temporarily forego the right to seek stay relief or otherwise offset or recoup, in exchange for (1) adequate protection payments from Debtor, using proceeds of the DIP Loan, in the amount of $10,000.00 per month, as well as (2) court approval of the CRO Motion in order to ensure that postpetition payroll tax liabilities being accrued to the IRS are paid when and as due by a third party that assumes responsibility for collecting, accounting for, and paying over employees'

8

33173384 v1

Case 3:19-bk-01971    Doc 20-1    Filed 03/29/19    Entered 03/29/19 14:23:52    Desc
Exhibit A - Corrected Expedited Motion for DIP Financing    Page 8 of 20

payroll taxes and income taxes as required by 26 U.S.C. §§ 3102 and 3402 and who shall be personally liable for any failure to fulfill any of these responsibilities pursuant to 26 U.S.C. § 6672. Nothing in this Motion shall waive the IRS's right to seek such stay relief in the event that: (1) the adequate protection payments are not made timely; (2) the Debtor fails to effectuate a sale of its assets within 90 days of the deadline set above for filing a motion to sell its assets; or (3) the Debtor fails to comply with its obligations to pay its own employment taxes and/or its obligations to pay over its employees' payroll and income taxes. Nor shall anything in this Motion or any other agreement among the parties to this Motion waive the right of any other federal government agency, including the Department of Health and Human Services, from exercising setoff and/or recoupment rights against Debtor. Likewise, both CDS and NSBF have consented to allow the use of their Collateral in exchange for replacement liens in the same Collateral and in the same priorities between them as to post-petition acquired assets, and as set forth in more detail in paragraphs 27 & 28.

20. Pursuant to §§ 364(a) and (b) of the Bankruptcy Code, Debtor asserts that it has attempted, and is unable, to obtain either unsecured credit or unsecured credit allowable under Bankruptcy Code § 503(b)(1) as an administrative expense in the amounts and on as favorable terms as are being agreed to by CDS.

21. Debtor believes that, under the circumstances, the terms and conditions provided for in the DIP Facility are fair and reasonable, and requests approval thereof by this Court.

### IV. RELIEF REQUESTED

#### A. Summary of DIP Loan Agreement

22. Subject to approval by this Court, the material terms and conditions of the DIP Loan Agreement entered into by Debtor and CDS are as follows:

9

33173384 v1

Case 3:19-bk-01971 Doc 20-1 Filed 03/29/19 Entered 03/29/19 14:23:52 Desc Exhibit A - Corrected Expedited Motion for DIP Financing Page 9 of 20

A.  **General Terms**

A senior secured DIP revolving credit facility, secured by a super-priority administrative expense claim and a senior lien in all post-petition assets of Debtor, as well as a priming senior lien as to all pre-petition Collateral of Debtor in which the IRS has a lien to secure the IRS's pre-petition indebtedness, with loans to be advanced and made available to Borrower (the "DIP Loans") under a revolving discretionary credit facility in the maximum principle amount of up to 80% of the net realizable value of Debtor's eligible healthcare accounts receivable associated with eligible insurance payers of Borrower at an amount not to exceed $$1,000,000.00 absent approval by CDS (the "DIP Commitment"). DIP Loans may be requested by Debtor on the last business day of each week, and, subject to compliance by Debtor with the terms and conditions of the definitive documentation evidencing the DIP Facility, Borrower will advance the requested DIP Loan on the first business day thereafter.

B.  **Use of Proceeds**

To fund general corporate and ordinary course purposes of Debtor all in accordance with the DIP Budget (as defined below), including, without limitation, interest and fees, including reasonable attorneys' fees, on the DIP facility, and such other administrative payments contemplated by the DIP Budget, as approved by CDS. Debtor shall be permitted to use cash collateral in accordance with the DIP Budget provisions described in the "Operating Budget" section below.

C.  **Operating Budget**

The operating budget, subject to the approval of CDS, shall consist of Debtor's estimated projected cash flow on a rolling 13-week basis, which budget shall be acceptable to CDS (the "DIP Budget"), commencing as of the Closing Date (as defined below). Upon approval of CDS of the DIP Budget, any subsequent material changes to the DIP Budget may be made only on approval of CDS. Debtor will be allowed a 5% variance on the aggregate amounts set forth in the DIP Budget. The DIP Budget shall include monthly reimbursement of the reasonable fees and expenses of the professionals of CDS (payment of which shall not require further court approval).

