# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 3:19-bk-01971 |
| CAPSTONE PEDIATRICS, PLLC | ) | |
| | ) | Chapter 11 |
| Debtor. | ) | |

---

**[PROPOSED] INTERIM ORDER (1) AUTHORIZING THE DEBTOR TO OBTAIN POST- PETITION FINANCING ON A SENIOR SECURED SUPERPRIORITY BASIS, (2) AUTHORIZING USE OF COLLATERAL AND GRANTING ADEQUATE PROTECTION, (3) SETTING AND PRESCRIBING FORM AND MANNER OF NOTICE FOR FINAL HEARING AND (4) GRANTING RELATED RELIEF**

---

This matter is before this Court on the motion for debtor in possession financing and use of collateral and related relief [Doc. No .4] (the "***DIP Motion***"),[1] dated March 28, 2019, of the above captioned Debtor ( the "***Debtor*** "), pursuant to sections 361, 363, 364 and 507 of title 11 of the United States Code (the "***Bankruptcy Code***"), Rules 2002, 4001, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***") and LR 9075-1 for entry of an Interim Order (the "***Interim DIP Order***") and a final order (the "***Final DIP Order***").

The Court having considered the DIP Motion, the evidence submitted or adduced, and the arguments of counsel made at the hearing on the Interim DIP Order (the "***Interim Hearing***"); and due and proper notice of the DIP Motion having been provided in accordance with Bankruptcy Rules 2002, 4001(b) and (d), and 9014, and LBR 9075, and no other or further notice being required under the circumstances; and the Interim Hearing having been held and concluded; and it appearing that approval of the relief requested in the DIP Motion is fair and reasonable and in the

---

[1] Except as otherwise set forth herein, capitalized terms used herein, but not defined herein, shall have the meanings ascribed to them in the DIP Motion.

best interests of the Debtor, its estate and its creditors, and is essential for the preservation of the value of the Debtor's assets; and all objections, if any, to the entry of this Interim DIP Order having been withdrawn, resolved or overruled by the Court; and after due deliberation and consideration, and for good and sufficient cause appearing therefor:

**BASED UPON THE RECORD, THE COURT HEREBY FINDS:**

1.      On March _, 2019 (the "**Petition Date**"), the Debtor commenced this case by filing a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

2.      The Debtor is in possession of its property and is managing its affairs as a debtor in possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.  No Trustee has been appointed, nor has a committee of unsecured creditors been appointed.

3.      Debtor is a pediatric and healthcare operation with multiple locations and a sizeable committed patient base.

4.      This case represents a second petition by Debtor in this Court, the prior Bankruptcy Case, case no. 3:15-bk-09031 (the "**First Bankruptcy Case**"), having been voluntarily dismissed by Debtor on May 21, 2018 via a structured dismissal that maintained certain creditor liens and priorities thereof.  That structured dismissal was based on Debtor's representations to this Court that it had successfully used the protections of the Bankruptcy Code in the First Bankruptcy Case for maximum benefit by rejecting unprofitable leases and contracts, and using the protections of the automatic stay to streamline processes and reduce inefficiencies, thereby curing the issues that had threatened its ability to operate as a going concern on the First Bankruptcy Case petition date. However, as represented by Debtor in the motion to dismiss the First Bankruptcy Case, certain ever increasing administrative costs to staying in bankruptcy, combined with the fact that the efficiencies achieved could not support a reorganization to be effectuated within the time frame

33173375 v1

contemplated under § 1129 of the Bankruptcy Code, and the fact that Debtor's principals were seeking a sale of either their membership interests in Debtor or of Debtor's assets, which sale they believed could more effectively be achieved outside of bankruptcy, warranted dismissal.

5.     Debtor has filed the instant case because, notwithstanding its principals' stated intentions to effectuate a quick sale or obtain an equity infusion outside of bankruptcy, those efforts have been unsuccessful to date.  Beginning with the filing of two large tax liens by the IRS within days after dismissal of the First Bankruptcy Case, and the subsequent termination of the line of credit from CDS, the Debtor's DIP Lender in the First Bankruptcy Case, shortly thereafter, Debtor's ability to achieve a reorganization or sale outside of bankruptcy has been greatly curtailed.  The Debtor and its principals now recognize that, particularly in light of the substantial IRS tax liens, a sale of assets free and clear of liens in bankruptcy is likely the only viable option. While the assets could be sold in Chapter 7, Debtor submits that the value of Debtor's assets is much greater if sold as a going concern.

6.     There is value in the General Intangibles as of the Petition Date, primarily consisting of goodwill associated with the ability to take over Debtor's existing substantial patient base as a going concern, and the location and public identification of its facilities.  If Debtor's operations cease for any extended period of time as a result of its inability to obtain the DIP financing necessary to support a §363 sale, the value associated with the different components of General Intangibles will bring appreciably less funds if sold on a piecemeal basis in Chapter 7. Continued operation and servicing of the existing customer base is essential to maintain the ongoing business/enterprise value in order to capture the maximum sale price.

33173375 v1

7.	The Debtor asserts a Chapter 11 filing, followed by an expedient § 363 motion, is the only option for securing any material value of Debtor.  The Debtor does not have the liquidity to survive for any period of time without post-petition financing.

