IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

IN RE: )
) Case No. 3:19-bk-1971
CAPSTONE PEDIATRICS, PLLC, ) Chapter 11
) Judge Randal S. Mashburn
Debtor. )

## DECLARATION OF WINNIE TOLER

The declarant, Winnie Toler, makes the following statement under penalty of perjury:

1. My legal name is Winnie Toler.

2. I am over the age of 18 and am otherwise competent to testify to the matters stated herein.

3. I am the Chief Operating Officer ("COO") of Capstone Pediatrics, PLLC ("Capstone"), and have held said position since October of 2013.

4. As COO of Capstone, I have extensive knowledge of Capstone's operations and financial condition from at least October 2013 to present.

5. This case represents a second petition by Capstone in this Court, the prior Bankruptcy Case, Case No. 3:15-09031 (the "First Bankruptcy Case"), having been voluntarily dismissed by Debtor on May 21, 2018 via a structured dismissal that maintained certain creditor liens and priorities thereof.

6. That structured dismissal was based on Capstone's representations that it had successfully used the protections of the Bankruptcy Code in the First Bankruptcy Case for maximum benefit by rejecting unprofitable leases and contracts and using the protections of the automatic stay to streamline processes and reduce inefficiencies, thereby curing the issues that

had threatened its ability to operate as a going concern on the First Bankruptcy Case petition date.

7. However, certain ever increasing administrative costs to staying in bankruptcy, combined with the fact that the efficiencies achieved could not support a reorganization to be effectuated within the time frame contemplated under § 1129 of the Bankruptcy Code, and the fact that Capstone's principal s were seeking a sale of its membership interests, which sale Capstone believed could more easily be achieved outside the bankruptcy process, warranted dismissal.

8. Capstone has filed the instant case because, notwithstanding its principals' aspirations to effectuate a quick sale outside of bankruptcy after dismissal of the First Bankruptcy Case, those efforts have been unsuccessful.

9. Beginning with the filing of two large tax liens by the IRS within days after dismissal of the First Bankruptcy Case, and the subsequent termination of the line of credit by CDS Business Services, Inc. d/b/a Newtek Business Credit ("CDS"), Capstone's senior secured lender, shortly thereafter, Capstone's business fortunes have declined consistently since the dismissal of the First Bankruptcy Case.

10. Capstone's principals recognized soon after the termination of their line of credit that, particularly in light of the substantial IRS tax liens, there is no possibility of a sale of the membership equity of Capstone, since those tax liens attach to any newly created accounts receivable of Capstone.

11. Thus, in August of 2018, Capstone realized that it needed to sell is assets rather than membership interest, and in that regard, retained investment banking firm Chiron Financial, LLC ("Chiron") to serve as its exclusive investment banker during the sales process.

12. Unfortunately, after multiple discussions with prospective buyers, Capstone has now realized that potential buyers are wary of attempting to execute an acquisition of Capstone's assets outside the bankruptcy process.

13. Additionally, despite working for a number of months to streamline its operations and prepare for an out-of court restructuring and sale, Capstone has defaulted on certain leases and has subsequently reduced the number of its locations to amount that is comparable within the industry. In addition, the Capstone has not been able to timely pay various venders. The arrearages could not be cured, and working out resolutions with Capstone's creditors could not be accomplished through and out-of-court restructuring.

14. As such, Capstone has realized that the only option left is to effectuate a sale of its assets free and clear of liens in Bankruptcy. However, a Chapter 7 liquidation of Capstone's assets would not yield nearly as much as would a sale of the Capstone's assets in full as a going concern business.

15. Therefore, Capstone believes that a Chapter 11 filing, followed by an expedient § 363 motion, is the only option for securing any material value of Capstone so as to maximize the value of Capstone's bankruptcy estate, and to provide as much of a return as possible to the Capstone's creditors.

16. However, Capstone cannot fund ongoing operations, or make adequate protection payments to the IRS, without debtor in possession ("DIP") financing.

17. CDS has indicated a willingness to extend interim secured post-petition credit to Capstone under certain terms, which include the IRS allowing CDS to obtain a priming lien on any pre-petition collateral securing the lines filed by the IRS.

33180084 v1

3

Case 3:19-bk-01971    Doc 31-1    Filed 04/01/19    Entered 04/01/19 17:46:55    Desc Exhibit Declaration of Winnie Toler    Page 3 of 8

18. Capstone has attempted to obtain unsecured credit or financing from sources other than CDS, but has been unable to do so.

19. While the assets could be sold in Chapter 7, Debtor submits that the value of Debtor's assets is much greater if sold as a going concern. Debtor is a pediatric and healthcare operation with multiple locations and a sizeable committed patient base. The primary value of Debtor is reflected in its rights to transfer and assign rights to provide healthcare services, and in the goodwill reflected by, among other things, its substantial patient base of over 25,000 patients.

