IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| In re: ) | |
| ) | Case No. 3:19-bk-1971 |
| **CAPSTONE PEDIATRICS, PLLC,** ) | |
| ) | Chapter 11 |
| Debtor. ) | |

**EXPEDITED MOTION TO (1) REQUIRE PERFORMANCE OF
AND (2) ASSUME EXECUTORY CONTRACT WITH PRACTICESUITE, INC.**

Capstone Pediatrics, PLLC ("Debtor"), files this expedited motion ("Motion") pursuant to 11 U.S.C. § 365 and Rules 6004, 6006, & 9014 of the Federal Rules of Bankruptcy Procedures ("Bankruptcy Rules" or "Bankruptcy Rule"), for entry of an order requiring performance of and assuming that certain *Professional Services Agreement* dated May 29, 2018 (including all addendums, exhibits, schedules, and attachments thereto, and as may be amended or restated from time to time, the "Contract"), by and between Debtor and Practicesuite, Inc., a Delaware corporation ("Vendor"). A true and correct copy of the Contract is attached hereto as ***Exhibit A***. In further support of this Motion, Debtor states as follows:

## I. COMPLIANCE WITH LBR 9075-1

1. **Expedited Relief Requested**: That this Court enter an order (i) preventing the Vendor from terminating services under the Contract and (ii) granting Debtor's request to assume the Contract, pay the Arrearage (as defined herein), and provide Vendor with adequate assurance of future performance.

2. **Basis for Urgency**: Vendor has stated it intends to terminate the Contract and cease providing critical services, as soon as today, April 8, 2019, unless Debtor makes payment on certain pre-petition debts in the approximate amount of $20,195.63. Under the Contract, the

1

Vendor provides critical services to the Debtor wherein the Vendor, among other services provided, handles the Debtor's medical coding, billing, accounts receivable, and related accounting functions. Specifically, the Vendor has exclusive access to a software interface program ("Interface") that provides reporting information which, ultimately, the Debtor's DIP lender utilizes in providing funding under the DIP loan facility. Without such reporting, the DIP lender may not continue to fund the bankruptcy case. In addition to the above, without the services provided under the Contract, and unless the Debtor finds a replacement vendor, the Debtor will be unable to bill patients, insurance companies, and government payers for the services rendered by the Debtor; payments will be delayed and/or the third-party payers may refuse to make payment; and the cash flow of the Debtor will be greatly diminished if not ceased all together. The Debtor's proposed assumption of the Contact will cure the Arrearage (as defined below), provide the Vendor with adequate assurance of future performance, and will continue to allow the necessary cash flow to allow the Debtor's bankruptcy case to survive. Absent a hearing on an expedited basis, if the Vendor terminates services the Debtor will be unable to operate its business in the ordinary course.

3. **Notice**: This Motion has been served on: (i) all parties consenting to electronic service via the Court's CM/ECF system, (ii) the Office of the United States Trustee via email, (iii) the 20 largest unsecured creditors and all secured creditors via email, fax, or U.S. mail. This motion has also been emailed to all parties asserting a security interest in the Debtor's collateral. The Debtor has notified the Vendor by email and will also attempt notification via telephone.

4. **Suggested Hearing Date**: The Debtor requests a hearing date at the Court's earliest convenience or no later than of April 16, 2019, at 9:00 a.m., in Courtroom 1, Customs House, 701 Broadway, Nashville, Tennessee 37203.

5. **Supporting Argument**: Debtor supports this motion as set forth below.

## II. JURISDICTION

6. This Court has jurisdiction over this case pursuant 28 U.S.C. § 1334.

7. The subject matter of this Motion is a "core proceeding" pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (M).

8. Venue is proper with this Court pursuant to 28 U.S.C. §§ 1408 and/or 1409.

## III. FACTS

9. On March 28, 2019 ("Petition Date"), the Debtor commenced this case by filing a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

10. The Debtor is in possession of its property and is managing its affairs as a debtor-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108. No Trustee has been appointed, nor has a committee of unsecured creditors been appointed.

11. Debtor is a pediatric and healthcare operation with multiple locations and a sizeable committed patient base.

12. Under the Contract, Vendor provides the following, among other, critical services to the Debtor:

(a) Charge Entry and Demographic Entry. Charge and demographic entry is a critical component of the Debtor's revenue management cycle because it assigns the amount to be charged for the medical services provided by the Debtor. Without such charge or demographic entry, the Debtor cannot be reimbursed for its services.

(b) Reporting on A/R and Access to Interface. Vendor has exclusive access to the Interface wherein the Vendor provides accounts receivable information to a third-party, which such third-party verifies and then reports to the DIP lender. Without access to the Interface and the reporting that stems from it, the DIP lender could cease funding the bankruptcy case.

