## PROFESSIONAL SERVICES AGREEMENT

This professional Service Agreement (Agreement), effective as of May 29th, 2018 ("Effective Date"), with invoicing starting June 1st, 2018, is entered into between PRACTICESUITE, Inc. A Delaware Corporation, a fully owned subsidiary of PRACTICESUITE, Inc. with office at 37600 Central Court # 260 Newark CA 94560("PROVIDER") and Capstone Pediatrics, PLLC, with offices at 1420 Donelson Pike Suite B17 Nashville, TN 37217 ("CLIENT"). This Agreement sets forth the terms and conditions whereby PROVIDER shall provide certain services to CLIENT on the terms set forth below. Now, therefore, in consideration of the mutual covenants contained in this Agreement and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

1) **SERVICES TO BE RENDERED BY PROVIDER.** During the term of this Agreement, PROVIDER shall provide certain services to CLIENT in connection with its professional service organization, which services may include but not be limited to all or some of the services set forth on Exhibit A attached hereto and incorporated herein. No other services shall be rendered by PROVIDER unless Exhibit A is modified by the written consent of each party.

2) **NO CODING AND BILLING ADVICE.** CLIENT understands and agree that PROVIDER is not a medical billing or a medical coding company and therefore shall not be involved in providing billing and coding activities. During the course of this Agreement, any communication(s) between the PROVIDER and the CLIENT with respect to services expressed in Exhibit A shall never be construed as a medical billing or coding advice.

3) **FEES.** As compensation for the services to be performed, PROVIDER shall, around the 2nd day of each month, render an advance invoice statement to CLIENT for monthly services to be provided for NEXT month. PROVIDER shall email invoices and such invoice will be due upon receipt. Fees shall be based on the fee schedule as described on Exhibit B.

4) **TERM AND TERMINATION.** The term of this Agreement shall commence on the effective date and unless this Agreement is terminated pursuant to this Section 3, shall continue for a term of ninety (90) days (the "Initial Term"). This Agreement shall automatically renew monthly, unless either party gives the other party prior written notice of termination at least 30 days before the expiration of the then current term. Notwithstanding any other provision hereof, either party may terminate this Agreement upon 30 days prior written notice of its intent to terminate this Agreement to the other party.

   a) **Termination for PROVIDER's Breach.** The CLIENT shall have the right to terminate this Agreement by written notice to PROVIDER upon PROVIDER's material breach of this Agreement. Such written notice shall describe in reasonable detail the alleged breach and the basis upon which the CLIENT believes such termination is justified. Upon receipt of such notice, PROVIDER shall have 30 days during which to attempt to cure such alleged breach, and upon such cure being effected, the CLIENT's right to terminate shall cease and this Agreement will continue in full force and effect. A notice of breach to PROVIDER does not entitle the CLIENT a provision for non-payment for services rendered. The CLIENT shall remain liable for all outstanding payments until the last date of services performed under this agreement as per the provisions expressed under COMPENSATION in this agreement.

   b) **Termination for CLIENT's Breach.** PROVIDER shall have the right to terminate this Agreement upon written notice to the CLIENT upon the CLIENT's material breach of this Agreement. Such written notice shall describe in reasonable detail the alleged breach and the basis upon which PROVIDER believes such termination is justified. Upon receipt of such notice, the CLIENT shall have 30 days during which to attempt to cure such alleged breach, and upon such cure being effected, PROVIDER's right to terminate shall cease and this Agreement will continue in full force and effect.

5) **CLIENT OBLIGATIONS.** CLIENT agrees that it will provide to PROVIDER certain accounts accumulated in its business during the term of this Agreement for processing by PROVIDER. CLIENT agrees to provide PROVIDER with the complete information necessary to work on each patient, including but not limited to, current patient name and address, code numbers, procedure, Insurance Information, time and date service was rendered and other information available to CLIENT and necessary or requested by PROVIDER in the billing and collection process. In the cases where PROVIDER uses client's designated software, the CLIENT shall access to the reports in real-time and therefore no reporting will be required.

6) **INDEMNIFICATION.** CLIENT hereby agrees to indemnify, defend, and hold PROVIDER, and/or employees of PROVIDER harmless from and against any losses, claims, damages or expenses, and/or all costs of prosecution or defense of their rights hereunder, or of any claim asserted against PROVIDER by any person or entity not a party to this Agreement and arising from any act or omission of CLIENT or its agents, employees or consultants,

Initial _____ *FT*

whether in judicial proceedings, including appellate proceedings, or out of court, including without limiting the generality of the foregoing, attorneys' fees and all costs and expenses of litigation arising from such asserted claim.

