**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No: 3:19-bk-1971 |
| CAPSTONE PEDIATRICS, PLLC, | ) | Chapter 11 |
| | ) | Judge Randal S. Mashburn |
| Debtor. | ) | |

**EXPEDITED MOTION FOR ENTRY OF
AN ORDER (I) APPROVING BIDDING PROCEDURES
FOR THE SALE OF THE DEBTOR'S ASSETS, (II) SCHEDULING BID DEADLINES, AN
AUCTION AND SALE, (III) APPROVING THE FORM AND MANNER OF NOTICE
THEREOF, (IV) APPROVING CONTRACT ASSUMPTION AND ASSIGNMENT
PROCEDURES, (V) EXTENDING POST-PETITION PRIMING LIEN, DETERMINING
CLAIM AND LIEN PRIORITY IN SALE PROCEEDS, AND DIRECTING DISBURSEMENT
OF SALE PROCEEDS AND (VI) GRANTING RELATED RELIEF**

Capstone Pediatrics, PLLC (the "**Debtor**"), as a debtor-in-possession in the above-captioned chapter 11 case, by and through its undersigned counsel, hereby submits this motion (the "**Motion**"), and respectfully states the following in support thereof:

**REQUEST FOR EXPEDITED PROCEDURES**

1.      **Expedited Relief Requested**:  The Debtor hereby seeks entry of an order (the "**Order**"), substantially in the form attached hereto as **Exhibit A**:

      a.  approving the proposed bidding procedures attached as **Exhibit 1** to the Order (the "**Bidding Procedures**") in connection with a sale (the "**Sale**") of all, substantially all, or any combination of the Debtor's assets (collectively, the "**Assets**") free and clear of all claims, liens, and encumbrances;

      b.  scheduling (x) an auction, in connection with the Sale (the "**Auction**"), (y) hearing dates in connection with approval of the Sale (the "**Sale Hearing**"); and (z) the objection deadline for the Sale Hearing (collectively, the "**Sale Schedule**");

      c.  approving the form and manner of notice of the Auction and Sale Hearing, attached to the Bidding Procedures Order as **Exhibit 2** (the "**Sale Notice**");

d.  approving procedures (the "**Assumption Procedures**") for the assumption and assignment of certain executory contracts and unexpired leases in connection with the Sale (collectively, the "**Assigned Contracts**"), and approving the form and manner of notice thereof, attached as **Exhibit 3** to the Bidding Procedures Order (the "**Cure Notice**");

e.  granting any related relief.

2.  **Basis for Urgency**:  Under the DIP Loan Agreement that was entered into as of April 4, 2019 and in accordance with the Corrected Agreed Order Amending Final DIP Order (Doc, No. 204), funding will expire on June 15, 2020 if not earlier based on the limits of additional allowed funding.  It is necessary to have this Motion heard on an expedited basis so that Debtor can complete the sale before the terms of the Amended DIP loan agreement expires or the funds available thereunder are exhausted.

3.  **Notice**:  Notice of this Motion was served electronically to all parties consenting to electronic service in the Case and by First-Class U.S. Mail to all creditors and parties-in-interest. Counsel for the Debtor will also notify the attorneys for the DIP Lender, the attorney for the IRS and the attorney for the United States Trustee by e-mail and/or telephone.

4.  **Suggested Hearing Date**:  Debtor requests that the Court set this matter for hearing on **May 26, 2020**, with any such objection to be served so as to be delivered to the undersigned counsel before the hearing.

5.  **Supporting Argument**:  Debtor supports this Motion as set forth below:

**Jurisdiction and Venue**

1.  The United States Bankruptcy Court for the Middle District of Tennessee (the "**Court**") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

2.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.     The bases for the relief requested herein are sections 105(a) and 363 and 365 of title 11 of the United States Code, 11 U.S.C. § 101 *et seq*. (as amended, the "**Bankruptcy Code**") and Bankruptcy Rules 2002, 6004 and 6006.

## Background

4.     The Debtor is a privately held pediatric practice in the Middle Tennessee region. Its mission is to deliver personalized, quality care to improve and maintain its patients' health and wellbeing. The Debtor employs 15 medical professionals and has over 20,000 patients.

