# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| In re: ) | |
| ) | Case No: 3:19-bk-1971 |
| CAPSTONE PEDIATRICS, PLLC, ) | Chapter 11 |
| ) | Judge Randal S. Mashburn |
| Debtor. ) | |

**DECLARATION OF JIM DAVIS IN SUPPORT OF DEBTOR'S EXPEDITED MOTION FOR ENTRY OF AN ORDER (I) APPROVING THE SALE OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS, (II) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (III) EXTENDING POST-PETITION PRIMING LIEN, DETERMINING CLAIM AND LIEN PRIORITY IN SALE PROCEEDS, AND DIRECTING DISBURSEMENT OF SALE PROCEEDS, AND (IV) GRANTING RELATED RELIEF**

The declarant, Jim Davis, makes the following statement under penalty of perjury:

1. I am a Director of Chiron Financial, LLC, a limited liability corporation ("Chiron"), with offices located at 130 McKinney Street, Suite 2800, Houston, Texas 77010. Chiron Financial, LLC is the sole member of Chiron Advisory Services, LLC.

2. Per the Court's Order dated May 16, 2019 (Doc. No. 109), Capstone Pediatrics, PLLC ("Debtor") was authorized to employ me as Chief Restructuring Officer and engage Chiron a turnaround advisory firm.

3. I am submitting this declaration in support of the expedited motion of the Debtor requesting that this Court enter an *Order (I) Approving The Sale Of The Debtors' Assets Free and Clear Of All Liens, Claims, Encumbrances, and Interests, (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; (III) Extending Post-Petition Priming Lien, Determining Claim and Lien Priority in Sale Proceeds, and Directing Disbursement of Sale Proceeds, and (IV) Granting Related Relief* ("Sale Motion").

4. The Debtor is one of the largest independent privately held pediatric practices in the Middle Tennessee region. Its mission to deliver personalized, quality care to improve and maintain its patients' health and wellbeing. The Debtor employs 15 medical professionals, and has between 25,000 and 35,000 patients. In 2017, it experienced gross revenues of $22,817,640.00 and patient visits of approximately 120,000.

5. The Debtor's medical practice is primarily comprised of general pediatrics and other specialties.

6. The Debtor's general pediatric group that includes board certified pediatricians and certified pediatric nurse practitioners. In addition, the Debtor offers a pediatric hospitalist program with two physician hospitalists and two pediatric nurse practitioner hospitalists.

7. The Debtor offers specialists in the areas of Developmental-Behavioral Pediatrics, Audiology-Diagnostics, Behavioral Health, and Hospitalist services.

   i. *Developmental-Behavioral Pediatrics*.

The Debtor's behavioral-developmental specialists care for children with developmental difficulties and behavioral changes. The Debtor evaluates each individual patient to determine his/her needs related to the following areas: Attention Deficit Disorder, Attention Deficit Hyperactivity Disorder, cognitive and social developmental delays, Autism, depression and anxiety, learning disorders, delayed speech and language, habit disorders, regulatory disorders pertaining to sleep, or feeding problems, and other behavioral and development problems.

   ii. *Audiology*.

The Debtor offers outpatient diagnostic audiology services. This program meets the needs of newborns who have failed their initial hearing screens, children with neurodevelopmental disorders with concurrent hearing problems, and any child with a suspected hearing loss. The

Debtor uses state-of-the-art technology to test and treat children with hearing loss. The Debtor works closely with the family, primary care provider, and other professionals to identify and coordinate an individualized treatment plan.

8. The Debtor currently has, or immediately prior to the filing of Chapter 11 had, locations in the Middle Tennessee area at the following locations: (i) Clarksville, (ii) Antioch (Southern Hills), and (iii) Smyrna.

9. This case represents a second petition by Debtor in this Court, the prior Bankruptcy Case, case no. 3:15-bk-09031 (the "First Bankruptcy Case"), having been voluntarily dismissed by Debtor on May 21, 2018 via a structured dismissal. The dismissal was based on Debtor's representations to this Court that it had successfully used the protections of the Bankruptcy Code in the First Bankruptcy Case for maximum benefit by rejecting unprofitable leases and contracts, and using the protections of the automatic stay to streamline processes and reduce inefficiencies, thereby curing the issues that had threatened its ability to operate as a going concern on the First Bankruptcy Case petition date. However, as represented by Debtor in the motion to dismiss the First Bankruptcy Case, certain ever increasing administrative costs to staying in bankruptcy, combined with the fact that the efficiencies achieved could not support a reorganization to be effectuated within the time frame contemplated under § 1129 of the Bankruptcy Code, and the fact that Debtor's principals were seeking a sale of either their membership interests in Debtor or of Debtor's assets, which sale they believed could more effectively be achieved outside of bankruptcy, warranted dismissal.

