# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| In Re:<br><br>CAPSTONE PEDIATRICS, PLLC,<br><br>Debtor. | Case No. 3:19-bk-1971<br><br>Chapter 11<br><br>Judge Randal S. Mashburn |

**UNITEDHEALTHCARE INSURANCE COMPANY'S LIMITED OBJECTION TO CURE AMOUNT SET FORTH IN DEBTOR'S NOTICE OF ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

UnitedHealthcare Insurance Company (collectively with its affiliates, subsidiaries, and parents, "United") hereby objects to the cure amounts set forth in the Notice of Assumption and Assignment of Executory Contracts and Unexpired Leases [Dkt. No. 220] (the "Cure Notice") filed by Capstone Pediatrics, PLLC (the "Debtor").

In support of its objection, United states as follows:

## I.  BACKGROUND

### A.  Agreements Between United and the Debtor

1. United provides health care insurance benefits to members insured under its fully insured group medical policies through a network of providers that contract with United to render medical services to members. United also administers self-insured health plans of third parties, by which the members of those self-insured plans also may access medical care through United's network of providers.[1]

---

[1] United's fully insured plans and the third party self-insured plans administered by United (together and separately) are referred to herein as being United health insurance plans, with their members referred to as being United's members.

2. United and the Debtor are parties to a Tennessee Program Network Practitioner Group Provider Agreement with an effective date of April 1, 2007, as amended from time to time (the "PGPA").

3. United and the Debtor also are parties to a Medical Group Participation Agreement, as amended from time to time (the "MGA", and together with the PGPA, the "Agreements").[2]

4. Pursuant to the Agreements, the Debtor agreed to provide certain covered medical services to United's members, in exchange for certain fees. In connection with paying claims submitted by the Debtor under the Agreements, United will periodically overpay a claim for a variety of reasons.

5. Section 3(k) of the PGPA provides that United "has the right to audit reports and records of [the Debtor] . . . to determine the appropriateness of payments made to [the Debtor]. Upon conclusion of an audit, the appropriate settlement shall be made between [United] and [the Debtor]."

6. Section 3(g) of the PGPA provides that United "will correct any claim over-payment or under-payment through [a] claim adjudication system" and that "[o]verpayments to [the Debtor] will be collected through the recoupment process. . . . If said payment cannot be collected in this manner within sixty (60) days, [the Debtor] must reimburse the amount due by check or other method."

---

[2] The Agreements contain United's highly confidential and sensitive commercial information. While the Debtor should have a copy of the Agreements, other parties in interest may request copies of the Agreements by written request to the undersigned counsel and upon the entry into either an acceptable confidentiality agreement or the entry of an appropriate protective order. If requested by the Court, United will provide the Agreements to it for *in camera* review.

7. Similarly, Section 7.10 of the MGA provides that the Debtor "will repay overpayments within 30 days of written or electronic notice of the overpayment."

**B.     The Debtor's Bankruptcy Case**

8. On March 28, 2019 (the "Petition Date"), the Debtor filed a voluntary petition in this Court under Chapter 11 of the Bankruptcy Code.

9. United has identified certain prepetition overpayments made to the Debtor under the Agreements.

10. In connection with the prepetition overpayments, United filed a proof of claim for $76,648.41 (the "Proof of Claim") against the Debtor. A true and correct copy of the Proof of Claim is attached hereto as **Exhibit A**.

11. In addition, United is owed $144.61 (the "Post-Petition Overpayments") in post-petition overpayments under the Agreements.

12. In total, $76,793.02 is due under the Agreements as of July 2, 2020.

13. In addition, in the ordinary course of business of paying claims under the Agreements, post-petition overpayments are potentially accruing and may continue to accrue up to the date of closing, and such amounts will be due and owing under the Agreements.

14. On June 1, 2020, the Debtor filed and served the Cure Notice which identifies contracts that could potentially be assumed and assigned to the Successful Bidder[3] (the "Potential Assumed Contracts"), and the amounts, if any, that the Debtor believes are owed to each counterparty to such Potential Assumed Contracts due to any defaults that exist under such contracts. (Dkt. No. 220.)

---

[3] Capitalized terms not defined herein shall have the meaning ascribed to them in the Cure Notice.

15. In Schedule 1 to the Cure Notice, the Debtor lists two insurance payor agreements with United among the Potential Assumed Contracts that the Debtor may assume and assign as part of the sale. (*Id.* p. 6.) The cure designation for each of the referenced insurance payor agreements between the Debtor and United is $0.00.

**II. OBJECTION**

16. To the extent the insurance payor agreements listed in the Cure Notice are the Agreements, United hereby submits this objection to the cure listed in the Cure Notice. Specifically, United is owed $76,793.02 under the Agreements as of July 2, 2020. In addition, through the ongoing operation of the Debtor's business, additional overpayments may become due and owing post-petition through the date the asset sale closes.

17. Sections 365(b) and 365(f) of the Bankruptcy Code require that the Debtor cure, or provide adequate assurance that they will promptly cure, all defaults under any executory contracts that they seek to assume and assign to the Successful Bidder.

18. Accordingly, the Cure Notice must be revised to include the amounts currently owed under the Agreements, as well as to include any and all post-petition, pre-closing overpayments that arise in the ordinary course of business.

19. United has contacted the Debtor's counsel to discuss the substance of this objection. The Debtor agreed to extend United's cure objection deadline to July 6, 2020, while the parties resolve the cure amount due. United will continue to work in good faith with the Debtor but files this objection out of an abundance of caution.

WHEREFORE, United respectfully requests that the Court enter an order (i) requiring the payment of the appropriate cure amounts for the Agreements, and (ii) granting such further relief as the Court deems appropriate.

Dated: July 2, 2020

                UNITEDHEALTHCARE INSURANCE COMPANY

                By: */s/ Michael G. Abelow*
                   Michael G. Abelow (No. 26710)
                   SHERRARD ROE VOIGT & HARBISON, PLC
                   150 3rd Avenue South, Suite 1100
                   Nashville, TN 37201
                   Telephone: (615) 742-4532
                   Facsimile: (615) 742-4539
                   mabelow@srvhlaw.com

                   and

                   Latonia C. Williams, Esq.
                   Jaime A. Welsh, Esq.
                   SHIPMAN & GOODWIN LLP
                   One Constitution Plaza
                   Hartford, CT 06103-1919
                   Telephone: (860) 251-5000
                   Facsimile: (860) 251-5218
                   lwilliams@goodwin.com
                   jwelsh@goodwin.com

                *Attorneys for UnitedHealthcare Insurance Company*

## CERTIFICATE OF SERVICE

I hereby certify that on July 2, 2020, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF System.

*/s/ Michael G. Abelow*
Michael G. Abelow