D.  **Maturity** 4 months from the Closing Date, with CDS having an option in its sole discretion to extend in two 3 month tranches and one two month tranche for up to a one year total without further order of the Bankruptcy Court

10

E.  **Interest** – Prime plus 7%, with a default rate which during the existence of a default is 3% above the rate otherwise in effect.

F.  **Closing Date**

April 2, 2019

G.  **Facility/Monitoring Fee**

2% annually (Facility Fee); 70 basis points monthly on outstanding amounts (Monitoring Fee).

H.  **Minimum Average Borrowing (Charges)**
$250,000.00 on a rolling three month average in any three month period.

I.  **Guarantors**

Winnie Toler and Garry Griffieth

J.  **Security**

Super-priority administrative expense claim, as well as first priority lien on all of the Debtor's post-petition assets, as well as a priming lien in all assets securing the IRS' pre-petition indebtedness.

K.  **Conditions to Closing**

Debtor shall (i) provide CDS with all financial information necessary with respect to Debtor's financial condition, (ii) prepare all legal documents similar to those used for similar transactions. (iii) not suffer any material adverse change in the business operations or customers, (iv) permit an on-site field exam or audit on demand, (v) designate CDS as a loss payee under Debtor's insurance policies, and (vi) obtain Bankruptcy Court approval for retention of Chief Recovery Officer ("**CRO**") acceptable to CDS who shall be retained at all times by Debtor and not removable by Debtor absent court order, said CRO to have the sole check writing authority and sole authority to schedule accounts receivables in reports to CDS on behalf of Debtor; and (vii) Debtor shall immediately take all necessary steps to establish a lockbox and blocked account and direct all non-Medicare and non-Medicaid insurance payments to said lockbox and to establish a double lockbox for all Medicare and Medicaid insurance payments into the lockbox.  CDS must further finally approve the financing requested in this Motion.

11

L.  **Financial Reporting**

      Monthly financial statements certified by the CRO and an officer of Debtor, and annual tax returns and financial statements audited by an independent certified public accountant acceptable to CDS audited by an independent certified public accountant acceptable to CDS.

PARTIES ARE URGED TO READ THE DIP LOAN AGREEMENT IN ITS ENTIRETY; TO THE EXTENT OF ANY INCONSISTENCIES BETWEEN THIS MOTION AND THE DIP LOAN AGREEMENT, THE DIP LOAN AGREEMENT SHALL CONTROL.

### B. Additional Requirements Related to DIP Facility

23. In addition to the terms of the DIP Loan Agreement, CDS requires that any order granting this motion shall be in form and substance acceptable to CDS and shall include, without limitation, provisions: (a) approving in all respects the definitive documentation evidencing the DIP Facility, including the DIP Loan Agreement, and authorizing and directing Debtor to execute and become bound by such definitive documentation, (b) granting the required post-petition superpriority administrative expenses claim and secured lien in favor of CDS in all post-petition assets of Debtor, and a priming senior lien in all collateral securing the IRS's pre-petition claim (the "**CDS Post-Petition Priming Lien**")[1]; (c) modifying the automatic stay to the extent necessary to permit or effectuate the terms of the order granting this motion and the documents evidencing the DIP Facility, (d) providing for the automatic relief of such stay to permit the enforcement of CDS' remedies under the DIP Facility, subject to the right of Debtor to re-impose or continue the automatic stay, (e) permitting Debtor to use cash collateral in accordance with a budget approved by the Court; (f) authorizing the adequate protection payments to the IRS, and

---

[1] The CDS Post-Petition Priming Lien shall not attach to any of the following property: (a) any causes of action, including causes of action or claims pursuant to Sections 544, 545, 547, 548, 550 or 553 of the Bankruptcy Code (the "Avoidance Actions"), and (b) any monies recovered in connection with the successful prosecution or settlement of Avoidance Actions or any other causes of action held by Debtor's Estate.