8.	The IRS is a pre-petition secured creditor, via perfected tax liens, secured by all assets of Debtor, including those assets in existence at the time the underlying tax assessments were made and all after-acquired assets.  The terms of the DIP Facility require a priming lien over and above the IRS liens, without which there would be no accounts receivable against which CDS could lend as a secured creditor in the first days of this case, as well as a post-petition senior lien on all assets of Debtor, in order to secure CDS' advances thereafter.  The IRS has consented to this priming lien and the other DIP protections set forth herein, in exchange for adequate protection set forth herein.

9.	Debtor cannot fund ongoing operations without DIP financing.  CDS has indicated a willingness to extend secured post-petition credit to Debtor, but only under the terms and conditions set forth herein and in the DIP Facility.  The DIP Facility requires, *inter alia*, the existence of outstanding A/R as of the Petition Date against which to lend, which necessarily requires CDS obtaining a priming lien on the IRS' pre-petition Collateral, as well as being given a senior lien on all post-petition assets of Debtor.

10.	A condition of the DIP financing herein is the appointment of an independent Chief Restructuring Officer ("**CRO**") not removable by Debtor's management without court order.  A motion to retain the CRO has been simultaneously filed with the instant motion.  Another condition of the DIP financing proposed herein is that with the CRO's guidance, Debtor will file a §363 sale motion for a sale of its assets within 45 days of the Petition Date.

4

Pursuant to §§ 364(a) and (b) of the Bankruptcy Code, Debtor asserts that it has attempted, and is unable, to obtain either unsecured credit or unsecured credit allowable under Bankruptcy Code § 503(b)(1) as an administrative expense in the amounts and on as favorable terms as are being agreed to by CDS.**Secured Creditors, Liens and Amounts Owed**

11.    As of the Petition Date, all of Debtor's assets are subject to liens in the following order of priority, as applicable to asset category:

(a)    CDS holds a valid, properly perfected senior priority first security lien in all general intangibles, accounts receivable, cash and cash equivalents and other assets related thereto, and proceeds thereof, subject to the priming senior liens of the IRS in certain accounts receivable and proceeds thereof ("**A/R**") as set forth in subparagraphs (b)(1) and (b)(2) herein below.  CDS also holds a valid, properly perfected second priority lien in all other assets of Debtor, and proceeds thereof, junior only to Newtek Small Business Finance, LLC ("**NSBF**") as set forth below (the "**CDS Prepetition Liens**").  The amount owed by Debtor to CDS as of the Petition Date is $1,442,983.55, which debt is valid, existing, and not subject to any defense, offset or counterclaim (the "**CDS Prepetition Lien Obligations**").  CDS is an undersecured creditor and entitled to adequate protection for Debtor's use of CDS' Collateral;

(b)(1)    The IRS has a validly perfected, senior lien in A/R created by Debtor on or after July 14, 2018, pursuant to 26 U.S.C. § 6323, as a result of two IRS Tax Liens filed on May 30, 2018 for unpaid payroll taxes in the amount of $2,777,837.85;

(b)(2)    The IRS also has a validly perfected, senior lien in A/R created by the Debtor on or after August 9, 2018, pursuant to 26 U.S.C. § 6323, as a result of a June 25, 2018 IRS Tax Lien for unpaid payroll taxes in the amount of $827,898.33;

33173375 v1

(b)(3)  The IRS also has a validly perfected, senior lien in A/R created by the Debtor on or after April 22, 2019, pursuant to 26 U.S.C. § 6323, as a result of a March 8, 2019 IRS Tax Lien for unpaid payroll taxes in the amount of $1,085,437.49;

(b)(4)  The amount owed by Debtor to the IRS on the Petition Date is at least $4,691,173.67.  The IRS is undersecured by these liens, since the amount of A/R as of the Petition Date is only $1,889,569.12;

(c)  NSBF has a valid, properly perfected lien in all assets of Debtor, tangible and intangible, and the proceeds thereof, subject only to the senior lien of CDS in General Intangibles and cash and cash equivalents of Debtor, and subject to the senior liens of CDS and the IRS in the Debtor's A/R, as set forth above (the "**NSBF Prepetition Liens**").  The amount owed by Debtor to NSBF is not less than,$2,569,235.78   (the "**NSBF Prepetition Lien Obligations**").  Debtor asserts that NSBF is an undersecured creditor, and therefore entitled to adequate protection for Debtor's use of the NSBF Collateral.

(d)  McKesson Corporation holds a lien on all of Debtor's assets, junior to each of the foregoing named secured creditors.  As a result, Debtor asserts that McKesson is completely unsecured in its debt.

12.  As stated above, as of the Petition Date, Debtor has $1,889,569.12 in outstanding A/R, all of which was created on or after July 14, 2018 and $24,923.67 in cash on hand, all of which represents proceeds of A/R created on or after July 14, 2018.  Therefore, the IRS, being owed in excess of $4.6 million as of the Petition Date, is an undersecured creditor.  Because a substantial portion of the outstanding A/R is in the form of monies owed from the United States Government, via Medicare and Medicaid payments, the IRS would be entitled to relief from the automatic stay in order to exercise offset and/or recoupment rights.  Exercising offset rights by

33173375 v1

offsetting payments of Medicare and Medicaid payments would immediately terminate Debtor's business and destroy the value of the company. Therefore, the IRS requires adequate protection in order to prevent it from so moving for stay relief.