20. There is value in the General Intangibles as of the Petition Date, including the goodwill associated with the ability to assign licenses to serve and take over Debtor's existing substantial patient base as a going concern. However, if Debtor's operations cease as a result of its inability to obtain the DIP financing necessary to support a §363 sale, the value associated with the different components of General Intangibles will bring appreciably less funds if sold on a piecemeal basis in Chapter 7. In short, given the nature of Debtor's business, continued operation and servicing of the existing customer base is essential to maintain the ongoing business/enterprise value in order to capture the maximum sale price.

21. The IRS is a pre-petition secured creditor, via perfected tax liens, secured by all assets of Debtor, including both those in existence at the time the underlying tax assessments were made and all-after acquired assets. The terms of the DIP Facility require a priming lien over and above the IRS liens, without which there would be no accounts receivable against which CDS could lend as a secured creditor in the first days of this case, as well as a post-petition senior lien on all assets of Debtor, in order to secure CDS' advances thereafter. The IRS has consented to this priming lien and the other DIP protections set forth herein, in exchange for adequate protection set forth herein.

33180084 v1

4

Case 3:19-bk-01971   Doc 31-1   Filed 04/01/19   Entered 04/01/19 17:46:55   Desc
Exhibit Declaration of Winnie Toler    Page 4 of 8

22. As of the Petition Date, all of Debtor's assets are subject to liens in the following order of priority, as applicable to asset category:

(a) CDS holds a valid, properly perfected senior priority first security lien in all general intangibles, accounts receivable, cash and cash equivalents and other assets related thereto, and proceeds thereof, subject to the priming senior liens of the IRS in certain accounts receivable and proceeds thereof ("**A/R**") as set forth in subparagraphs (b)(1) and (b)(2) herein below. CDS also holds a valid, properly perfected second priority lien in all other assets of Debtor, and proceeds thereof, junior only to Newtek Small Business Finance, LLC ("**NSBF**") as set forth below (the "CDS Prepetition Liens"). The amount owed by Debtor to CDS as of the Petition Date is $1,442,983.55, which debt is valid, existing, and not subject to any defense, offset or counterclaim (the "CDS Prepetition Lien Obligations"). Debtor asserts that CDS is an undersecured creditor, and therefore entitled to adequate protection for Debtor's use of CDS' Collateral;

(b)(1) The IRS has a validly perfected, senior lien in A/R created by Debtor on or after July 14, 2018, pursuant to 26 U.S.C. § 6323, as a result of an IRS Tax Lien filed on May 30, 2018 for unpaid payroll taxes in the amount of $2,777,837.85;

(b)(2) The IRS also has a validly perfected, senior lien in A/R created by the Debtor on or after August 9, 2018, pursuant to 26 U.S.C. § 6323, as a result of a June 25, 2018 IRS Tax Lien for unpaid payroll taxes in the amount of $827,898.33;

(b)(3) The IRS also has a validly perfected, senior lien in A/R created by the Debtor on or after April 22, 2019, pursuant to 26 U.S.C. § 6323 as a result of a March 8, 2019 IRS Tax Lien for unpaid payroll taxes in the amount of $1,085,437.67;

33180084 v1

5

Case 3:19-bk-01971   Doc 31-1   Filed 04/01/19   Entered 04/01/19 17:46:55   Desc
Exhibit Declaration of Winnie Toler   Page 5 of 8

(b)(4) The amount owed by Debtor to the IRS on the Petition Date is at least $4,691,173.67. The IRS is undersecured by these liens, since the amount of A/R as of the Petition Date is only $1,889569.12;

(c) NSBF has a valid, properly perfected lien in all assets of Debtor, tangible and intangible, and the proceeds thereof, subject only to the senior lien of CDS in General Intangibles and cash and cash equivalents of Debtor, and subject to the senior liens of CDS and the IRS in the Debtor's A/R, as set forth above (the "NSBF Prepetition Liens"). The amount owed by Debtor to NSBF is not less than $2,569,235.78 (the "NSBF Prepetition Lien Obligations"). Debtor asserts that NSBF is an undersecured creditor, and therefore entitled to adequate protection for Debtor's use of the NSBF Collateral.

(d) McKesson Corporation holds a lien on all of Debtor's assets, junior to each of the foregoing named secured creditors. As a result, Debtor assets that McKesson is completely unsecured.

23. As stated above, as of the Petition Date, Debtor has $1,889,569.12 in outstanding A/R, all of which was created on or after July 14, 2018 and $24,923.67 in cash on hand, all of which represents proceeds of A/R created on or after July 14, 2018. Therefore, the IRS, being owed in excess of $4.6 million as of the Petition Date, is an undersecured creditor. Because a substantial portion of the outstanding A/R is in the form of monies owed from the United States Government, via Medicare and Medicaid payments, the IRS would be entitled to relief from the automatic stay in order to exercise offset and/or recoupment rights. Exercising offset rights by offsetting payments of Medicare and Medicaid payments would immediately terminate Debtor's business and destroy the value of the company. Therefore, it is essential to provide the IRS with adequate protection in order to prevent it from so moving for stay relief.