(c) <u>Post of Payments and Insurance Adjustments</u>. The posting of payments is the manner in which the Debtor makes a claim against the third-party payer (*e.g.*, insurance, Medicare, Medicaid, etc.) for the repayment of the services rendered.

(d) <u>Posting of Explanation of Benefits ("EOBs")</u>. EOBs explain what payments were paid by the third-party payer. It is critical for the Debtor to know what amounts were paid by the third-party payer so that the Debtor can attempt to recoup any shortfall from the patient.

(e) <u>Posting of Patient Payments</u>. The Vendor is required to report to the Debtor what payments have been made by the patient directly.

(f) <u>Key Accounting and other Billing Functions</u>. The Vendor is required to provide a monthly reconciliation reports for payments posted, required to track insurance eligibility verification & prior authorizations, and follow up with certain payers regarding unpaid claims.

13. Vendor alleges that the Debtor owes it approximately $20,195.63 in pre-petition debt. The Debtor does not dispute that it owes the Vendor a pre-petition debt; however, the amount owed is under further review and accounting prior to any assumption. As used herein, the pre-petition arrearage owed to Vendor which may be mutually agreed upon by the Debtor and the Vendor shall be referred to herein as the "<u>Arrearage</u>."

14. Vendor's termination of services will require the Debtor to obtain a new revenue cycle management ("<u>RCM</u>") company. The process of entering into an agreement with a new RCM company involves new software and implementation fees, training and hardware costs, new personnel to build and design the system, integration costs. In addition, the disruption of the Debtor's revenue cycle and the potential for coding or billing errors through the implementation

of a new system will lead to an additional financial impact on the Debtor's business, including a decline in cash collections.

15. Debtor's operating budget has little room for error or deviation. As a result, the Debtor's business is likely to shut down and cease operations if the Debtor is unable to continue using Vendor's services and is required to expend resources on transitioning to a new RCM company.

16. Debtor requests that this Court enter an order (i) preventing the Vendor from terminating the RCM services it provides to the Debtor and (ii) allowing the Debtor to cure the Arrearage and provide adequate assurance of payment under the Contract in the form a security deposit in the amount $20,000.00 ("Security Deposit") to be utilized for further monthly charges.

17. By this Motion, Debtor requests entry of an order, pursuant to 11 U.S.C. § 365, and Bankruptcy Rules 6004, 6006 & 9014, (i) preventing the Vendor from terminating the Contract or services provided thereunder; (ii) assuming the Contract on the terms stated herein and in the Contract, and (iii) waiving Bankruptcy Rule 6004(h), which contains an automatic fourteen (14) day stay of orders authorizing the use of property.

### IV. LAW AND ARGUMENT

**A. Vendor Must Continue to Perform Until the Debtor Rejects or Assumes.**

18. This Motion involves the question of a nondebtor's postpetition performance obligations under an executory contract.

19. An executory contract is enforceable *by* a debtor in possession prior the assumption or rejection of that contract under 11 U.S.C. § 365(a), but not *against* a debtor in possession, so that a debtor in possession can have "flexibility and breathing space." *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 540 (1984).

20. The majority of courts, applying *Bildisco*, have held that the nondebtor party to an executory contract must perform prior to a debtor's decision whether to assume or reject a contract. *See In re Pittsburgh-Canfield Corp.*, 283 B.R. 231, 238 (Bankr. N.D. Ohio 2002) ("[T]he non-debtor party cannot unilaterally elect to cease performance on an executory contract prior to its assumption or rejection.") (internal quotations omitted); *see also In re Rhodes, Inc.*, 321 B.R. 80, 91 (Bankr. N.D. Ga. 2005); *In re El Paso Refinery LP*, 196 B.R. 58 (Bankr. W.D. Tex. 1996).

21. A pre-*Bildisco* decision from the Seventh Circuit is instructive on the issue in this matter. In *Matter of Whitcomb & Keller Mortg. Co., Inc.*, the debtor – a mortgage servicing company – sought a restraining order from the bankruptcy court after a service provider discontinued computer services based upon the debtor's prepetition defaults. 715 F.2d 375, 377 (7th Cir. 1983). The termination of computer services paralyzed the debtor's operations. *Id.* The bankruptcy court ultimately issued a restraining order in order to "preserve the status quo" until the debtor made its decision to assume or reject the contract at issue. *Id.* at 378.

22. Here, the Vendor's RCM services are critical to the Debtor's operations because this allows for a steady, consistent processing of billing and management of the Debtor's A/R. Interruption of those services will paralyze the Debtor's operations, ultimately causing a reduction in cash collections and other financial disruption.

23. Further, as set forth in this Motion, the Debtor presumes to cure the entirety of the prepetition Arrearage and to assume the Contract. During the period between entry of an order requiring the Vendor to continue providing RCM services under the Contract and the entry of an order regarding the assumption of the Contract, the vendor is unlikely to suffer harm or prejudice by allowing the Debtor to using services and a platform it has been using for a nearly a year.