7) MEDIATION AND ARBITRATION: IT IS THE INTENTION OF ALL PARTIES THAT NO DISPUTE UNDER THIS AGREEMENT OR WITH RESPECT TO RELATIONSHIP BETWEEN PARTIES WILL BE THE SUBJECT OF ANY COURT ACTION OR LITIGATION IN THE LOCAL, STATE, OR FEDERAL JUDICIAL SYSTEM. THE PARTIES RECOGNIZE THAT THE PROBLEM RESOLUTION PROCESSES OF MEDIATION AND ARBITRATION ARE APPROPRIATE AND PREFERABLE TO RESOLVE ISSUES BETWEEN THE PARTIES. IF ANY PARTY HERETO WISHES TO RESOLVE AN ISSUE UNDER OR RELATING TO THIS AGREEMENT, THEN SUCH PARTY MUST GIVE NOTICE OF A REQUEST FOR MEDIATION TO THE OTHER PARTIES, WHICH NOTICE SHALL SET FORTH THE NAMES OF NOT LESS THAN THREE (3) MEDIATORS FROM THE PANEL OF THE AMERICAN ARBITRATION ASSOCIATION OR OTHER MUTUALLY AGREED UPON ALTERNATIVE DISPUTE RESOLUTION SERVICE IN ALAMEDA COUNTY, CALIFORNIA. THE PARTY RECEIVING SUCH NOTICE SHALL AGREE UPON ONE OR MORE SUCH MEDIATORS WITH TEN (10) DAYS OF RECEIPT OF SUCH NOTICE AND A MEDIATION WILL BE SCHEDULED AS SOON AS FEASIBLE BETWEEN THE PARTIES AND THEIR RESPECTIVE ADVISORS, AND THE PARTIES AND THEIR ADVISORS WILL COOPERATE FULLY WITH RESPECT TO SHARING OF INFORMATION AND ATTENDANCE AT MEETINGS IN ORDER TO SEEK RESOLUTION. THE PARTIES WILL SHARE MEDIATION EXPENSES WITH THE PARTY REQUESTING THE MEDIATION, PAYING ONE-HALF OF SUCH EXPENSE OF THE MEDIATOR FEES AND THE OTHER PARTY PAYING THE OTHER ONE-HALF OF SUCH EXPENSES. IF RESOLUTION OF THE MATTERS BETWEEN THE PARTIES CANNOT BE RESOLVED IN MEDIATION WITHIN TWENTY (20) DAYS OF THE SELECTION OF A MEDIATOR BY THE PARTY RECEIVING SUCH NOTICE, THEN THE MATTER SHALL BE PRESENTED TO FORMAL ARBITRATION PURSUANT TO THE RULES UTILIZED BY THE ALTERNATIVE DISPUTE RESOLUTION SERVICE SELECTED BY AN ARBITRATOR FROM SUCH SERVICE'S PANEL AGREED UPON BY THE PARTIES OR, IF THE PARTIES ARE UNABLE TO AGREE UPON AN ARBITRATOR WITHIN TEN (10) DAYS OF THE COMPLETION OF MEDIATION, BY A PANEL OF THREE (3) ARBITRATORS FROM SUCH PANEL SELECTED BY SUCH SERVICE'S ADMINISTRATOR. ARBITRATION SHALL TAKE PLACE IN THE VENUE IN WHICH THE MEDIATION SHALL HAVE OCCURRED AS SOON AS POSSIBLE AND THE DECISION OF THE ARBITRATOR PANEL SHALL BE BINDING UPON THE PARTIES FOR ALL PURPOSES. IT IS THE INTENTION OF THE PARTIES THAT THIS AGREEMENT SHALL BE CONSTRUED AND INTERPRETED IN A FAIR AND EQUITABLE MANNER BASED UPON THE FACTS AND CIRCUMSTANCES OF THE PARTIES TAKING INTO ACCOUNT THE PRESENT INTENTION OF THE PARTIES TO HAVE A FAIR AND EQUITABLE AGREEMENT UNDER THE TERMS AND CONDITIONS SET FORTH IN THIS AGREEMENT.

8) LIMITATION OF LIABILITIES: In no event will CLIENT be liable to PRACTICESUITE, or PRACTICSUITE be liable to CLIENT and/or any third parties (including without limitation CLIENT's clients and/or End-User) for any claim, loss or damage, direct, ordinary, special or consequential or punitive or otherwise, even if either party has been advised of the possibility of such damages. PRACTICESUITE total liability for any and all alleged or actual damages or claims under this Agreement shall not exceed the amount of monthly fees paid by CLIENT under this Agreement for the most recent one (1) month of period. Both parties agree that PRACTICESUITE's pricing and other terms and conditions of this Agreement set for CLIENT reflect the allocation of risk and the limitation of liability specified herein.