5.     The Debtor filed the instant case because, notwithstanding its aspirations to effectuate a sale outside of bankruptcy after dismissal of its prior Bankruptcy Case (the "First Bankruptcy Case"), those efforts have been unsuccessful.

6.     Beginning with the filing of two large tax liens by the IRS within days after dismissal of the First Bankruptcy Case, and the subsequent termination of the line of credit from its senior secured lender shortly thereafter, the Debtor's business fortunes have declined consistently since the dismissal of the First Bankruptcy Case. Thus, in August of 2018, the Debtor realized that it needed to sell is assets, and in that regard, retained investment banking firm Chiron Financial, LLC to serve as its exclusive investment banker during the sales process.

7.     By Order entered May 16, 2019, the Court approved the employment of Jim Davis as Chief Restructuring Officer and Chiron Advisory Services, LLC ("Chiron") as turnaround advisory firm to manage Debtor and lead the sale process.

8.     Mr. Davis and Chiron have marketed the Debtor's business extensively for well over a year.  As a result of those efforts the Debtor has received two written offers for substantially all assets of the business.  The Debtor and Chiron are working with the potential purchasers to execute an Asset Purchase Agreement prior to the proposed auction date.  Based on the current offers, the Debtor does not anticipate achieving sale proceeds that exceed the current balance of

the DIP Loan. In the event proceeds exceed the current DIP Loan balance, the DIP Lender's prepetitition secured claim would almost certainly consumme the excess proceeds.

**Proposed Sale and Bidding Procedures**

## I.    The Bidding Procedures

9.    The proposed Bidding Procedures are designed to permit a fair, efficient, competitive, and value-maximizing auction process for the Debtor's assets, consistent with the timeline of this chapter 11 case.

10.    The Bidding Procedures will provide potential bidders with ample notice and time to conduct thorough due diligence to submit binding bids in advance of the Bid Deadline. Indeed, the Debtor and Chiron have already devoted substantial time and effort marketing of the Debtor's assets, providing numerous parties with the diligence necessary to make an offer. The Bidding Procedures are designed to encourage all prospective bidders to put their best bid forward, bring finality to the Debtor's chapter 11 process, and create a path towards the highest or otherwise best available recoveries to the Debtor's stakeholders.

11.    Because the Bidding Procedures are attached as **Exhibit 1** to the Order, they are not restated fully herein. Generally speaking, however, the Bidding Procedures establish, among other things:[1]

    a.    the Debtor will serve the Bidding Procedures Order (setting forth the Sale Schedule), Bidding Procedures, and Sale Notice on all relevant notice parties as soon as practicable after entry of the Bidding Procedures Order;

    b.    the availability of, access to, and conduct during due diligence by "**Potential Bidders**";

    c.    the deadlines and requirements for submitting competing bids and the method and criteria by which such competing bids are deemed to be

---

[1] The following summary is provided for convenience purposes only. To the extent any of the terms described below are inconsistent with the Bidding Procedures, the Bidding Procedures control in all respects.

Case 3:19-bk-01971    Doc 207    Filed 05/19/20    Entered 05/19/20 11:24:33    Desc Main
Document    Page 4 of 20

"**<u>Qualified Bids</u>**" sufficient to trigger the Auction and participate in the Auction;

d. the manner in which Qualified Bids will be evaluated by the Debtor to determine the starting bid for the Auction;

e. the conditions for having the Auction and procedures for conducting the Auction, if any; and

f. various other matters relating to the sale process generally, including the designation of the Back-Up Bid (as defined in the Bidding Procedures), return of any good faith deposits, and certain reservations of rights.

12.     Importantly, the Bidding Procedures recognize and comply with the Debtor's fiduciary obligations to maximize sale value, and, as such, do not impair the Debtor's ability to consider all Qualified Bids made at or prior to the Auction, and, as noted, preserve the Debtor's right to modify the Bidding Procedures as necessary or appropriate to maximize value for the Debtor's estates.

**Potential Bid Protections**

13.     In the event an APA is negotiated, executed and filed prior to the proposed Auction date, the Debtor requests that it be able to designate the proposed buyer as the "Stalking Horse" buyer and provide minimal bid protections in the form of a "Break-Up Fee" equal to 3% of the proposed purchase price in the Stalking Horse offer, require an initial overbid requirement of $100,000 above the Stalking Horse offer, and require minimum bid increments thereafter of $25,000.