10. Debtor filed the instant case because, notwithstanding its principals' stated intentions to effectuate a quick sale or obtain an equity infusion outside of bankruptcy, those efforts proved unsuccessful. Beginning with the filing of two large tax liens by the IRS within days after

dismissal of the First Bankruptcy Case, and the subsequent termination of the line of credit from CDS, the Debtor's DIP Lender in the First Bankruptcy Case, shortly thereafter, Debtor's ability to achieve a reorganization or sale outside of bankruptcy was not feasible. The Debtor and its principals recognized that, particularly in light of the substantial IRS tax liens, a sale of assets free and clear of liens in bankruptcy is likely the only viable option. While the assets could be sold in Chapter 7, Debtor submits that the value of Debtor's assets is much greater if sold as a going concern and more importantly, a sale as a going concern will preserve jobs and the services provided to the Debtor's current patient base.

11. Chiron provided investment banking services to Capstone Pediatrics, focusing on: the review of private placement alternatives for the Company, and the raising of debt and/or equity capital and/or the restructuring of the Company's balance sheet with existing stakeholders and/or the sale of all or part or all of the Company. When it became apparent that the only viable option for the company was the sale of all assets to a new operator, Chiron focused all efforts in Preparing an information memorandum describing the Company, its historical performance and prospects, including existing contracts, marketing and sales, labor force, management, and financial projections; Chiron compiled a data room of all necessary and appropriate documents related to the Transaction; developed lists of potential purchasers, and contacted each individual company. During the marketing process Chiron reached out to 394 potential buyers, including all healthcare operators in the Nashville, TN MSA. Chiron coordinated the execution of 17 confidentiality agreements with interested potential buyers wishing to review the information memorandum. Through the course of the last 12 months Chiron coordinated and managed 5 interested purchasers and worked with the Company's management team to develop appropriate presentations for each party. Over the last 120 days only two interested parties remained interested, Chiron went back to

market to 174 strategic buyers to solicited competitive offers receiving no additional interest. The current potential buyer, America Cares Trust (ACT) dba CareNation, is currently the only buyer left with interest in Capstone Pediatrics. Multiple buyers stated referenced the significant financial distress of the Company and Capstone's deteriorating reputation in the Tennessee market as the main deterrent for pursuing this deal.

12. The Asset Purchase Agreement (Doc. No. 230) reflects the offer received from America Cares Trust (ACT) dba CareNation, a Tennessee Nonprofit Corporation (the "Buyer") to purchase the Debtor's assets pursuant to the sale process outlined in the Sale Motion. The Asset Purchase Agreement provides for aggregate consideration of not less than Three Hundred Fifty Thousand Dollars ($350,000.00) (the "Purchase Price") for the assets, plus 5% of the profits earned by the company over the next 5 years.

13. The offer received from Buyer was the only offer received by the Debtor to purchase the business as a going concern. Thus, the Buyer's offer is the only opportunity for the Debtor to preserve the jobs of its employees and importantly, provide for continuity of patient care to the Debtor's current patient base.

14. A strong business justification exists for the proposed sale. The Debtor provides an important pediatric medical service to the middle Tennessee community, employing dedicated medical and non-medical staff in its operations. The proposed sale provides the maximum value for the benefit of the Debtor's stakeholders, including the community and patient base. The Debtors lack the ability to operate the pediatric group on their own and without the sale, the Debtors will be forced to close their doors and liquidate its assets, which will bring far less monetary value than what is owed to the DIP Lender and will provide no benefit to any other constituent in the case. For these reasons, approval of the proposed sale is necessary.

15. The Asset Purchase Agreement and supporting transactions have all been negotiated on an arms-length basis between the parties. The Purchase Price is fair and reasonable under the circumstances. In summary, the Sale is a sound and reasonable exercise of the Debtor's business judgment and is in the best interests of all of the Debtor's stakeholders, including patients, employees, and creditors.

Date: July 2, 2020

*/s/ Jim Davis*
Jim Davis
CHIRON FINANCIAL, LLC
Fulbright Tower
1301 McKinney Street
Suite 2800
Houston, Texas 77010
Telephone: 713-929-9080
E-mail: jdavis@chironfinance.com