12

33173384 v1
Case 3:19-bk-01971   Doc 20-1   Filed 03/29/19   Entered 03/29/19 14:23:52   Desc Exhibit A - Corrected Expedited Motion for DIP Financing   Page 12 of 20

the adequate protection replacement liens to CDS and NSBF; and (e) adopting as findings of fact and conclusions of law (including an adjudication of allowed secured claims and liens pursuant to 11 U.S.C. §506), subject only to the objection rights set forth in paragraph 24 below, all of the statements of fact set forth in paragraph 6 through 21, above (the "Statements of Fact"), as well as the following specific stipulations by Debtor (the "Stipulations"):

(a) Debtor asserts that the above referenced CDS and NSBF Prepetition Lien Obligations are: (i) legal, valid, binding and enforceable against Debtor and (ii) not subject to any contest, attack, objection, recoupment, defense, counterclaim, offset, subordination, recharacterization, avoidance or other claim, cause of action or other challenge of any nature under the Bankruptcy Code, under applicable non-bankruptcy law or otherwise. Debtor asserts that it does not have, hereby forever releases, and is forever barred from bringing or asserting any claims, counterclaims, causes of action, defense or setoff rights relating to the CDS and NSBF Prepetition Lien Obligations, whether arising under the Bankruptcy Code, under applicable non-bankruptcy law or otherwise against either of CDS or NSBF and their respective officers, directors, employees, attorneys, successors and assigns.

(b) Debtor also asserts that as of the Petition Date, CDS' and NSBF's Prepetition liens on the Prepetition Collateral were legal, valid, enforceable, non-avoidable, and duly perfected and are not subject to avoidance, attack, offset, recharacterization or subordination under the Bankruptcy Code, under applicable non-bankruptcy law or otherwise and, as of the Petition Date, Debtor is not aware of any liens or security interests having priority over CDS' lien except for the liens of the IRS to be primed as set forth herein.

24. As a further condition to the DIP Financing, CDS requires that these stipulations and Statements of Facts be binding on Debtor, CDS, NSBF, and the IRS upon filing of this motion, but also upon creditors and other parties in interest on the following terms:

(a) The Stipulations and Statements of Fact set forth above and in the proposed Interim DIP Order shall be binding upon all parties-in-interest, including, without limitation, any Committee appointed by the United States Trustee, any subsequent trustee, responsible person, examiner with expanded powers, and any other Estate representative unless: (a) a party-in-interest with standing and requisite authority has timely filed a motion seeking standing to file an adversary proceeding or contested matter or has timely filed an adversary proceeding or contested matter by no later than the date that is the later of, (i) (a) 30 days from the date of the selection of counsel for the Committee, (b) if no such Committee has been appointed, no later than 45 days (or a longer period as the Court orders for cause shown before the expiration of such period) after the entry of the Final DIP Order, or (c) upon conversion of the Chapter 11 case to Chapter 7, to the extent that any relevant

13

challenge period has not expired, such period shall be automatically extended for 30 days from the date a Chapter 7 trustee is appointed, or (ii) such later date as has been agreed to, in writing, by CDS in its sole discretion (the "**Challenge Deadline**"), (1) challenging the validity, enforceability, priority or extent of CDS' or NSBF' Prepetition Lien Obligations or CDS' or NSBF's Prepetition Liens on the Prepetition Collateral, or (2) otherwise asserting or prosecuting any action for preferences, fraudulent conveyances, other avoidance power claims or any other any claims, counterclaims or causes of action, objections, contests or defenses that Debtor's estate may have (collectively, "**Claims and Defenses**") against CDS or NSBF or their affiliates, representatives, attorneys or advisors in connection with matters related to CDS or NSBF Prepetition Lien Loan Documents, the Prepetition Lien Obligations, or the Prepetition Collateral, and (b) there is a final order in favor of the plaintiff sustaining any such challenge or claim in any such adversary proceeding or contested matter filed by the Challenge Deadline; provided, that as to Debtor, all such Claims and Defenses are hereby irrevocably waived and relinquished as of the Petition Date. If no such motion for standing or adversary proceeding or contested matter, as applicable, is filed by the Challenge Deadline: CDS' and NSBF's Prepetition Lien Obligations shall constitute allowed claims, not subject to counterclaim, setoff, subordination, recharacterization, defense or avoidance, for all purposes in this case and any subsequent Chapter 7 cases; CDS' and NSBF's Prepetition Liens on the Prepetition Collateral shall be deemed to have been, as of the Petition Date, legal, valid, binding and perfected, not subject to recharacterization, subordination, avoidance or reduction, except by payment; and, CDS' and NSBF's Prepetition Obligations, the Prepetition Liens on the Prepetition Collateral and CDS and NSBF shall not be subject to any other or further challenge by any party in interest seeking to exercise the rights of Debtor's estate, including, without limitation, any successor thereto (including, without limitation, any Chapter 7 or 11 trustee appointed or elected for Debtor), and the Stipulations and Statements of Fact shall become findings of the court. If any such motion for standing or adversary proceeding or contested matter, as applicable, is filed by the Challenge Deadline, the Stipulations and Statements of fact shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) on any Committee and on any other person or entity, except to the extent that such findings and admissions were expressly challenged in such adversary proceeding or contested matter. Nothing in the Interim DIP Order vests or confers on any Person (as defined in the Bankruptcy Code), including any Committee, standing or authority to pursue any cause of action belonging to Debtor or its estate, including, without limitation, Claims and Defenses with respect to the CDS and NSBF Prepetition First Liens or their Prepetition Lien Obligations.