13.      The IRS has agreed to allow the priming lien on its pre-petition Collateral, and to temporarily forego the right to seek stay relief or otherwise offset or recoup, in exchange for (1) adequate protection payments from Debtor, using proceeds of the DIP Loan, in the amount of $10,000.00 per month, as well as (2) court approval of the CRO Motion in order to ensure that postpetition payroll tax liabilities being accrued to the IRS are paid when and as due by a third party that assumes responsibility for collecting, accounting for, and paying over employees' payroll taxes and income taxes as required by 26 U.S.C. §§ 3102 and 3402 and who shall be personally liable for any failure to fulfill any of these responsibilities pursuant to 26 U.S.C. § 6672. Nothing in this Interim Order shall waive the IRS's right to seek such stay relief in the event that: (1) the adequate protection payments are not made timely; (2) the Debtor fails to effectuate a sale of its assets within 90 days of the deadline set above for filing a motion to sell its assets; or (3) the Debtor fails to comply with its obligations to pay its own employment taxes and/or its obligations to pay over its employees' payroll and income taxes.  Also, nothing in this Interim Order shall waive the right of any other federal government agency, including the Department of Health and Human Services, from exercising setoff and/or recoupment rights against Debtor.  Both CDS and NSBF have consented to allow the use of their Collateral in exchange for replacement liens in the same Collateral and in the same priorities between them as to post-petition acquired assets

14.      Debtor believes that, under the circumstances, the terms and conditions provided for in the DIP Facility are fair and reasonable.

15.      Debtor has stipulated to the following facts:

7

33173375 v1

Case 3:19-bk-01971   Doc 20-2   Filed 03/29/19   Entered 03/29/19 14:23:52   Desc
Exhibit B - Corrected Agreed Proposed Order Granting Expedited Motion for DIP Fi   Page 7 of 25

(a)    The CDS and NSBF Prepetition Lien Obligations are: (i) legal, valid, binding and enforceable against Debtor and (ii) not subject to any contest, attack, objection, recoupment, defense, counterclaim, offset, subordination, recharacterization, avoidance or other claim, cause of action or other challenge of any nature under the Bankruptcy Code, under applicable non-bankruptcy law or otherwise.  Debtor does not have, hereby forever releases, and is forever barred from bringing or asserting any claims, counterclaims, causes of action, defense or setoff rights relating to the CDS and NSBF Prepetition Lien Obligations, whether arising under the Bankruptcy Code, under applicable non-bankruptcy law or otherwise against either of CDS or NSBF and their respective officers, directors, employees, attorneys, successors and assigns.

(b)    CDS' and NSBF's    Prepetition liens on the Prepetition Collateral are legal, valid, enforceable, non-avoidable, and duly perfected and are not subject to avoidance, attack, offset, recharacterization or subordination under the Bankruptcy Code, under applicable non-bankruptcy law or otherwise and, as of the Petition Date, Debtor is not aware of any liens or security interests having priority over CDS' lien except for the liens of the IRS to be primed as set forth herein.

**THEREFORE, IT HEREBY IS ORDERED THAT:**

1.    **Findings and Conclusions**. The findings and conclusions set forth above and herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 made applicable to these proceedings pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

2.    **Authorization of Financing**. The Motion is granted on an interim basis as set forth herein. The Debtor is hereby authorized to enter into the DIP Loan Agreement (the DIP Loan Agreement, together with all other agreements, documents, notes and instruments delivered

33173375 v1

pursuant hereto or thereto or in connection herewith or therewith to the extent consistent in all respects with the terms and provisions of the DIP Loan Agreement, and including the budget attached to the Motion (the "*Budget*") and this Interim DIP Order, are hereinafter collectively referred to as the "***DIP Financing Documents***") in substantially the form attached to the Motion, and to borrow money, incur indebtedness and perform its obligations hereunder and thereunder in accordance with, and subject to, the terms of this Interim DIP Order and the other DIP Financing Documents, including, without limitation, the applicable Budget and subsequently approved weekly rolling 13 week budgets.

     **3.**      **Conditions Precedent**. CDS shall have no obligation to make any loan or advance under the DIP Facility unless (i) the conditions precedent to making such loan under the DIP Facility have been satisfied in full or waived by CDS in its sole discretion, (ii) the total amount requested or outstanding does not exceed the Borrowing Base, (iii) The Debtor's financial performance has not varied in any materially negative manner from its projections as shown in the Budget and (iii) there shall not exist any default under the DIP Facility.

     **4.**      **Approval of DIP Financing Documents**. The provisions of the DIP Financing Documents are hereby approved on an interim basis in all respects and all such provisions are binding and enforceable in full even if not expressly referenced in this Interim DIP Order pending entry of a final order on this DIP Motion.

     **5.**      **Objections**. Any objections to the Motion with respect to the entry of this Interim DIP Order that have not been withdrawn, waived, or settled, and reservations of rights included therein, are hereby denied and overruled.

33173375 v1

6.      **Obligations of Debtor**. Except as provided herein, upon execution and delivery of the DIP Financing Documents, the DIP Financing Documents shall constitute valid and binding obligations of the Debtor, enforceable against the Debtor in accordance with their respective terms.