24. Debtor believes that, under the circumstances, the terms and conditions provided for in the DIP Facility are fair and reasonable, and requests approval thereof by this Court.

25. Attached hereto as **Exhibit B** is Debtor's cash flow budget for the 13-week period beginning from the Petition Date (the "**Budget**"). If necessary, Debtor will amend the Budget, subject to the consent of CDS in advance of the final hearing on this Motion and thereafter as required. The Budget reflects, among other things, anticipated receipts, disbursements and cash on hand and will be revised on an on-going basis. The Budget is a projection and is subject to change (with the consent of CDS) based on the amount of credit obtained from vendors, the amount of new business obtained and the level of continued revenues generated.

Date: April 1, 2019

/s/ Winnie Toler
**WINNIE TOLER**
Chief Operating Officer
Capstone Pediatrics, PLLC
1420 Donelson Pike, Suite B-17
Nashville, TN 37214
615-610-3890

33180084 v1

7

Case 3:19-bk-01971   Doc 31-1   Filed 04/01/19   Entered 04/01/19 17:46:55   Desc Exhibit Declaration of Winnie Toler   Page 7 of 8

# Capstone Pediatrics - 13 Week Cash Flow Fcst (in 000's)

| Weeks | Pre-Petition | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | w/e 3/29 forecast | w/e 4/5 forecast | w/e 4/12 forecast | w/e 4/19 forecast | w/e 4/26 forecast | w/e 5/3 forecast | w/e 5/10 forecast | w/e 5/17 forecast | w/e 5/24 forecast | w/e 5/31 forecast | w/e 6/7 forecast | w/e 6/14 forecast | w/e 6/21 forecast |
| **Beginning Cash Balance** | $ - | $ 90 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| **Receipts:** | | | | | | | | | | | | | |
| AMG | | 14 | 14 | 14 | 14 | 14 | 14 | 14 | 14 | 14 | 14 | 14 | 14 |
| BC | | 28 | 22 | 22 | 22 | 22 | 22 | 22 | 22 | 22 | 22 | 22 | 22 |
| UHC | | 13 | 13 | 13 | 13 | 13 | 13 | 13 | 13 | 13 | 13 | 13 | 13 |
| Other Claims | | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 |
| Collection on Denials | | - | - | - | - | - | 10 | 10 | 10 | 10 | 10 | 10 | 10 |
| PCMH | | 30 | - | - | - | 55 | 29 | - | - | 55 | 29 | - | - | 55 |
| **TOTAL COLLECTIONS** | | 90 | 54 | 54 | 54 | 109 | 83 | 64 | 64 | 119 | 93 | 64 | 64 | 119 |
| **Disbursements:** | | | | | | | | | | | | | |
| Medical Supplies & Vaccines | - | (15) | (8) | (7) | (8) | (7) | (8) | (7) | (8) | (7) | (8) | (7) | (8) |
| Payroll | - | (369) | (37) | (97) | (37) | (97) | (37) | (97) | (37) | (97) | (37) | (97) | (37) |
| Occupancy | - | (42) | (4) | (4) | (4) | (38) | (4) | (4) | (4) | (4) | (38) | (4) | (4) |
| Equipment & Repairs | - | (3) | (2) | (2) | (2) | (2) | (2) | (2) | (2) | (2) | (2) | (2) | (2) |
| Insurance | - | (5) | (2) | (2) | (2) | (2) | (2) | (2) | (2) | (2) | (2) | (2) | (2) |
| General Expenses | - | (22) | (11) | (11) | (11) | (11) | (11) | (11) | (11) | (11) | (11) | (11) | (11) |
| Legal / Professional fees | - | (25) | (54) | - | (54) | - | (48) | - | (48) | - | (48) | - | (48) |
| DIP Costs | - | (20) | - | - | - | (9) | - | - | - | - | (13) | - | - |
| US Trustee fees | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Adequate Protection | - | (10) | - | - | - | (10) | - | - | - | - | (10) | - | - |
| Other | - | - | - | (1) | (8) | (0) | (0) | (0) | (0) | (8) | (0) | (0) | (0) |
| **Total Disbursements** | - | (511) | (118) | (124) | (126) | (176) | (113) | (123) | (113) | (131) | (170) | (123) | (113) |
| **Change in Cash** | 90 | (457) | (64) | (70) | (16) | (93) | (49) | (59) | 7 | (38) | (106) | (59) | 7 |