### B. The Debtor Has a Valid Basis to Assume the Contract with Vendor.

24. 11 U.S.C. § 365(a) provides that a debtor, "subject to the court's approval, may assume or reject an executory contract or an unexpired lease." The assumption or rejection of an unexpired lease or executory contract by a debtor is subject to review under the business judgment standard. *See Group of Inst'l Investors v. Chicago, Milwaukee, St. Paul, & Pacific R.R. Co.*, 318 U.S. 523, 550 (1943); *In re Trans World Airlines, Inc.*, 261 B.R. 103, 120-21 (Bankr. D. Del. 2001); *Wheeling-Pittsburgh Steel Corp. v. W. Penn Power Co. (In re Wheeling-Pittsburgh Steel Corp.),* 72 B.R. 845, 845-846 (Bankr. W.D. Pa. 1987).

25. If a debtor's business judgment has been reasonably exercised, a court should approve the assumption or rejection of an unexpired lease or executory contract. *See, e.g., Sharon Steel Corp. v. Nat'l Fuel Gas Distribution Corp.*, 872 F.2d 36, 39–40 (3d Cir. 1989) (stating that the debtor's decision to assume or reject an executory contract should not be disturbed if the decision was reasonably made to benefit the estate); *Summit Land Co. v. Allen (In re Summit Land Co.)*, 13 B.R. 310, 315 (Bankr. D. Utah 1981) (absent extraordinary circumstances, court approval of a debtor's decision to assume or reject an executory contract "should be granted as a matter of course").

26. The proposed Assumption of the Contract is well within the sound business judgment of the Debtor because, without assumption, and unless the Debtor timely finds a replacement vendor, the billing and collection activities of the Debtor will cease and the required reporting DIP lender will not occur. Without such key functions, this bankruptcy case could fail and the Debtor would be unable to potentially sell its business as a going concern.

27. 11 U.S.C. § 365(b)(1) requires, as a condition precedent to the assumption of an executory contract, that the Debtor:

33206511 v2
Case 3:19-bk-01971    Doc 62    Filed 04/08/19    Entered 04/08/19 14:44:02    Desc Main
Document    Page 7 of 9

(A) cures, or provides adequate assurance that the [debtor] will promptly cure, such default other than a default that is a breach of a provision relating to the satisfaction of any provision (other than a penalty rate or penalty provision) relating to a default arising from any failure to perform nonmonetary obligations under an unexpired lease of real property, if it is impossible for the trustee to cure such default by performing nonmonetary acts at and after the time of assumption . . . .

(B) compensates, or provides adequate assurance that the [debtor] will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and

(C) provides adequate assurance of future performance under such contract or lease.

28. The Debtor's proposed assumption of the Contract meets all three (3) conditions precedent.

29. First, the only defaults under the Contract (excluding any defaults related to any *ipso facto* clauses and those defaults referenced in 11 U.S.C. § 365(b)(2)) that Debtor is aware of are monetary defaults. The monetary default will be cured by the payment of the Arrearage.

30. Debtor is not aware of any actual pecuniary loss caused by the default under the Contract.

31. Debtor proposes to provide more than sufficient adequate assurance of future performance with the posting of the $20,000.00 Security Deposit. As set forth in Exhibit B and the Addendum to the Contract, Debtor is paying Vendor a flat fee of $8,000.00 a month for the services rendered under the Contract. The Security Deposit would provide at least 2.5 months of security for the services rendered thereunder.

32. The Debtor further seeks a waiver of any stay of any order approving this motion. Pursuant to Rule 6004(h), "[an] order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." *See* Fed. R. Bankr. P. 6004(h). The Debtor would like to assume the Agreement effective contemporaneously with entry of any potential order granting the Motion.

33. Based upon the reasons cited by the Debtor in order to obtain expedited relief, cause exists to justify a waiver of the fourteen-day stay imposed by Rule 6004(h) to the extent it applies.

WHEREFORE, the Debtor respectfully requests entry of an order (i) granting the relief requested herein, and (ii) granting the Debtor such other and further relief as the Court deems just and proper.

Respectfully submitted,

*/s/ David W. Houston, IV*
David W. Houston, IV, No. 20802
Emily C. Taube, No. 19323
Burr & Forman, LLP
222 Second Avenue South, Suite 2000
Nashville, TN  37201
615-724-32165 (phone)
615-724-3315 (fax)
dhouston@burr.com
etaube@burr.com

*Proposed Counsel for Capstone Pediatrics, PLLC*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was filed electronically on April 8, 2019.  Notice of this filing was sent by operation of the Court's electronic filing system to all those parties specifically requesting electronic service and as indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system.

*/s/ David W. Houston, IV*
David W. Houston, IV