9) COMPLETE AGREEMENT. The parties agree that this Agreement constitutes the complete and exclusive understanding and agreement of the parties relating to the subject matter hereof and supersedes all prior understandings, proposals, agreements, negotiations, and discussions between the

10) NON-EMPLOYMENT. During the term of this Agreement and for one year period commencing with the termination of this Agreement, CLIENT agrees not to employ, directly or indirectly, or through any third party rendering services on behalf of PROVIDER, any employees/ex-employees of PROVIDER or its parent, affiliates or subsidiaries without written consent by PROVIDER. CLIENT agrees that PROVIDER does not have adequate remedy at law to protect its rights under this section and agrees that PROVIDER will have the right to injunctive relief from any violation or threatened violation of this section. In lieu of injunctive relief, PROVIDER may elect to require reimbursement from CLIENT in the amount of $25,000 as a recruiting and retraining fee, payable within seven (7) days from written notice from PROVIDER specifying the allegations performed by CLIENT in violation of this Section 6.

11) NON-SOLICITATION. The CLIENT shall be outsourcing the work of its CLIENTs (physicians and hospitals) to PROVIDER. PROVIDER hereby agrees not to enter into any agreement with these CLIENTs directly, during the tenure of this agreement and for a period of one year thereafter.

12) CONFIDENTIAL INFORMATION. The parties agree that all information affecting or relating to CLIENT's policies and procedures relating to responses to unpaid claims and follow-up with third party payers is "Confidential Information" and shall remain the property of the CLIENT. PROVIDER shall have no property right in such Confidential Information. PROVIDER recognizes that the Confidential Information is confidential, material and

2

important without regard to whether such information constitutes a trade secret. PROVIDER agrees that it will not, at any time, in any manner, either directly or indirectly, disclose to any entity, person, firm or corporation, in any manner whatsoever, any Confidential Information. All Confidential Information shall remain the property of the CLIENT upon termination of this Service Agreement.

13) **COMPLIANCE WITH THE HEALTH INSURANCE PORTABILITY AND ACCOUNTABILITY ACT**. The parties acknowledge that CLIENT is subject to the Administrative Simplification requirements of the Health Insurance Portability and Accountability Act of 1996 and regulations promulgated there under ("HIPAA"), and that HIPAA mandates that CLIENT require PROVIDER to provide for the protection of the privacy and security of Health Information. Accordingly, PROVIDER ("PROVIDER") USES REASONABLE EFFORTS TO ENABLE ITS TECHNOLOGY & SERVICES TO MEET ALL APPLICABLE HIPAA REQUIREMENTS.

14) **FEDERAL PRIVACY REGULATION COMPLIANCE**: PROVIDER will implement appropriate safeguards to prevent the use or disclosure of the CLIENT's Protected Health Information other than as provided for in this Agreement. If PROVIDER becomes aware of any use of disclosure of the CLIENT's Protected Health Information not provided for in this Agreement, PROVIDER shall report such information to the CLIENT

15) **DISPUTE AND DISPUTE RESOLUTION:** Except for non-payment of invoices, any disputes arising out of or under this Agreement and/or business arrangements created hereunder shall be submitted to binding and non-applicable arbitration before a single arbitrator under Rules of the American Arbitration Association ("AAA"). Said arbitration shall take place before the AAA in Alameda County, California or in the County of PROVIDER's primary business address. Notwithstanding anything to the contrary in the Rules of the AAA, any arbitration hereunder shall be conducted under the Federal Rules of Evidence.

16) **MISCELLANEOUS**.

    a) **Counterparts**. This Agreement may be executed in any number of counterparts, each of which shall be an original and all of which shall together constitute one agreement.

    b) **Modification**. This Agreement may not be modified, nor may any provision hereof be waived, except in writing executed by both parties.

    c) **Entire Agreement**. This Agreement constitutes the entire agreement of the parties hereto regarding the subject matter hereof and supersedes all prior agreements and representations with respect to the subject matter hereof.

    IN WITNESS WHEREOF, the parties have signed and delivered this Agreement on the date set forth above.