**II.     Proposed Sale Schedule**

14.     The Debtor's are seeking approval of the Bidding Procedures and the Sale Schedule to establish a clear and open process for the solicitation, receipt, and evaluation of third-party bids on a timeline that would allow the Debtor to consummate a sale of the Assets. A defined path toward effectuating the Sale will drive the sale process in an expeditious and efficient manner and

is designed to encourage all prospective bidders to put their best bids forward at the outset of these chapter 11 cases in order to provide the highest or otherwise best available recoveries to the Debtor's stakeholders without unduly prejudicing the Debtor's chapter 11 estate.

15.     Subject to the Court's availability, the key dates and deadlines the Debtor seeks to establish pursuant to this Order are as follows, provided that the Debtor may amend the Sale Schedule from time to time, as necessary:

a.  **Bid Deadline**: **June 10, 2020, at 4:00 p.m. (Prevailing Central Standard Time)** is the deadline by which Potential Bidders must submit all Bids and Deposits, and the date by which the same must be ***actually received*** by the parties specified in the Bidding Procedures (the "**Bid Deadline**").

b.  **Determination Deadline**: **June 11, 2020, at 4:00 p.m. (Prevailing Central Standard Time)** is the date by which the Debtor will determine which Bids are Qualified Bids and notify each Potential Bidder in writing whether such Potential Bidder is a Qualified Bidder.

c.  **Auction**: The Auction, if necessary, will be held on **June 12, 2020, at 10:00 a.m. (Prevailing Central Standard Time)** at the offices of counsel to the Debtor, Burr & Forman LLP, 222 Second Avenue South, Suite 2000, Nashville, Tennessee 37201 (such Auction may be conducted by video or telephonically depending on the then current prevailing health guidelines and as determined by the Debtor and Chiron in consultation with the United Stated Trustee's Office.)

d.  **Sale Objection Deadline**: The deadline by which all objections to the Sale (including to any Successful Bids or any Assigned Contract Objection (as defined below)) must be filed with the Court and served so as to be ***actually received*** by the appropriate notice parties (the "**Sale Objection Deadline**"), is **June 15, 2020, at 4:00 p.m. (Prevailing Central Standard Time)**.

e.  **Sale Hearing**: The hearing approving the Sale to the Successful Bidder shall take place before the Court on **June 16, 2020, at 9:00 a.m. (Prevailing Central Standard Time).**

## III.     Notice of Auction

16.     On or within three business days after entry of the Order, the Debtor will cause the Sale Notice, substantially in the form attached as **Exhibit 2** to the Order, to be served on the following parties or their respective counsel, if known: (a) counsel to the lender under the Debtor's

debtor-in-possession credit agreement and prepetition first-lien credit agreement; (b) all parties who have expressed a written interest in some or all of the Assets; (c) all known holders of liens, encumbrances, and other claims secured by the Assets; (d) each governmental agency that is an interested party with respect to the Sale and transactions proposed thereunder; (e) the attorney for the United States Trustee and (f) any party that has requested notice pursuant to Bankruptcy Rule 2002.

17.     The Debtor submits that the Sale Notice is reasonably calculated to provide all interested parties with timely and proper notice of the proposed sale, including the date, time, and place of the Auction (if one is held) and the Bidding Procedures and the dates and deadlines related thereto. Accordingly, the Debtor requests that the form and manner of the Sale Notice be approved and that the Court determine that no other or further notice of the Auction is required.

## IV.     Summary of the Assumption and Assignment Procedures

18.     The Debtor proposes the Assumption Procedures set forth below for notifying the counterparties to executory contracts and unexpired leases ("**Contract Counterparties**") of proposed cure amounts in the event the Debtor decides to assume and assign such contracts or leases in connection with the Sale.