**C. Other Relief Requested**
    **a. Cash Collateral**

25. Debtor also seeks authorization to, if necessary, use cash collateral to meet its ordinary cash needs and for such purposes necessary to maintain and preserve its assets and continue operation of its business should the DIP Facility be insufficient.

14

26. Attached hereto as **Exhibit B** is Debtor's cash flow budget for the 13-week period beginning from the Petition Date (the "**Budget**"). If necessary, Debtor will amend the Budget, subject to the consent of CDS in advance of the final hearing on this Motion and thereafter as required. The Budget reflects, among other things, anticipated receipts, disbursements and cash on hand and will be revised on an on-going basis. The Budget is a projection and is subject to change (with the consent of CDS) based on the amount of credit obtained from vendors, the amount of new business obtained and the level of continued revenues generated.

### b. Adequate Protection to the IRS, CDS and NSBF

27. As the holder of pre-petition non-consensual liens on the A/R of Debtor, which liens would otherwise continue in a senior position in the post-petition assets of Debtor as a result of being non-consensual in nature, the IRS is entitled to adequate protection for the priming liens in favor of CDS required by the DIP Facility. The IRS has consented to adequate protection of its interest in the form of (a) adequate protection payments in the amount of $10,000.00 per month, and (b) the requirement of the appointment of the CRO requested herein, as an agreed "responsible person" liable under 26 U.S.C. §6672, for purposes of ensuring that ongoing payroll taxes of Debtor are paid when and as due.

28. As the holder of valid and properly perfected liens in Debtor's Prepetition Collateral, CDS and NSBF are entitled to adequate protection for and on account of Debtor's use of their Collateral and any other decline in value arising out of the automatic stay or Debtor's use, sale, or disposition or other depreciation of the Prepetition Collateral. Debtor moves the Court to grant CDS and NSBF adequate protection as follows: pursuant to §§ 361, 363(e) and 364(d) of the Bankruptcy Code, continuing valid, binding, enforceable, non-avoidable and automatically perfected post-petition security interests in and liens (collectively the "**Replacement Liens**") on

15

the Postpetition Collateral in the same relative priorities to one another as they existed on the Petition Date (the "**DIP Collateral**"), with the Replacement Liens being junior only to: (i) the Carve-Outs discussed below; and (ii) CDS' Post-Petition Priming Lien. The Replacement Liens are otherwise senior to all other security interests in, liens on, or claims against any of the DIP Collateral. Except as provided herein, the Replacement Liens shall not be made subject to or *pari passu* with any lien or security interest by any court order heretofore or hereafter entered in the Chapter 11 Cases or any successor Cases, and shall be valid and enforceable against any trustee appointed in any of the Chapter 11 Cases or any successor Cases, or upon the dismissal of any of the Chapter 11 Cases or successor Cases. Subject to entry of the Final DIP Order, the Replacement Liens shall not be subject to §§ 506(c), 510, 549, or 550 of the Bankruptcy Code.