7.      **Authorization to Use Collateral and Proceeds of DIP Facility**. Pursuant to the terms and conditions of this Interim DIP Order, the DIP Loan Agreement and the other DIP Financing Documents, and in accordance with the Budget and the variances thereto set forth in the DIP Loan Agreement, (a) the Debtor is authorized to use the advances under the DIP Loan Agreement during the period commencing immediately after the entry of this Interim DIP Order pending entry of a final order on this DIP Motion or the occurrence of an uncured default or an Event of Default (as defined below) and the termination of the DIP Loan Agreement in accordance with its terms and subject to the provisions hereof; (b) the Debtor is authorized to use all Collateral of CDS, the IRS and NSBF, provided that each are granted adequate protection as hereinafter set forth; and, (c) the Debtor is authorized to use all Collateral, subject to the Budget, the DIP Loan Agreement, and this Interim DIP Order, regardless of whether any other creditor may claim an interest in such Collateral. Banks holding accounts of the Debtor are hereby authorized and directed to honor the Debtor's checks and other debits, drawn on any of the Debtor's bank accounts, regardless of whether any levy or garnishment lien may have attached to such accounts.

8.      **Priming of the Prepetition Liens**. For the duration of this Interim DIP Order, payment of the prepetition amounts owed to CDS, the IRS and NSBF under their Prepetition Lien Obligations shall be primed and be subject to the indefeasible payment in full in cash of the DIP Obligations in accordance with the DIP Financing Documents. Without limiting the generality of the foregoing, and except as expressly set forth herein, unless and until all outstanding DIP Obligations are indefeasibly paid in full in cash, all other amounts due and owing under the DIP

33173375 v1

Financing Documents are indefeasibly paid in full in cash and the DIP Loan Agreement and all commitments thereunder are terminated, under no circumstances shall the IRS or NSBF (with respect to any amounts owing under their Prepetition Lien Obligations ) have any enforcement rights against the Prepetition Collateral or Post-Petition Collateral or any other rights or remedies that may interfere with or otherwise restrict the rights and remedies of CDS hereunder, under the other DIP Financing Documents, or otherwise, with respect to the DIP Obligations.

9. **Post-Petition Liens**. As security for the DIP Obligations, CDS hereby is granted a priming senior lien in all Debtor's assets of any kind, tangible and intangible, securing the IRS's pre-petition debt, and a valid, binding, enforceable, and automatically perfected senior priority lien in all of Debtor's post-petition rights, property and assets, tangible and intangible, which shall be valid and properly perfected without the necessity of the filing of any UCC financing statement or establishing any segregated bank accounts or entering into any control agreements with any depository institution (the "***CDS Post-Petition Priming Liens***"). Notwithstanding the foregoing provisions of this paragraph or anything to the contrary in the DIP Financing Documents, the CDS Post-Petition Priming Liens shall not attach to any of the following property: (a) any causes of action, including causes of action or claims pursuant to Sections 544, 545, 547, 548, 550, or 553 of the Bankruptcy Code (the "***Avoidance Actions***"); and (b) any monies recovered in connection with the successful prosecution or settlement of Avoidance Actions or any other causes of action held by the Debtor's estate.

10. **Super-Priority Claim**. In addition, the DIP Obligations and any and all claims of CDS against the Debtor arising, as applicable, out of the DIP Financing Documents, or any provision of this Interim DIP Order regarding the Interim DIP Loan or with regard to the liens granted herein and in the DIP Financing Documents in and to the Post-Petition Collateral, shall

33173375 v1

constitute an allowed super-priority claim (the "*Super-Priority Claim*") in this Chapter 11 Case and any subsequent case in accordance with the provisions of Section 364(c)(1) of the Bankruptcy Code with priority over all other administrative expenses in the Debtor's bankruptcy estate of the kind specified in, or ordered pursuant to, Section 105, 326, 328, 330, 332, 501(a), 503(b), 507(a), 507(b), 552, 726, 1114, or other similar Section of the Bankruptcy Code.

11. **Adequate Protection for PrePetition Liens**.

In exchange for the priming lien in favor of CDS on all assets securing the IRS's Prepetition Claim, the IRS has consented to, and Debtor is authorized and directed to pay to the IRS, adequate protection payments in the amount of $10,000.00 per month. Nothing contained herein shall be deemed to waive the IRS's right to seek stay relief in the event that (1) the adequate protection payments are not made timely, (2) Debtor fails to effectuate a sale of its assets within 90 days of the deadline set forth above for filing a motion to sell its assets, or (3) Debtor fails to comply with its obligations to pay its own employment taxes and/or its obligations to pay over its employees' payroll and income taxes. Nothing herein waives the right of any other federal government agency, including the Department of Health and Human Services, from exercising setoff and/or recoupment rights against Debtor.