**Customer**

By: *Winnie Griffieth Toler* (Digitally signed by Winnie Griffieth Toler, DN: cn=Winnie Griffieth Toler, o=Capstone Pediatrics, ou, email=wtoler@capstonepediatrics.com, c=US, Date: 2018.05.29 20:51:11 -05'00')

Print Name: Winnie Griffieth Toler

Title: COO    Date: 5/29/18

**PRACTICESUITE, Inc**

By: *Fareed Taghvaee*

Print Name: Fareed Taghvaee

Title: Director, Sales    Date: 05/30/2018

3

Case 3:19-bk-01971   Doc 62-1   Filed 04/08/19   Entered 04/08/19 15:17:03   Desc
Exhibit Exhibit A - Practicesuite Contract   Page 3 of 12

## PROVIDER SUMMARY OF SERVICES

### EXHIBIT "A"

### PROFESSIONAL SERVICES PROVIDED BY PROVIDER

1. Charge Entry, Demographics Entry
2. Posting of payments and insurance adjustments according to contractual agreements within 72 business hours
3. Posting of paper scanned EOBs within 72 business hours
4. Posting of patient payments within 72 business hours
5. Weekly log of questions and clarification
6. Monthly Reconciliation Reporting of payments posted
7. Insurance Eligibility Verification & Prior Authorizations
8. Insurance Claims Follow-up

The duties listed above do not constitute a complete list and such list shall be customized to suit individuals CLIENTs need.

### CLIENT RESPONSIBILITIES

1. Daily Scanning of all Demographics, Changes, and Payment batches and any other requirement information
2. Access to download ERAs outside of PracticeSuite
3. Provide assistance for questions and clarification regarding payment posting in a timely manner
4. Scan and upload EOBs (if applicable) and patient payments information in a timely manner to apply payments.

The duties listed above do not constitute a complete list and such list shall be customized to suits individual CLIENTs need.

Customer: Accepted as Exhibit A: _Winnie Griffieth Toler_ (Digitally signed by Winnie Griffieth Toler, Date: 2018.05.29 20:48:43 -05'00')   Date: 5/29/18

PracticeSuite Inc: Accepted as Exhibit A: _Fareed Taghvaee_   Date: 05/30/2018

4

Case 3:19-bk-01971  Doc 62-1  Filed 04/08/19  Entered 04/08/19 15:17:03  Desc
Exhibit Exhibit A - Practicesuite Contract  Page 4 of 12

**EXHIBIT "B"**

The fee schedule below has been constructed to represent the services included in this Agreement and the cost for such services as described in the Schedule listed below.

| Service Level | Description | Professional Service Fee Per Month |
|---|---|---|
| Level II – PS Certified Billing Specialist | Demographics, Charge Entry, Insurance ERA Payment Posting, Charge entry, claim submission and claim rejects. Bill secondary charges, generate patient statements, Clear clearing house rejects. Interfaces with Insurance Collections, Aging follow-up and Denial Follow-up | $2,000/billing specialist per month (1.5 total FTE). Total $3,000.00 per-month. |

FOR ANY CHANGES IN THE NUMBER OF RESOURCES, THE CLIENT SHALL PROVIDE A 30 DAYS NOTICE except for the exception as expressed in section 4(a) in this agreement.

Customer: Accepted as Exhibit B: *Winnie Griffieth Toler* (Digitally signed)   Date: 5/29/18

PracticeSuite Inc: Accepted as Exhibit B: *Fareed Taghvaee*   Date: 05/30/2018

5

## PROFESSIONAL SERVICES AGREEMENT

This professional Service Agreement (Agreement), effective as of May 29th, 2018 ("Effective Date"), with invoicing starting June 1st, 2018, is entered into between PRACTICESUITE, Inc. A Delaware Corporation, a fully owned subsidiary of PRACTICESUITE, Inc. with office at 37600 Central Court # 260 Newark CA 94560("PROVIDER") and Capstone Pediatrics, PLLC_____, with offices at 1420 Donelson Pike Suite B17 Nashville, TN 37217 ("CLIENT"). This Agreement sets forth the terms and conditions whereby PROVIDER shall provide certain services to CLIENT on the terms set forth below. Now, therefore, in consideration of the mutual covenants contained in this Agreement and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

1) **SERVICES TO BE RENDERED BY PROVIDER.** During the term of this Agreement, PROVIDER shall provide certain services to CLIENT in connection with its professional service organization, which services may include but not be limited to all or some of the services set forth on Exhibit A attached hereto and incorporated herein. No other services shall be rendered by PROVIDER unless Exhibit A is modified by the written consent of each party.

2) **NO CODING AND BILLING ADVICE.** CLIENT understands and agree that PROVIDER is not a medical billing or a medical coding company and therefore shall not be involved in providing billing and coding activities. During the course of this Agreement, any communication(s) between the PROVIDER and the CLIENT with respect to services expressed in Exhibit A shall never be construed as a medical billing or coding advice.