### a.  Notice of Assumption and Assignment

19.     On or before June 1, 2020 (the "**Assumption and Assignment Service Date**"), the Debtor shall file with the Court and serve via first class mail, electronic mail, or overnight delivery the Cure Notice annexed as Exhibit 4 to the Bidding Procedures Order on all executory contract and unexpired lease Contract Counterparties (other than any Debtor) and, include as Exhibit A to the Cure Notice, a list (the "**Assigned Contracts Schedule**") that specifies: (a) each of the Debtor's executory contracts and unexpired leases that may be assumed and assigned in connection with

34086203 v7
Case 3:19-bk-01971    Doc 207    Filed 05/19/20    Entered 05/19/20 11:24:33    Desc Main
Document    Page 7 of 20

the Sale (i.e., the Assigned Contracts), including the name of the Contract Counterparty to each such contract, and whether or not the underlying agreement would be considered an executory contract or unexpired lease under applicable non-bankruptcy law; (b) the proposed amount necessary, if any, to cure all monetary defaults, if any, under each Assigned Contract (the "**Cure Costs**"); and (c) the deadline by which any Contract Counterparty to an Assigned Contract may file an objection to the proposed assumption, assignment, cure, and/or adequate assurance and the procedures relating thereto.

20.      A Contract Counterparty listed on the Assigned Contract Schedule may file an objection (an "**Assigned Contract Objection**") only if such objection is to the proposed assumption and assignment of the applicable Assigned Contract or the proposed Cure Costs, if any. All Assigned Contract Objections must: (i) be in writing; (ii) comply with the applicable provisions of the Bankruptcy Rules, Local Bankruptcy Rules, and any order governing the administration of these chapter 11 cases; (iii) state with specificity the nature of the objection and, if the objection pertains to the proposed Cure Costs, state the cure amount alleged to be owed to the objecting Contract Counterparty, together with any applicable and appropriate documentation in support thereof; and (iv) be filed with the Court and served and actually received no later than the Sale Objection Deadline (the "**Cure Objection Deadline**").

21.      If a Contract Counterparty files an Assigned Contract Objection in a manner that is consistent with the requirements set forth above, and the Successful Bidder has designated in writing that it wishes to take assignment of such Assigned Contract, and the parties are unable to consensually resolve the dispute prior to the Sale Hearing, such objection will be resolved at the Sale Hearing or such later date as determined by the Court. To the extent that any Assigned Contract Objection cannot be resolved by the parties, such Assigned Contract shall be assumed

and assigned only upon satisfactory resolution of the Assigned Contract Objection. To the extent an Assigned Contract Objection remains unresolved, the Assigned Contract may be conditionally assumed and assigned, subject to the consent of the Successful Bidder, pending a resolution of the Assigned Contract Objection after notice and a hearing. If an Assigned Contract Objection is not satisfactorily resolved, the Successful Bidder may determine that such Assigned Contract should be rejected and not assigned, in which case the Successful Bidder will not be responsible for any Cure Costs in respect of such contract.

**b. Additional Notice of Assumption and Assignment Procedures**

22.     If a Contract Counterparty does not file and serve an Assigned Contract Objection in a manner that is consistent with the requirements set forth above, and absent a subsequent order of the Court establishing an alternative Cure Cost, (a) the Cure Costs, if any, set forth in the Cure Notice (or Supplemental Cure Notice) shall be controlling, notwithstanding anything to the contrary in any Assigned Contract or any other document, and (b) the Contract Counterparty will be deemed to have consented to the assumption and assignment of the Assigned Contract and the Cure Costs, if any, and will be forever barred from objecting to the assumption and assignment of such Assigned Contract and rights thereunder, including the Cure Costs, if any, and from asserting any other claims related to such Assigned Contract against the Debtor or the Successful Bidder, or the property of any of them.

23.     Any objections to the Successful Bidder's proposed form of adequate assurance of future performance must be filed no later than the later of the Sale Objection Deadline and such objections will be resolved at the Sale Hearing, as applicable. The Debtor may, with the consent of the Successful Bidder, adjourn the resolution of any such objection to a later hearing.

24.     For the avoidance of doubt, the inclusion of an Assigned Contract on the Assigned Contracts Schedule shall not obligate the Debtor to assume any such Assigned Contract or obligate the Successful Bidder to take assignment of any such Assigned Contract. The Successful bidder shall determine whether to take assignment of any Assigned Contracts pursuant to the terms of the asset purchase agreement.

## V.     EXTENDING DIP LENDER PRIMING LIEN, DETERMINING CLAIM AND LIEN PRIORITY IN SALE PROCEEDS AND DIRECTING DISBURSEMENT OF SALE PROCEEDS

25.     In addition to approval of the sale of the Debtor's assets, the Debtor is also seeking through the proposed Sale Order, attached as **Exhibit B**, and subject to any objections that may be filed prior to the proposed sale hearing, an extension of the DIP Lender post-petition priming lien, a determination of the claim and lien priorities in sale proceeds, and directing disbursement of sale proceeds to the DIP Lender.