### c. Carve-Out

29. The foregoing liens and administrative expense claim shall be subject to a carve out as follows: (a) quarterly fees required to be paid pursuant to 28 U.S.C. § 1930(a)(6) (the "U.S. Trustee Fees") (b) the hourly compensation to be paid to the CRO and Chiron Advisory Services as set forth in the approved CRO order (the "**CRO Carveout**"), (c) allowed claims of Debtor's counsel, not to exceed $200,000 (the "**§Debtor's Counsel's Carve-Out**"), and (d) allowed claims of any counsel for any unsecured creditors' committee, if one if formed, not to exceed $50,000.00 (the "**UCC Carve-Out**" and referred to collectively with the Debtor's Counsel's Carve-out, the "§327 Carve-Out"). Northing herein shall be deemed a cap on the fees and expenses of counsel for the Debtor or any committee to the extent allowed by Orders of this Court, but shall only serve as a cap on how much of such allowed fees and expenses will be paid as part of the §327 Carve-Out. Notwithstanding the foregoing, the §327 Carve-Out shall exclude any fees and expenses incurred in connection with initiating or prosecuting any claims, causes of action, adversary

16

33173384 v1

Case 3:19-bk-01971    Doc 20-1    Filed 03/29/19    Entered 03/29/19 14:23:52    Desc Exhibit A - Corrected Expedited Motion for DIP Financing    Page 16 of 20

proceedings, or other litigation against CDS or NSBF on account of either their Prepetition Liens or the CDS Post-Petition Priming Liens, including, without limitation, the assertion or joinder in any claim, counterclaim, action, proceeding, application, motion, objection, defenses or other contested matter, the purpose of which is to seek any order, judgment, determination or similar relief, (i) invalidating, setting aside, disallowing, avoiding, challenging or subordinating, in whole or in part, (a) the DIP Obligations, (b) the CDS or NSBF Prepetition Lien Obligations, (c) the CDS or NSBF Prepetition Liens, or (d) the CDS Post-Petition Priming Liens, or (ii) preventing, hindering or delaying, whether directly or indirectly, CDS' or NSBF's assertion or enforcement of their liens or security interests or realization upon any DIP Collateral or Prepetition Collateral, or (iii) prosecuting any Avoidance Actions against CDS or NSBF, or (iv) challenging the amount, validity, extent, perfection, priority, or enforceability of, or asserting any defense, counterclaim, or offset to, the CDS and/or NSBF Prepetition Lien Obligations, or the adequate protection granted herein, or (v) or any other litigation generally against CDS or NSBF. Nothing herein shall be construed to obligate CDS, in any way, to pay any professional fees, or to assure that Debtor has sufficient funds on hand to pay any professional fees.

## BANKRUPTCY CODE § 364(e)

30. Debtor believes that the terms and conditions of the proposed DIP Orders are the best possible under the circumstances of this case, and were negotiated in good faith, at arm's length, and with the assistance of competent and experienced counsel. Additionally, Debtor submits that the terms of the DIP Loan Agreement and DIP Facility are reasonable under the circumstances, appropriate for secured financing to Debtor, reflect an exercise of Debtor's sound and prudent business judgment, and are supported by reasonable equivalent value and fair consideration. Accordingly, Debtor submits that CDS should be provided with the benefit and

17

33173384 v1

Case 3:19-bk-01971    Doc 20-1    Filed 03/29/19    Entered 03/29/19 14:23:52    Desc
Exhibit A - Corrected Expedited Motion for DIP Financing    Page 17 of 20

protection of Bankruptcy Code § 364(e), such that if any of the provisions of the DIP Loan Agreement and DIP Facility are later modified, vacated, stayed, or terminated by subsequent order of this or any other court, CDS would be fully protected with respect to any amounts disbursed before such modification, vacation, stay, or termination.