As the holder of valid and properly perfected liens in Debtor's Prepetition Collateral, CDS and NSBF are entitled to adequate protection for and on account of Debtor's use of their Collateral and any other decline in value arising out of the automatic stay or Debtor's use, sale, or disposition or other depreciation of the Prepetition Collateral. CDS and NSBF have consented to, and the Court orders, that CDS and NSBF are afforded adequate protection as follows: pursuant to §§ 361, 363(e) and 364(d) of the Bankruptcy Code, continuing valid, binding, enforceable, non-avoidable and automatically perfected post-petition security interests in and liens (collectively the

12

33173375 v1

Case 3:19-bk-01971    Doc 20-2    Filed 03/29/19    Entered 03/29/19 14:23:52    Desc
Exhibit B - Corrected Agreed Proposed Order Granting Expedited Motion for DIP Fi    Page 12 of 25

"**Replacement Liens**") on the Postpetition Collateral in the same relative priorities to one another as they existed on the Petition Date (the "**DIP Collateral**"), with the Replacement Liens being junior only to: (i) the Carve-Out; and (ii) CDS' Post-Petition Priming Lien. The Replacement Liens are otherwise senior to all other security interests in, liens on, or claims against any of the DIP Collateral. Except as provided herein, the Replacement Liens shall not be made subject to or *pari passu* with any lien or security interest by any court order heretofore or hereafter entered in this case or any successor case, and shall be valid and enforceable against any trustee appointed in this case or any successor case, or upon the dismissal of this case or any successor case. Subject to entry of the Final DIP Order, the Replacement Liens shall not be subject to §§ 506(c), 510, 549, or 550 of the Bankruptcy Code.

12. **Professional Carve-Out**.

The foregoing liens and administrative expense claim shall be subject to a carve out as follows: (a) quarterly fees required to be paid pursuant to 28 U.S.C.§(a)(6)(the "U.S. Trustee Fees"), (b) the hourly compensation to be paid to the CRO and Chiron Advisory Services as set forth in the approved CRO order (the "**CRO Carveout**"), (c) allowed claims of Debtor's counsel, not to exceed $200,000 (the "**§Debtor's Counsel's Carve-Out**"), and (d) allowed claims of any counsel for any unsecured creditors' committee, if one if formed, not to exceed $50,000.00 (the "**UCC Carve-Out**" and referred to collectively with the Debtor's Counsel's Carve-out, the "§327 Carve-Out"). Northing herein shall be deemed a cap on the fees and expenses of counsel for the Debtor or any committee to the extent allowed by Orders of this Court, but shall only serve as a cap on how much of such allowed fees and expenses will be paid as part of the §327 Carve-Out. Notwithstanding the foregoing, the §327 Carve-Out shall exclude any fees and expenses incurred in connection with initiating or prosecuting any claims, causes of action, adversary proceedings,

13

Case 3:19-bk-01971    Doc 20-2    Filed 03/29/19    Entered 03/29/19 14:23:52    Desc
Exhibit B - Corrected Agreed Proposed Order Granting Expedited Motion for DIP Fi    Page 13 of 25

or other litigation against CDS or NSBF on account of either their Prepetition Liens or the CDS Post-Petition Priming Liens, including, without limitation, the assertion or joinder in any claim, counterclaim, action, proceeding, application, motion, objection, defenses or other contested matter, the purpose of which is to seek any order, judgment, determination or similar relief, (i) invalidating, setting aside, disallowing, avoiding, challenging or subordinating, in whole or in part, (a) the DIP Obligations, (b) the CDS or NSBF Prepetition Lien Obligations, (c) the CDS or NSBF Prepetition Liens, or (d) the CDS Post-Petition Priming Liens, or (ii) preventing, hindering or delaying, whether directly or indirectly, CDS' or NSBF's assertion or enforcement of their liens or security interests or realization upon any DIP Collateral or Prepetition Collateral, or (iii) prosecuting any Avoidance Actions against CDS or NSBF, or (iv) challenging the amount, validity, extent, perfection, priority, or enforceability of, or asserting any defense, counterclaim, or offset to, the CDS and/or NSBF Prepetition Lien Obligations, or the adequate protection granted herein, or (v) or any other litigation generally against CDS or NSBF.  Nothing herein shall be construed to obligate CDS, in any way, to pay any professional fees, or to assure that Debtor has sufficient funds on hand to pay any professional fees.

13. **Applicable Interest and Fees.**  Interest and fees on the DIP Obligations shall accrue at the rates provided in the DIP Financing Documents (including any default rates, if applicable) and shall be paid in accordance with and at the times provided in the DIP Financing Documents.

14. **Limited Use of DIP Facility Proceeds**. From and after the date of entry of this Interim DIP Order (the "*Effective Date*") until the Final DIP Hearing, the proceeds of the DIP Obligations, the Pre-Petition Collateral, and the Post-Petition Collateral shall not, directly or indirectly, be used to pay expenses of the Debtor or otherwise be disbursed except for those

33173375 v1

expenses and/or disbursements that are expressly permitted under the Budget or the DIP Loan Agreement. The Budget may include a payment of no more than $50,000 per calendar month during the period from the entry of this Interim Order until the occurrence of a Termination Event (as hereinafter defined) to be held by the Debtor ("**Fee Reserve Payments**"), on behalf of its Estate, in a segregated account to be held in the Debtor's counsel's trust account (the "**Fee Reserve Account**"). In no event shall the funds held in the Fee Reserve Account exceed $200,000.00, and once the Fee Reserve Account reaches $200,000.00, Debtor shall no longer be permitted to make Fee Reserve Payments on a monthly basis into the Fee Reserve Account. Funds in the Fee Reserve Account will be used exclusively to pay any professional fee applications awarded to Debtor's counsel on an interim or final basis, and only after final order of the Court. Other than a right to object to any fee applications, no creditor shall have any rights in the Fee Reserve Account except to the extent that excess funds remain in the Fee Reserve Account after approval of all Debtor's counsel's fees by order of this court. Except for the purposes set forth in the first sentence of this Paragraph, CDS has not consented or agreed to the use of the proceeds of the DIP Obligations, the Pre- Petition Collateral, or the Post-Petition Collateral.