3) **FEES.** As compensation for the services to be performed, PROVIDER shall, around the 2nd day of each month, render an advance invoice statement to CLIENT for monthly services to be provided for NEXT month. PROVIDER shall email invoices and such invoice will be due upon receipt. Fees shall be based on the fee schedule as described on Exhibit B.

4) **TERM AND TERMINATION.** The term of this Agreement shall commence on the effective date and unless this Agreement is terminated pursuant to this Section 3, shall continue for a term of ninety (90) days (the "Initial Term"). This Agreement shall automatically renew monthly, unless either party gives the other party prior written notice of termination at least 30 days before the expiration of the then current term. Notwithstanding any other provision hereof, either party may terminate this Agreement upon 30 days prior written notice of its intent to terminate this Agreement to the other party.

   a) **Termination for PROVIDER's Breach.** The CLIENT shall have the right to terminate this Agreement by written notice to PROVIDER upon PROVIDER's material breach of this Agreement. Such written notice shall describe in reasonable detail the alleged breach and the basis upon which the CLIENT believes such termination is justified. Upon receipt of such notice, PROVIDER shall have 30 days during which to attempt to cure such alleged breach, and upon such cure being effected, the CLIENT's right to terminate shall cease and this Agreement will continue in full force and effect. A notice of breach to PROVIDER does not entitle the CLIENT a provision for non-payment for services rendered. The CLIENT shall remain liable for all outstanding payments until the last date of services performed under this agreement as per the provisions expressed under COMPENSATION in this agreement.

   b) **Termination for CLIENT's Breach.** PROVIDER shall have the right to terminate this Agreement upon written notice to the CLIENT upon the CLIENT's material breach of this Agreement. Such written notice shall describe in reasonable detail the alleged breach and the basis upon which PROVIDER believes such termination is justified. Upon receipt of such notice, the CLIENT shall have 30 days during which to attempt to cure such alleged breach, and upon such cure being effected, PROVIDER's right to terminate shall cease and this Agreement will continue in full force and effect.

5) **CLIENT OBLIGATIONS.** CLIENT agrees that it will provide to PROVIDER certain accounts accumulated in its business during the term of this Agreement for processing by PROVIDER. CLIENT agrees to provide PROVIDER with the complete information necessary to work on each patient, including but not limited to, current patient name and address, code numbers, procedure, Insurance information, time and date service was rendered and other information available to CLIENT and necessary or requested by PROVIDER in the billing and collection process. In the cases where PROVIDER uses client's designated software, the CLIENT shall access to the reports in real-time and therefore no reporting will be required.

6) **INDEMNIFICATION.** CLIENT hereby agrees to indemnify, defend, and hold PROVIDER, and/or employees of PROVIDER harmless from and against any losses, claims, damages or expenses, and/or all costs of prosecution or defense of their rights hereunder, or of any claim asserted against PROVIDER by any person or entity not a party to this Agreement and arising from any act or omission of CLIENT or its agents, employees or consultants,

Initial_____ F T

whether in judicial proceedings, including appellate proceedings, or out of court, including without limiting the generality of the foregoing, attorneys' fees and all costs and expenses of litigation arising from such asserted claim.