26.     CDS Business Services, Inc. d/b/a Newtek Business Credit ("CDS") has, pursuant to this Court's orders approving CDS as the DIP Lender in this case [Docs. 104 and 204] the ownership by assignment of Debtor's accounts receivable against which it made advances under the terms of the approved DIP Facility,  as well as a senior lien with priority over all creditors (the "DIP Priming Lien") in all of Debtor's post-petition acquired assets, tangible and intangible, including but not limited to the Accounts Receivable.[2]

27.     The DIP Priming Lien secures not less than $1,509,442.78, which amount reflects authorized advances plus costs and expenses of not less than $1,303,298.87 pursuant to the

---

[2] Subject to the carve-outs provided in the Final DIP Order [Doc. 104] and in the Amended Final DIP Order [Doc. 204].

Original Final DIP Order [Doc. 104] and authorized advances plus costs and expenses of not less than $206,143.91 pursuant to the Amended DIP Order [Doc. 204].

28.     In addition, at Debtor's request, CDS made advances over and above the amounts authorized under the original Final DIP Order and prior to such time as the DIP Loan Limits were increased pursuant to the Amended DIP Order.  Such additional advances were in the approximate amount of $677,496.99.  By this Motion, the Debtor seeks application of DIP Priming Lien and Super-priority expense status to same, which if granted will result in a total amount secured by the DIP Priming Lien of $2,186,939.77

29.     In the event that the actual sale proceeds exceed $1,509,442.78, and even in the event that this court does not grant the request to extend the DIP Priming Lien and/or Super Priority Administrative Expense claim to cover the additional advances of $677,496.99, CDS is nonetheless entitled to the balance of any sale proceeds over $1,475,207.81 by virtue of its senior[3] replacement adequate protection lien (the "Adequate Protection Lien") in all of the Debtor's assets [Doc. 104, par. 11] to secure its pre-petition allowed claim of  $1,442,983.55 [Doc. 104, par. 11(a) and claim YY1].[4]

30.     In the highly unlikely event that sale proceeds exceed the total amount of pre-petition and post-petition amounts due to CDS and secured by its senior liens (either $2,952,426.33 or- if the Priming Lien is extended to cover the additional advances as requested herein-$3,629,923.32), Newtek Small Business Finance, LLC ("NSBF") holds the next highest priority lien in said assets pursuant to its replacement adequate Protection lien (the "NSBF Adequate

---

[3] Junior in priority only to the replacement lien in non-accounts receivable assets held by Newtek Small Business Finance, which does not object to the relief and procedures set forth in this motion.

[4] The carve-out allowed in the Original Final DIP Order to ensure payment of earned but unpaid salaries of non-insider employees will not be triggered if the sale requested herein is approved as requested.

34086203 v7
Case 3:19-bk-01971    Doc 207    Filed 05/19/20    Entered 05/19/20 11:24:33    Desc Main
Document      Page 11 of 20

Protection Lien") to secure its pre-petition debt of $2,569,235.78 [Doc. 104, p.6, par. 11(c) and claim no. YY]. For purposes of administrative efficiency, NSBF consents to the relief requested in this motion concerning the direction of all sales proceeds to CDS.

31. Given that (a) CDS has both an assignment of factored Accounts Receivable and the senior security interest (both under the DIP Priming Lien and CDS Adequate Protection Lien) in all pre- and post petition property of the Debtor to secure a total claim of not less than $2,952,426.33 (or $ $3,629,923.32if the Priming Lien is extended to cover the additional advances, as requested herein), (b) NSBF has the second position lien immediately junior to CDS in all assets of Debtor to secure its claim of $2,569,235.78, and (c) Debtor has no reason to expect, based on the offers to date, that the Cash Value of the sales price will exceed the most conservative calculation of the allowed secured claims of CDS, let alone such additional amounts owed to NSBF secured by the second priority lien, Debtor submits that both the facts and administrative efficiency warrant a recognition of same in any sale order, and requests that the entirety of any sales proceeds be paid directly to CDS.[5]

32. To the extent of the pari-passu carve-out granted to Debtor's counsel under the Amended Final DIP Order [Doc. 204], said payment will be made in accordance with that order from CDS to Debtor's counsel in satisfaction of any allowed administrative expenses of Debtor's counsel in accordance with those pari-passu terms, when and as the Cash Value of any sales proceeds are received by CDS.