## V. ARGUMENT

31. Given the high likelihood that, based on existing circumstances, Debtor will be unable to obtain financing on an unsecured basis, in the ordinary course of business or otherwise, allowable on par with administrative expense claims as contemplated by § 364(a) and (b), on a priority basis over administrative expenses as contemplated by § 364(c), or upon the grant of a junior lien or a lien on encumbered property of the estate as also contemplated in § 364(c), Debtor is left with no alternative but to seek financing pursuant to § 364(c)(1) and (d) and to obtain credit from CDS secured by a lien on property senior to all prior liens.  The only other two secured creditors have consented to this treatment, and without the proposed DIP Facility, Debtor's business will immediately fail.

32. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue of these proceedings and this Motion is proper in this district pursuant to 28 U.S.C § 1408 and 1409.

33. The statutory predicates for the relief requested herein are §§ 361, 362, 363, and 364 of the Bankruptcy Code and Bankruptcy Rules 4001 and 9014, and LBR 9075 and 2081.

34. Bankruptcy Code §§ 364(c)(1) and (d) specifically allow for post-petition financing, under certain circumstances, including not only a super-priority administrative expense claim and senior lien in post-petition assets, but also the "priming" of the lien of a pre-petition secured creditor in favor of a senior lien granted to a provider of post-petition financing.  The

18

33173384 v1

Case 3:19-bk-01971    Doc 20-1    Filed 03/29/19    Entered 03/29/19 14:23:52    Desc
Exhibit A - Corrected Expedited Motion for DIP Financing    Page 18 of 20

required circumstances are present in this case and particularly appropriate where the only other two secured creditors have consented to this treatment.

35. As stated in the Toler Declaration, Debtor explored alternative financing possibilities prior to the filing of this Bankruptcy Case (and the First Bankruptcy Case), and those efforts were unsuccessful. Under these circumstances, the grant of a super-priority lien to CDS to secure the DIP Financing is appropriate, and the other terms of the proposed DIP Financing are reasonable.

36. As supported by the Toler Declaration, to preserve the value of Debtor's business as a going concern, without which the assets would have much less value in a § 363 sale, Debtor must have immediate access to advances under the DIP Financing. If the DIP Financing is not immediately approved on an interim basis, Debtor will certainly be forced to terminate its operations immediately.

37. The DIP Loan Agreement, this Motion and the terms of the proposed Interim Order, were negotiated in good faith and at arm's length between Debtor and CDS.

38. In order to obtain the DIP Financing, under Bankruptcy Code § 363, it is necessary and appropriate that the IRS, CDS and NSBF be granted adequate protection for the use of their Collateral and for the agreement of the IRS to allow the priming Liens essential to operation of the DIP Facility. The adequate protection outlined above and in the proposed interim order is reasonable, necessary and should be approved.

WHEREFORE, based on the foregoing, Debtor respectfully request that the Court enter an interim order containing the terms set forth in the proposed order filed herewith (1) authorizing Debtor to obtain financing and other extensions of credit from CDS, grant a super-priority administrative claim and security interests and the Post-Petition Priming Liens in favor of CDS

19

33173384 v1

Case 3:19-bk-01971    Doc 20-1    Filed 03/29/19    Entered 03/29/19 14:23:52    Desc Exhibit A - Corrected Expedited Motion for DIP Financing    Page 19 of 20

pursuant to §§ 361, 364(c) and 364(d)(1) of the Bankruptcy Code; (2) giving notice of a final hearing pursuant to Bankruptcy Rule 4001(b)(2) and (c)(2); (3) granting CDS, the IRS and NSBF adequate protection for the use of their Collateral and the priming of the IRS liens; and (4) granting such other relief as may be necessary and appropriate.

Respectfully submitted,

/s/ Emily C. Taube
David W. Houston, IV, No. 20802
Emily C. Taube, No. 19323
**BURR & FORMAN LLP**
222 Second Avenue South, Suite 2000
Nashville, TN 37201
615-724-32165 (phone)
615-724-3315 (fax)
dhouston@burr.com
etaube@burr.com

*Counsel for Capstone Pediatrics, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was filed electronically on March 29, 2019. Notice of this filing was sent by operation of the Court's electronic filing system to all those parties specifically requesting electronic service and as indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system.

/s/ Emily C. Taube

20

33173384 v1
Case 3:19-bk-01971    Doc 20-1    Filed 03/29/19    Entered 03/29/19 14:23:52    Desc
Exhibit A - Corrected Expedited Motion for DIP Financing    Page 20 of 20