15.     **Modification of the Automatic Stay**. The automatic stay of Section 362(a) of the Bankruptcy Code shall be, and it hereby is, modified and lifted to the extent necessary to permit CDS to receive, collect, and apply payments and proceeds in respect of the Post- Petition Collateral in accordance with the terms and provisions of this Interim DIP Order, the DIP Loan Agreement, and the other DIP Financing Documents.

16.     **Maturity**. The DIP Facility, together with any and all other indebtedness and obligations of the Debtor to CDS, shall mature and be due and payable, by the Debtor to CDS, in full on the date (the "*Maturity Date*") that is the earlier of:

33173375 v1

(a)     on the date first set for approval of the Final DIP Order, if the Court denies entry of the DIP Order as submitted;

(b)     one hundred and twenty (120) days form the date this Interim Order is approved;

(c)     the date on which the Loan becomes due and payable at the election of Lender during the continuance of an Event of Default;

(d)     the earlier of (i) the date of an order confirming any sale of any assets of Debtor pursuant to 11 U.S.C. §363 or (ii) the effective date of the confirmation by the Bankruptcy Court of any Chapter 11 Plan, such date not to exceed fifteen (15) days from the date of such confirmation.

Debtor's right to use cash collateral terminates on the Maturity Date.

**17.     Preservation of Rights**. If it shall be necessary for CDS, at any time, to exercise any of its respective rights and remedies under the DIP Loan Agreement due to a default by the Debtor, CDS shall, upon five (5) business days' notice to the U.S. Trustee, counsel to the creditors' committee, if such committee has been appointed, and counsel to the Debtor, have the right to exercise remedies, including but not limited to commencing liquidation without the need for relief from the automatic stay. Pursuant to the DIP Loan Agreement, a copy of which is attached to the Motion, the Debtor shall be deemed to be in default under the DIP Loan Agreement when an Event of Default, as such term is defined in the DIP Loan Agreement, occurs. Events of Default include, but are not limited to, the following:

(a)     failure to obtain entry of the final DIP Order as presented on the date first set for hearing thereon;

33173375 v1

(b)     Debtor's failure to obtain appointment of a Chief Restructuring Officer agreeable to CDS, and on such terms and conditions agreeable to CDS, at the hearing thereon;

(c)     Debtor's failure to provide the Budget to CDS.

CDS shall provide Debtor's counsel, the U.S. Trustee, any committee appointed in the Case, with notice of any Events of Default under the DIP Financing Documents concurrently with notice of such default(s) being given to the Debtor and filed with the Court.

**18.     Right of Access**. Without limiting the rights of access and information afforded CDS under the DIP Financing Documents, the Debtor shall not interfere or prevent representatives, agents, and/or employees of CDS from having reasonable access to their premises and their records during normal business hours and shall cooperate, consult with, and provide to such persons all such non-privileged information as they may reasonably request.

**19.     Reimbursement of Costs and Expenses**. The Debtor shall reimburse CDS for its reasonable costs and expenses provided for in the DIP Loan Agreement without further order of the Court.

**20.     Automatic Perfection**. All liens granted herein  shall pursuant to this Interim DIP Order be, and they hereby are, deemed perfected effective as of the Effective Date, and no further notice, filing, or other act shall be required to effect such perfection; provided, however, that, if CDS shall, in its sole discretion, choose to file financing statements, notices of liens and security interests, and other similar documents related to the DIP lien, all such financing statements, or similar instruments shall be deemed to have been filed or recorded at the time and on the date of entry of this Interim DIP Order.

33173375 v1

21. **Waiver of Surcharge.** The Debtor shall not assert a claim under §506(c) of the Bankruptcy Code for any costs and expenses incurred in connection with the preservation, protection, or enhancement of, or realization by the DIP Lender upon the Post-Petition Collateral.

22. **No Third Party Rights**. Except as explicitly provided for herein, this Interim DIP Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary. Without limiting the foregoing, the priming of the IRS', CDS' and NSBF's Prepetition Liens is for the benefit of CDS only, and does not, under any circumstances inure to the benefit of any other creditor.

23. **Effect of Stipulations on Third Parties**. Except as concerns paragraph 12 of the Statements of Fact concerning the date on which the current A/R was created and the priority of prepetition liens on the same, the stipulations and findings of fact set forth herein shall be binding upon all parties-in-interest, including, without limitation, CDS, NSBF, the IRS, the Debtor, its officers, director and agents, any creditor, any Committee appointed by the United States Trustee, any subsequent trustee, responsible person, examiner with expanded powers, and any other Estate representative unless: (a) a party-in-interest, other than one of the parties set forth above, with standing and requisite authority has timely filed a motion seeking standing to file an adversary proceeding or contested matter or has timely filed an adversary proceeding or contested matter by no later than the date that is the later of, (i) (a) 30 days from the date of the selection of counsel for the Committee, (b) if no such committee has been appointed, no later than 45 days (or a longer period as the Court orders for cause shown before the expiration of such period) after the entry of the Final DIP Order, or (c) upon conversion of the chapter 11 case to chapter 7, to the extent that any relevant challenge period has not expired, such period shall be automatically extended for 30 days from the date a chapter 7 trustee is appointed, or (ii) such later date as has been agreed to, in