7) <u>MEDIATION AND ARBITRATION:</u> IT IS THE INTENTION OF ALL PARTIES THAT NO DISPUTE UNDER THIS AGREEMENT OR WITH RESPECT TO RELATIONSHIP BETWEEN PARTIES WILL BE THE SUBJECT OF ANY COURT ACTION OR LITIGATION IN THE LOCAL, STATE, OR FEDERAL JUDICIAL SYSTEM. THE PARTIES RECOGNIZE THAT THE PROBLEM RESOLUTION PROCESSES OF MEDIATION AND ARBITRATION ARE APPROPRIATE AND PREFERABLE TO RESOLVE ISSUES BETWEEN THE PARTIES. IF ANY PARTY HERETO WISHES TO RESOLVE AN ISSUE UNDER OR RELATING TO THIS AGREEMENT, THEN SUCH PARTY MUST GIVE NOTICE OF A REQUEST FOR MEDIATION TO THE OTHER PARTIES, WHICH NOTICE SHALL SET FORTH THE NAMES OF NOT LESS THAN THREE (3) MEDIATORS FROM THE PANEL OF THE AMERICAN ARBITRATION ASSOCIATION OR OTHER MUTUALLY AGREED UPON ALTERNATIVE DISPUTE RESOLUTION SERVICE IN ALAMEDA COUNTY, CALIFORNIA. THE PARTY RECEIVING SUCH NOTICE SHALL AGREE UPON ONE OR MORE SUCH MEDIATORS WITH TEN (10) DAYS OF RECEIPT OF SUCH NOTICE AND A MEDIATION WILL BE SCHEDULED AS SOON AS FEASIBLE BETWEEN THE PARTIES AND THEIR RESPECTIVE ADVISORS, AND THE PARTIES AND THEIR ADVISORS WILL COOPERATE FULLY WITH RESPECT TO SHARING OF INFORMATION AND ATTENDANCE AT MEETINGS IN ORDER TO SEEK RESOLUTION. THE PARTIES WILL SHARE MEDIATION EXPENSES WITH THE PARTY REQUESTING THE MEDIATION, PAYING ONE-HALF OF SUCH EXPENSE OF THE MEDIATOR FEES AND THE OTHER PARTY PAYING THE OTHER ONE-HALF OF SUCH EXPENSES. IF RESOLUTION OF THE MATTERS BETWEEN THE PARTIES CANNOT BE RESOLVED IN MEDIATION WITHIN TWENTY (20) DAYS OF THE SELECTION OF A MEDIATOR BY THE PARTY RECEIVING SUCH NOTICE, THEN THE MATTER SHALL BE PRESENTED TO FORMAL ARBITRATION PURSUANT TO THE RULES UTILIZED BY THE ALTERNATIVE DISPUTE RESOLUTION SERVICE SELECTED BY AN ARBITRATOR FROM SUCH SERVICE'S PANEL AGREED UPON BY THE PARTIES OR, IF THE PARTIES ARE UNABLE TO AGREE UPON AN ARBITRATOR WITHIN TEN (10) DAYS OF THE COMPLETION OF MEDIATION, BY A PANEL OF THREE (3) ARBITRATORS FROM SUCH PANEL SELECTED BY SUCH SERVICE'S ADMINISTRATOR. ARBITRATION SHALL TAKE PLACE IN THE VENUE IN WHICH THE MEDIATION SHALL HAVE OCCURRED AS SOON AS POSSIBLE AND THE DECISION OF THE ARBITRATOR PANEL SHALL BE BINDING UPON THE PARTIES FOR ALL PURPOSES. IT IS THE INTENTION OF THE PARTIES THAT THIS AGREEMENT SHALL BE CONSTRUED AND INTERPRETED IN A FAIR AND EQUITABLE MANNER BASED UPON THE FACTS AND CIRCUMSTANCES OF THE PARTIES TAKING INTO ACCOUNT THE PRESENT INTENTION OF THE PARTIES TO HAVE A FAIR AND EQUITABLE AGREEMENT UNDER THE TERMS AND CONDITIONS SET FORTH IN THIS AGREEMENT.

8) <u>LIMITATION OF LIABILITIES:</u> In no event will CLIENT be liable to PRACTICESUITE, or PRACTICSUITE be liable to CLIENT and/or any third parties (including without limitation CLIENT's clients and/or End-User) for any claim, loss or damage, direct, ordinary, special or consequential or punitive or otherwise, even if either party has been advised of the possibility of such damages. PRACTICESUITE total liability for any and all alleged or actual damages or claims under this Agreement shall not exceed the amount of monthly fees paid by CLIENT under this Agreement for the most recent one (1) month of period. Both parties agree that PRACTICESUITE's pricing and other terms and conditions of this Agreement set for CLIENT reflect the allocation of risk and the limitation of liability specified herein.

9) <u>COMPLETE AGREEMENT.</u> The parties agree that this Agreement constitutes the complete and exclusive understanding and agreement of the parties relating to the subject matter hereof and supersedes all prior understandings, proposals, agreements, negotiations, and discussions between the

10) <u>NON-EMPLOYMENT.</u> During the term of this Agreement and for one year period commencing with the termination of this Agreement, CLIENT agrees not to employ, directly or indirectly, or through any third party rendering services on behalf of PROVIDER, any employees/ex-employees of PROVIDER or its parent, affiliates or subsidiaries without written consent by PROVIDER. CLIENT agrees that PROVIDER does not have adequate remedy at law to protect its rights under this section and agrees that PROVIDER will have the right to injunctive relief from any violation or threatened violation of this section. In lieu of injunctive relief, PROVIDER may elect to require reimbursement from CLIENT in the amount of $25,000 as a recruiting and retraining fee, payable within seven (7) days from written notice from PROVIDER specifying the allegations performed by CLIENT in violation of this Section 6.