---

[5] To the extent that the Cash Value of any sales proceeds exceeds the above referenced allowed lien claims, Debtor will submit an alternative proposed sale order to address the application of any sales proceeds in which the Debtor's Estate retains an interest.

<u>**Basis for Relief**</u>

**I.      The Bidding Procedures are fair, designed to maximize the value received for the Acquired Assets, and are consistent with the Debtor's reasonable business judgment.**

33.      Bankruptcy Code section 363(b) provides that "[t]he [debtor in possession], after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate[.]" 11 U.S.C. § 363(b)(1). Courts have made clear that a debtor's business judgment is entitled to substantial deference with respect to the procedures to be used in selling an estate's assets. *See, e.g., In re Schipper*, 933 F.2d 513, 515 (7th Cir. 1991) ("Under Section 363, the debtor in possession can sell property of the estate . . . if he has an 'articulated business justification.'") (internal citations omitted); *see also In re Martin*, 91 F.3d 389, 395 (3d Cir. 1996) (explaining that courts usually defer to the trustee's "legitimate business justification" with respect to the "disposition of assets of the estate"); *In re Integrated Res., Inc.*, 147 B.R. 650, 656–57 (S.D.N.Y. 1992) (noting that bidding procedures that have been negotiated by a trustee are to be reviewed according to the deferential "business judgment" standard, under which such procedures and arrangements are "presumptively valid").

34.      The paramount goal in any proposed sale of property of the estate is to maximize the proceeds received by the estate. *See In re Edwards*, 228 B.R. 552, 561 (Bankr. E.D. Pa. 1998) ("The purpose of procedural bidding orders is to facilitate an open and fair public sale designed to maximize value for the estate."); *In re Food Barn Stores, Inc.*, 107 F.3d 558, 564–65 (8th Cir. 1997) (in bankruptcy sales, "a primary objective of the Code [is] to enhance the value of the estate at hand"); *In re Integrated Res., Inc.*, 147 B.R. at 659 ("[I]t is a well-established principle of bankruptcy law that the objective of the bankruptcy rules and the trustee's duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate.") (internal citations omitted).

35.    To that end, courts uniformly recognize that procedures intended to enhance competitive bidding are consistent with the goal of maximizing the value received by the estate and therefore are appropriate in the context of bankruptcy transactions. *See, e.g., In re Integrated Res., Inc.*, 147 B.R. at 659 (bidding procedures "are important tools to encourage bidding and to maximize the value of the debtor's assets"); *In re Fin. News Network, Inc.*, 126 B.R. 152, 156 (Bankr. S.D.N.Y. 1991) ("court-imposed rules for the disposition of assets . . . [should] provide an adequate basis for comparison of offers, and [should] provide for a fair and efficient resolution of bankrupt estates").

36.    The Debtor is confident that the Bidding Procedures will allow the Debtor to conduct the sale in a controlled, fair, and open fashion that will encourage participation by financially capable bidders who have shown interest in the Debtor's assets and who will offer the best package for the assets and who can demonstrate the ability take on the assets, obligations, and liabilities being transferred. In particular, the Bidding Procedures contemplate an open auction process with minimum barriers to entry and provide potential bidding parties with sufficient time to perform due diligence and acquire the information necessary to submit a timely and well-informed bid.

37.    At the same time, the Bidding Procedures provide the Debtor with an opportunity to consider competing bids and select the highest or otherwise best offers for the completion of the sale. As such, creditors of the Debtor's estates can be assured that the consideration obtained will be fair and reasonable at or above market.