33173375 v1

writing, by CDS in its sole discretion (the "**Challenge Deadline**"), (1) challenging the validity, enforceability, priority or extent of CDS or NSBF Prepetition obligations or CDS' or NSBF's Prepetition liens on the Prepetition collateral or (2) otherwise asserting or prosecuting any action for preferences, fraudulent conveyances, other avoidance power claims or any other any claims, counterclaims or causes of action, objections, contests or defenses that Debtor's estate may have (collectively, "**Claims and Defenses**") against CDS or NSBF or their affiliates, representatives, attorneys or advisors in connection with matters related to CDS or NSBF Prepetition Lien Loan Documents, the Prepetition Obligations, or the Prepetition collateral, and (b) there is a final order in favor of the plaintiff sustaining any such challenge or claim in any such adversary proceeding or contested matter filed by the Challenge Deadline; provided, that as to Debtor, all such Claims and Defenses are hereby irrevocably waived and relinquished as of the Petition Date. If no such motion for standing or adversary proceeding or contested matter, as applicable, is filed by the Challenge Deadline: CDS' and NSBF's Prepetition obligations shall constitute allowed claims, not subject to counterclaim, setoff, subordination, recharacterization, defense or avoidance, for all purposes in this case and any subsequent chapter 7 cases; CDS' and NSBF's Prepetition liens on the Prepetition collateral shall be deemed to have been, as of the Petition Date, legal, valid, binding and perfected, not subject to recharacterization, subordination, avoidance or reduction, except by payment; and, CDS' and NSBF's Prepetition obligations, the Prepetition liens on the Prepetition collateral and CDS and NSBF shall not be subject to any other or further challenge by any party in interest seeking to exercise the rights of Debtor's estate, including, without limitation, any successor thereto (including, without limitation, any chapter 7 or 11 trustee appointed or elected for Debtor). If any such motion for standing or adversary proceeding or contested matter, as applicable, is filed by the Challenge Deadline, the stipulations and statements of fact contained in

33173375 v1

this Interim DIP Order shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) on any Committee and on any other person or entity, except to the extent that such findings and admissions were expressly challenged in such adversary proceeding or contested matter. Nothing in this Interim DIP Order vests or confers on any Person (as defined in the Bankruptcy Code), including any Committee, standing or authority to pursue any cause of action belonging to the Debtor or their estates, including, without limitation, Claims and Defenses with respect to the CDS and NSBF Prepetition First Liens or their Prepetition First Lien Obligations.

24. **Successors and Assigns**. The provisions of this Interim DIP Order shall be binding upon and inure to the benefit of CDS, NSBF, the IRS and the Debtor, together with their respective successors and assigns (including any trustee or other fiduciary hereafter appointed as a legal representative of the Debtor or with respect to the property of the estate of the Debtor); provided, however, that CDS shall have no obligation to extend financing to any such trustee, fiduciary or similar person.

25. **Effect of Amendment, Modification, or Appeal**. Based upon the findings set forth in this Interim DIP Order and in accordance with Section 364(e) of the Bankruptcy Code, which is applicable to the post-petition financing arrangements contemplated by this Interim DIP Order, in the event any or all of the provisions of this Interim DIP Order or any other DIP Financing Documents are hereafter modified, amended, or vacated by a subsequent order of this or any other Court, no such modification, amendment, or vacatur shall affect the validity, enforceability, or priority of any Post-Petition Lien, or claim authorized or created hereby or thereby. Notwithstanding any such modification, amendment, or vacatur, any claim granted to CDS hereunder with respect to the Interim DIP Loan or under the other DIP Financing Documents

20

Case 3:19-bk-01971   Doc 20-2   Filed 03/29/19   Entered 03/29/19 14:23:52   Desc
Exhibit B - Corrected Agreed Proposed Order Granting Expedited Motion for DIP Fi   Page 20 of 25

arising prior to the effective date of such modification, amendment or vacation shall be governed in all respects by the original provisions of this Interim DIP Order and the other DIP Financing Documents, and CDS shall be entitled to all of the rights, remedies, privileges, and benefits, including the liens and priorities granted herein and therein, with respect to any such claim.

26.     **Effect of Plan Confirmation**. The obligations of the Debtor in respect of the DIP Obligations, unless otherwise indefeasibly paid in full or provided as otherwise agreed upon, shall not be altered, modified, extended, impaired, affected or discharged by the entry of an order: (a) confirming a plan(s) of reorganization in the Debtor's Chapter 11 Case; (b) dismissing the Debtor's Chapter 11 Case; or (c) converting all or any of the Debtor's Chapter 11 Case under Section 1112 of the Bankruptcy Code.

27.     **No Waiver**. Notwithstanding anything herein, the entry of this Interim DIP Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair: (a) any of the rights of CDS under the Bankruptcy Code or under non- bankruptcy law, including, without limitation, the right of CDS to: (i) request additional adequate protection of its interests in the Post-Petition Collateral, or relief from or modification of the automatic stay extant under Section 362 of the Bankruptcy Code; (ii) request conversion of the Debtor's Chapter 11 Case to cases under Chapter 7 of the Bankruptcy Code; and (iii) propose, subject to the provisions of Section 1121 of the Bankruptcy Code, a Chapter 11 plan; or (b) any of the rights, claims or privileges (whether legal, equitable or otherwise) of CDS.