11) <u>NON-SOLICITATION.</u> The CLIENT shall be outsourcing the work of its CLIENTs (physicians and hospitals) to PROVIDER. PROVIDER hereby agrees not to enter into any agreement with these CLIENTs directly, during the tenure of this agreement and for a period of one year thereafter.

12) <u>CONFIDENTIAL INFORMATION.</u> The parties agree that all information affecting or relating to CLIENT's policies and procedures relating to responses to unpaid claims and follow-up with third party payers is "Confidential Information" and shall remain the property of the CLIENT. PROVIDER shall have no property right in such Confidential Information. PROVIDER recognizes that the Confidential Information is confidential, material and

2

important without regard to whether such information constitutes a trade secret. PROVIDER agrees that it will not, at any time, in any manner, either directly or indirectly, disclose to any entity, person, firm or corporation, in any manner whatsoever, any Confidential Information. All Confidential Information shall remain the property of the CLIENT upon termination of this Service Agreement.

13) <u>COMPLIANCE WITH THE HEALTH INSURANCE PORTABILITY AND ACCOUNTABILITY ACT</u>. The parties acknowledge that CLIENT is subject to the Administrative Simplification requirements of the Health Insurance Portability and Accountability Act of 1996 and regulations promulgated there under ("HIPAA"), and that HIPAA mandates that CLIENT require PROVIDER to provide for the protection of the privacy and security of Health Information. Accordingly, PROVIDER ("PROVIDER") USES REASONABLE EFFORTS TO ENABLE ITS TECHNOLOGY & SERVICES TO MEET ALL APPLICABLE HIPAA REQUIREMENTS.

14) <u>FEDERAL PRIVACY REGULATION COMPLIANCE</u>: PROVIDER will implement appropriate safeguards to prevent the use or disclosure of the CLIENT's Protected Health Information other than as provided for in this Agreement. If PROVIDER becomes aware of any use of disclosure of the CLIENT's Protected Health Information not provided for in this Agreement, PROVIDER shall report such information to the CLIENT

15) <u>DISPUTE AND DISPUTE RESOLUTION:</u> Except for non-payment of invoices, any disputes arising out of or under this Agreement and/or business arrangements created hereunder shall be submitted to binding and non-applicable arbitration before a single arbitrator under Rules of the American Arbitration Association ("AAA"). Said arbitration shall take place before the AAA in Alameda County, California or in the County of PROVIDER's primary business address. Notwithstanding anything to the contrary in the Rules of the AAA, any arbitration hereunder shall be conducted under the Federal Rules of Evidence.

16) <u>MISCELLANEOUS</u>.

   a) <u>Counterparts</u>. This Agreement may be executed in any number of counterparts, each of which shall be an original and all of which shall together constitute one agreement.

   b) <u>Modification</u>. This Agreement may not be modified, nor may any provision hereof be waived, except in writing executed by both parties.

   c) <u>Entire Agreement</u>. This Agreement constitutes the entire agreement of the parties hereto regarding the subject matter hereof and supersedes all prior agreements and representations with respect to the subject matter hereof.

   IN WITNESS WHEREOF, the parties have signed and delivered this Agreement on the date set forth above.

**Customer**

By: _Winnie Griffieth Toler_
Digitally signed by Winnie Griffieth Toler
DN: cn=Winnie Griffieth Toler,
O=Capstone Pediatrics, ou,
email=wtoler@capstonepediatrics.com,
c=US
Date: 2018.05.29 20:51:11 -05'00'

Print Name: _Winnie Griffieth Toler_

Title: _COO_    Date: _5/29/18_

**PRACTICESUITE, Inc**

By: _Fareed Taghvaee_

Print Name: Fareed Taghvaee

Title: <u>Director, Sales</u>    Date: _05/30/2018_

3

## PROVIDER SUMMARY OF SERVICES

### EXHIBIT "A"

### PROFESSIONAL SERVICES PROVIDED BY PROVIDER

1. Charge Entry, Demographics Entry
2. Posting of payments and insurance adjustments according to contractual agreements within 72 business hours
3. Posting of paper scanned EOBs within 72 business hours
4. Posting of patient payments within 72 business hours
5. Weekly log of questions and clarification
6. Monthly Reconciliation Reporting of payments posted
7. Insurance Eligibility Verification & Prior Authorizations
8. Insurance Claims Follow-up

The duties listed above do not constitute a complete list and such list shall be customized to suit individuals CLIENTs need.

### CLIENT RESPONSIBILITIES

1. Daily Scanning of all Demographics, Changes, and Payment batches and any other requirement information
2. Access to download ERAs outside of PracticeSuite
3. Provide assistance for questions and clarification regarding payment posting in a timely manner
4. Scan and upload EOBs (if applicable) and patient payments information in a timely manner to apply payments.