38.    The Debtor submits that the Bidding Procedures will encourage competitive bidding, are appropriate under the relevant standards governing auction proceedings and bidding incentives in bankruptcy proceedings, and are consistent with other procedures previously

approved in this district and other Tennessee bankruptcy courts. *See, e.g., In re Nashville Senior Living*, 2018 Bankr. LEXIS 3197; *Expedited Order Pursuant to 11 U.S.C. §§ 363 and 365 and Fed. R. Bankr. P. 2002, 6004, and 6006 (I) Approving Procedures for Sale of Debtors' Assets and Breakage Fees Pursuant to Asset Purchase Agreement With Oreck Acquisition Holdings LLC; (II) Scheduling Bid Deadline and Sale Hearing Date; (III) Establishing Assumption and Assignment Procedures; and (IV) Fixing Notice Procedures and Approving Form of Notice*, *In re Oreck Corporation*, No. 13-4006 (Bankr. M.D. Tenn. May 24, 2013).[6]

39.     Accordingly, for all of the foregoing reasons, the Debtor believes that the Bidding Procedures: (a) will encourage robust bidding for the Assets; (b) are consistent with other procedures previously approved by courts in this District; and (c) are appropriate under the relevant standards governing auction proceedings and bidding incentives in bankruptcy proceedings and should be approved.

**II.      The form and manner of the Sale Notice should be approved.**

40.     Pursuant to Bankruptcy Rule 2002(a), the Debtor is required to provide creditors with notice of a hearing where the Debtor will seek to use, lease, or sell property of the estate outside the ordinary course of business. Bankruptcy Rule 2002(c) requires any such notice to include the time and place of the auction and the hearing and the deadline for filing any objections to the relief requested therein. The Debtor seeks approval of the Sale Notice as proper notice of the Auction. The Debtor submits that notice of this Motion and the related hearing to consider entry of the Order, coupled with service of the Sale Notice, as provided for herein, constitutes good and adequate notice of the Auction and the proceedings with respect thereto in compliance with,

---

[6] Because of the voluminous nature of the orders cited herein, such orders have not been attached to this motion. Copies of these orders are available upon request of the Debtor's proposed counsel.

and satisfaction of, the applicable requirements of Bankruptcy Rule 2002. Accordingly, the Debtor

requests that this Court approve the form and manner of the Sale Notice.

III.    **The Acquired Assets may be sold free and clear of Liens, Claims, Interests and Encumbrances under Bankruptcy Code Section 363(f).**

41.    Bankruptcy Code section 363(f) authorizes a debtor to sell assets free and clear of

all liens, claims, interests and encumbrances provided that one of the following conditions is met:

> a.  applicable non-bankruptcy law permits sale of such property free and clear of such interests;
>
> b.  such entity consents;
>
> c.  such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> d.  such interest is in bona fide dispute; or
>
> e.  such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f)(1)–(5).

42.    As section 363(f) of the Bankruptcy Code is stated in the disjunctive, when

proceeding pursuant to section 363(b), it is only necessary for a debtor to meet one of the five

conditions of section 363(f). *See id.*; *Mich. Employment Sec. Comm'n v. Wolverine Radio Co. (In

re Wolverine Radio Co.)*, 930 F.2d 1132, 1147 n.24 (6th Cir. 1991) (stating that Bankruptcy Code

section 363(f) written in disjunctive; holding that court may approve sale "free and clear" provided

at least one of the subsections of section 363(f) is met); *In re Zeigler*, 320 B.R. 362, 381 (Bankr.

N.D. Ill. 2005); *In re Dundee Equity Corp.*, No. 89-B-10233, 1992 Bankr. LEXIS 436, at *12

(Bankr. S.D.N.Y. Mar. 6, 1992) ("Section 363(f) is in the disjunctive, such that the sale free of the

interest concerned may occur if any one of the conditions of §363(f) have been met."); *In re

Bygaph, Inc.*, 56 B.R. 596, 606 n.8 (Bankr. S.D.N.Y. 1986) (same).

43.    The Debtor anticipates that the Sale will satisfy one of the five requirements set

forth under section 363(f) of the Bankruptcy Code, either because the affected parties consent to

the Sale of the applicable Assets or some other bases exist under section 363(f) of the Bankruptcy Code to warrant the sale of the applicable Assets free and clear of such liens or interests. Accordingly, the Debtor anticipates that one or more prongs of section 363(f) of the Bankruptcy Code will be satisfied with respect to parties that assert liens on or interests in the Assets.

**IV.**      **The Assumption and Assignment Procedures should be approved.**

      44.      To facilitate and effectuate the Sale, the Debtor is seeking approval of the Assumption and Assignment Procedures. The Assumption and Assignment Procedures are reasonable and necessary to properly notify parties of potential assumptions and/or assignments and provide the contract and lease counterparties with sufficient time to determine the accuracy of the proposed cure amount and whether the Debtor has provided adequate assurance of future performance.