28.     **Good Faith Finding**. The transactions contemplated by the DIP Loan Agreement have been entered into by CDS in good faith, and, as a result, CDS is entitled to the protections afforded by Section 364(e) of the Bankruptcy Code in the event of any reversal or modification of this Interim DIP Order.

33173375 v1

29.     **Bank Accounts**.  Debtor is authorized and directed to deposit all receipts into its account at Bank of America and to write all Post-Petition checks on Debtor's accounts at that bank. The Debtor is also authorized to establish zero balance, blocked, restricted, or single purpose bank accounts, and lockboxes, as CDS may require, to administer the collection and application of accounts receivable, including those arising under or in connection with Medicare and Medicaid. Notwithstanding the foregoing, the lack of a restricted account does not affect the validity, perfection, or priority of CDS' Post-Petition Priming Lien in the cash on deposit in any of the Debtor's bank accounts, in connection with all amounts owed pursuant to the DIP Facility.

30.     **Retained Jurisdiction**. This Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Interim DIP Order.

31.     **Immediate Effect of Order**. Based upon the record presented to the Court, this Interim DIP Order shall constitute findings of fact and conclusions of law and, notwithstanding Bankruptcy Rules 6006(h), 6006(d), 7062, or 9014 or any other Bankruptcy Rule or Rule 62(a) of the Federal Rules of Civil Procedure, shall take effect immediately and be enforceable upon execution hereof.

32.     **Final Hearing.**

(a)     The Final Hearing to consider entry of the Final DIP Order and final approval of the Motion is scheduled for _____, 2019 at ___:00 a.m., prevailing Central Time at the United States Bankruptcy Court for the Middle District of Tennessee.  If no objections to the relief sought in the Final DIP Hearing are filed and served in accordance with this Interim DIP Order, no Final DIP Hearing may be held, and a separate Final DIP Order may be presented by the Debtor and entered by this Court.

33173375 v1

(b)     On or before _____, 2019, the Debtor shall serve, by United States mail, first class postage prepaid, notice of the entry of this Interim DIP Order and of the Final Hearing (the "***Final Hearing Notice***"), together with copies of this Interim DIP Order, the proposed Final DIP Order and the Cash Collateral Motion, on: (i) the Office of the U.S. Trustee; (ii) the Office of the United States Attorney for the Middle District of Tennessee; (iii) the Internal Revenue Service; (iv) the Debtor's twenty largest unsecured creditors; (v) counsel to CDS; (vi) all other known parties asserting a lien on the Debtor's assets or that otherwise may have an interest in the Prepetition Collateral and the Post-Petition Collateral; and (vii) any party that has filed prior to such date a request for notices with this Court. The Final Hearing Notice shall state that any party in interest objecting to the entry of the proposed Final DIP Order shall file written objections with the Clerk of the bankruptcy Court no later than _____ at 4:00 p.m. prevailing Central time (the "***Objection Deadline***")which objections shall be served so that the same are received on or before such date by: (a) bankruptcy counsel for the Debtor; (b) counsel for CDS and NSBF, Daniel H. Puryear, 104 Woodmont Blvd, Suite 201, Nashville, TN 37205.; (c) counsel to the committee, if any; (d) Counsel for the IRS U.S. Dept. of Justice, c/o Ward Benson, Ben Franklin Station, Box 227, Washington D.C., 20044 and (d) the Office of the United States Trustee for the Middle District of Tennessee, and shall be filed electronically in this case to allow actual receipt of the foregoing no later than the Objection Deadline. Notwithstanding the terms of this Interim DIP Order, this Court is not precluded from entering a Final DIP Order containing provisions that are inconsistent, with, or contrary to any of the terms in this Interim DIP Order, subject to the protections under Section 364(e). In the event this Court modifies any of the provisions of this Interim DIP Order or the DIP Financing Agreements following such further hearing, and subject to any Successful Challenge Action, such modifications shall not affect the rights and priorities of

33173375 v1

CDS pursuant to this Interim DIP Order, and this Interim DIP Order shall remain in full force and effect except as specifically amended or modified at such Final Hearing.

---

**THIS INTERIM DIP ORDER WAS SIGNED AND ENTERED ELECTRONICALLY AS INDICATED AT THE TOP OF THE FIRST PAGE**

---

Submitted for entry:


**/s/ Emily C. Taube**
David W. Houston, IV, No. 20802
Emily C. Taube, No. 19323
Burr & Forman, LLP
222 Second Avenue South, Suite 2000
Nashville, TN 37201
615-724-32165 (phone)
615-724-3315 (fax)
dhouston@burr.com
etaube@burr.com

*Counsel for Capstone Pediatrics, LLC*



**/s/ Daniel H. Puryear**
Daniel H. Puryear; No. 18190
Puryear Law Group
102 Woodmont Boulevard, Suite 520
Nashville, TN 37205
(615) 630-6601 – Telephone
(615) 630-6602 – Facsimile
dpuryear@puryearlawgroup.com

*Attorney for CDS Business Services, Inc., d/b/a Newtek Business Credit and Newtek Small Business Finance, LLC*

33173375 v1

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was filed electronically on March 29, 2019. Notice of this filing was sent by operation of the Court's electronic filing system to all those parties specifically requesting electronic service and as indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system.

/s/ Emily C. Taube

33173375 v1