The duties listed above do not constitute a complete list and such list shall be customized to suits individual CLIENTs need.

Customer: Accepted as Exhibit A: _Winnie Griffieth Toler_ (Digitally signed by Winnie Griffieth Toler, Date: 2018.05.29 20:48:43 -05'00')   Date: 5/29/18

PracticeSuite Inc: Accepted as Exhibit A: _Fareed Taghvaee_   Date: 05/30/2018

4

## EXHIBIT "B"

The fee schedule below has been constructed to represent the services included in this Agreement and the cost for such services as described in the Schedule listed below.

| Service Level | Description | Professional Service Fee Per Month |
|---|---|---|
| Level II – PS Certified Billing Specialist | Demographics, Charge Entry, Insurance ERA Payment Posting, Charge entry, claim submission and claim rejects. Bill secondary charges, generate patient statements, Clear clearing house rejects. Interfaces with Insurance Collections, Aging follow-up and Denial Follow-up | $2,000/billing specialist per month (1.5 total FTE). Total $3,000.00 per-month. |

FOR ANY CHANGES IN THE NUMBER OF RESOURCES, THE CLIENT SHALL PROVIDE A 30 DAYS NOTICE except for the exception as expressed in section 4(a) in this agreement.

Customer: Accepted as Exhibit B: _Winnie Griffieth Toler_ (Digitally signed by Winnie Griffieth Toler, Date: 2018.05.29 20:50:15 -05'00')   Date: 5/29/18

PracticeSuite Inc: Accepted as Exhibit B: _Fareed Taghvaee_   Date: 05/30/2018

5

## ADDENDUM TO PRACTICESUITE CUSTOMER AGREEMENT

This shall serve as an addendum (the "Addendum") to the PRACTICESUITE Customer Agreement (the "Agreement") entered into as of May 29th, 2018 (the "Effective Date"), by and between PracticeSuite a California corporation having offices at 37600 Central Court, Suite 260, Newark, CA 94560("Vendor") and Capstone Pediatrics, PLLC, having offices at 1420 Donelson Pike Suite B17 Nashville, TN 37217. This addendum shall be effective as of June 18th, 2018.

**Pricing and Other Special Terms**
The parties agree to the following pricing and other special terms:
1.) Exhibit B is modified as follows
    a. Capstone Pediatrics will be adding two and a half (2.5) additional billing specialists
    b. All other aspects of Exhibit remain in tact, including but not limited to the following:
        i. Customer pays a monthly payment of $2,000/month per billing specialist (4 total) for a total of $8,000.00 per-month.

**Miscellaneous**
Other than the aforementioned items, all other terms and conditions are documented in the Agreement.
IN WITNESS WHEREOF, the parties have executed this Amendment as of the date first above written.

PRACTICESUITE, INC

Signature: *Fareed Taghvaee*
Name: **Fareed Taghvaee**
Title: **Director, Sales**


OPERANT BILLING SOLUTIONS, LLC

Signature: *W. T.*
Name: **WINNIE TOLER**
Title: **COO**

Doc ID: babb1a08c7f758965b9b454bd61852d500df9f78

# ▼ HELLOSIGN

Audit Trail

| | |
|---|---|
| **TITLE** | PracticeSuite Professional Services Addendum - Capstone... |
| **FILE NAME** | Capstone Pediatri...dum 06.18.18.docx |
| **DOCUMENT ID** | babb1a08c7f758965b9b454bd61852d500df9f78 |
| **STATUS** | • Completed |

## Document History

**SENT**
06/18/2018
17:54:50 UTC-8

Sent for signature to Fareed Taghvaee (fareed@practicesuite.com) and Winnie Toler (wtoler@capstonepediatrics.com) from fareed@practicesuite.com
IP: 68.4.206.238

**VIEWED**
06/18/2018
17:54:53 UTC-8

Viewed by Winnie Toler (wtoler@capstonepediatrics.com)
IP: 64.235.154.141

**VIEWED**
06/18/2018
17:58:20 UTC-8

Viewed by Fareed Taghvaee (fareed@practicesuite.com)
IP: 68.4.206.238

**SIGNED**
06/18/2018
17:58:46 UTC-8

Signed by Fareed Taghvaee (fareed@practicesuite.com)
IP: 68.4.206.238

**SIGNED**
06/18/2018
18:18:31 UTC-8

Signed by Winnie Toler (wtoler@capstonepediatrics.com)
IP: 174.50.247.64

**COMPLETED**
06/18/2018
18:18:31 UTC-8

The document has been completed.