      45.      The Debtor believes that it can and will demonstrate at the Sale Hearing that the requirements for assumption and assignment of the Assigned Contracts to the Successful Bidder will be satisfied. As required by the Bidding Procedures, the Debtor will evaluate the financial wherewithal of potential bidders before designating such party a Qualified Bidder or Successful Bidder (*e.g.*, financial credibility, willingness, and ability of the interested party to perform under the Assigned Contracts), including as it relates to such Qualified Bidder's willingness, and ability to perform under the Assigned Contracts assigned to the Successful Bidder. Further, the Assumption and Assignment Procedures provide the Court and other interested parties ample opportunity to evaluate and, if necessary, challenge the ability of the Successful Bidder to provide adequate assurance of future performance and object to the assumption of the Assigned Contracts or proposed cure amounts. The Court therefore will have a sufficient basis to authorize the Debtor to reject or assume and assign the Assigned Contracts as set forth in the definitive agreement of the Successful Bidder.

46.     Accordingly, the Debtor submits that the Assumption and Assignment Procedures should be approved as reasonable and necessary measures to adequately notify parties in interest and conducting the proposed sale process in a fair, efficient, and proper manner.

**V.  It is Appropriate to Recognize in the Sale Order CDS' entitlement to the entirety of the Sales Proceeds, and to allow same to be paid directly to CDS in light of judicial efficiency.**

47.     The court has recognized the appropriateness of allowing a sale order that directs payment of §363 sale proceeds directly to a Creditor, and finding that such proceeds do not constitute property of the Debtor's estate, where circumstances warrant.   In fact, this court followed that same approach in approving the sale order in in re Oreck, case no. 13-4006 [doc. 617].  CDS has made advances against all of the outstanding Accounts Receivable on which the Cash Value of the Debtor is based, and so owns those receivables under the terms of the DIP facility. In any event, CDS is the senior secured creditor in all Accounts Receivable, goodwill and other general intangible to secure pre- and post-petition allowed claims of at least $2,952,426.33 (or $3,629,923.32 in the event that this court grants the request to extend the Priming Lien to cover the additional advances).

48.     Even to the extent that the Cash Value of the Sale Price exceeds $2,952,426.33 (or $3,629,923.32 in the event that this court grants the request to extend the Priming Lien to cover the additional advances), NSBF is the next highest secured creditor, secured by all assets of the Debtor to the extent of $2,569,235.78 (which, together with what is owed by any measure to CDS, is in the aggregate well in excess of any potential sale price) and consents to the relief sought herein.

49.     CDS, being the senior secured creditor in all assets and having no reasonable expectation of being paid in full on its allowed secured claims, has indicated to the Debtor that it retains the right to condition its approval of any sale on payment directly from the purchase.

## Notice

50.     The Debtor will provide notice of this Motion to: (a) all parties who have expressed a written interest in some or all of the Assets; (c) all known holders of liens, encumbrances, and other claims secured by the Assets; (d) each governmental agency that is an interested party with respect to the Sale and transactions proposed thereunder; and (e) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtor submits that, in light of the nature of the relief requested, no other or further notice is required.

*[Remainder of Page Intentionally Left Blank]*

**WHEREFORE**, the Debtor respectfully requests that the Court enter the Bidding Procedures Order, attached as **Exhibit A**, and after conducting a sale hearing, enter the proposed Sale Order, attached as **Exhibit B**, granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Dated: May 19, 2020

Respectfully submitted,

/s/ David W. Houston, IV

David W. Houston, IV, No. 20802
Emily C. Taube, No. 19323
Burr & Forman, LLP
222 Second Avenue South, Suite 2000
Nashville, TN 37201
615-724-32165 (phone)
615-724-3315 (fax)
dhouston@burr.com
etaube@burr.com

Counsel for Capstone Pediatrics, PLLC

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was filed electronically on May 19, 2020. Notice of this filing was sent by operation of the Court's electronic filing system to all those parties specifically requesting electronic service and as indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system. Additionally, notice of this filing was sent via U.S. Mail, postage paid to all parties listed on the attached Creditor Matrix.

/s/ David W. Houston, IV
David W. Houston, IV