IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | Case No. 3:19-bk-01971 |
| CAPSTONE PEDIATRICS, PLLC, ) | Chapter 11 |
| ) | Judge Randal S. Mashburn |
| Debtor. ) | |

## MOTION TO COMPEL NEWTEK BUSINESS CREDIT TO REIMBURSE CARNATION FOR EMPLOYEE PAYROLL EXPENSES INCURED PRIOR TO CLOSING

America Cares Trust (ACT) d/b/a CareNation ("CareNation," "Successful Bidder," or "Buyer"), by and through undersigned counsel, hereby moves for an Order compelling CDS Business Services, Inc. d/b/a Newtek Business Credit ("Newtek") to reimburse CareNation for employee payroll expenses totaling $72,089.45 which were the pre-closing obligation of Capstone Pediatrics, PLLC ("Debtor" or "Seller"), pursuant to the Asset Purchase Agreement ("APA") approved by this Court by Order dated July 20, 2020 [Dkt No. 254], and states:

### JURISDICTION

1. This Court has jurisdiction to consider this motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. Additionally, the Order approving the sale [Dkt No. 254] specifically authorized the Court to retain jurisdiction to, among other things, interpret, implement and enforce the terms and provisions of the Sale Order, the Asset Purchase Agreement, and all amendments thereto and any releases, waivers, and consents hereunder and thereunder, and each of the agreements executed in connection therewith to which the Debtor is a party or which has been assigned by the Debtor to the Successful Bidder and to adjudicate, if necessary, any and all

disputes concerning or relating in any way to any of the foregoing, including any disputes that may arise among the Debtor, the Successful Bidder, CDS and any counterparties to the Assumed Contracts.

## FACTUAL BACKGROUND

3. Debtor filed for Chapter 11 bankruptcy relief on March 28, 2019 and obtained Debtor-In-Possession financing from Newtek pursuant to the *Interim Agreed Order Granting Debtor's Motion to Provide Adequate Assurance to Utilities (1) Authorizing the Debtor to Obtain Post-Petition Financing on a Senior Secured Superpriority Basis, (2) Authorizing Use of Cash Collateral and Granting Adequate Protection, (3) Setting and Prescribing Form and Manner of Notice for Final Hearing and (4) Granting Related Relief* entered by the Court on April 4, 2019 [Dkt. No. 50], the *Final Agreed Order Granting Debtor's Motion for Order Approving DIP Financing (1) Authorizing the Debtor to Obtain Post-Petition Financing on a Senior Secured Superpriority Basis, (2) Authorizing Use of Collateral, and (3) Granting Related Relief* entered by the Court on May 14, 2019 [Dkt. No. 104], and the *Corrected Agreed Order Granting Expedited Debtor's Motion to Amend Final DIP Order to Allow for Additional Post-Petition Secured Financing and Extend Maturity Date* entered by the Court on April 3, 2020 [Dkt. No. 204].

4. Pursuant to those Orders, the DIP facility terminated as of June 15, 2020. However, instead of lending additional funds to Debtor, Newtek consistently thereafter released collateral in the form of collected accounts receivable to Debtor to allow its operations to continue through the closing date of the APA.

5. During negotiations for the purchase of assets from the Debtor, Newtek omitted and failed to disclose to Buyer that it did not intend to continue with this consistent prior course of dealing by

releasing the necessary collateral to cover all ordinary expenses, including payroll of the Debtor, up through the Closing Date.

6. This failure of Newtek to disclose these plans constituted bad faith on behalf of Newtek as it relates to both the negotiation and closing of the Debtor's sale of assets and constituted a fraudulent inducement of Buyer to enter into the sale transaction with the Debtor on the terms as agreed.

7. Buyer, CareNation, was the Successful Bidder for the essentially all assets of Debtor, Capstone Pediatrics, PLLC. The sale closed on July 20, 2020, pursuant to the Sale Order [Dkt No. 254], which held that Notice of the [Sale] Motion, the Sale Hearing, the Bidding Procedures, Sale Objection Deadline, assumption and assignment of the Assumed Contracts, the Auction and the Sale, including, without limitation, the Auction and Sale Notice, the Mailing Notice, and the Assignment and Assumption Notice was adequate, fair, and equitable under the circumstances and complied in all respects with section 102(1) of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004, and 6006.

8. The Asset Purchase Agreement executed by Debtor, CareNation, and Newtek was approved by the Court and pursuant to sections 105(a), 363(b), 363(f), 365(b), and 365(f) of the Bankruptcy Code, the Debtor was authorized and directed to transfer the Assets on the Closing Date (as defined in the Asset Purchase Agreement).

9. The Sale of the Assets to the Successful Bidder and the sale and assumption and assignment of the Assumed Contracts to the Successful Bidder, were to be, except as otherwise provided in the Asset Purchase Agreement, free and clear of all Encumbrances. The Assets shall not be subject to any claims or interests allowed in these Chapter 11 Cases, including, without limitation, any claims allowed under sections 361, 362, 363, 364, 365, 502, 503, 506, or 507 of the Bankruptcy Code. For the avoidance of doubt, the Sale Order specifically stated that "the Sale shall be free and clear of any successor liability to the Successful Bidder for any of the

Debtor's liabilities, except for the Assumed Liabilities set forth in the Asset Purchase Agreement."

10. Section 2.04 of the APA contained Excluded Liabilities and specifically identified in Paragraph (b) that expenses, salaries, overtime, unused paid time off, and other employee compensation accrued in the Ordinary Course of Business and payable as of the Closing Date were Excluded Liabilities.

11. After closing, CareNation has maintained all prior staff from Capstone, and continues to employ them on an ongoing basis.

12. In the time period after the expiration of the DIP lending facility and prior to the Closing Date, Newtek had consistently released its collateral in order to allow the Debtor to continue operations. This included the payment of payroll expenses on behalf of the Debtor, as well as all other expenses in the Ordinary Course of Business for the Debtor.

13. After closing, regular payroll expenses incurred for the time period prior to the Closing Date, in the amount of $72,089.45, was due to be paid by Seller.

14. Except for these pre-closing payroll costs <u>all other expenses in the Ordinary Court of Business prior the Closing Date have been paid by Debtor</u> through the same release of collateral from Newtek.

15. Newtek knew that in failing to disclose its plans to sweep all funds in the Debtor's DIP account once this sale closed, it would create an immediate problem for the Buyer because the Debtor would have no funds from which to pay its liabilities, including employee payroll, owed at the Date of Sale.

16. By refusing to release additional collateral and allow the Debtor to make its final payroll payment, Newtek tricked the Buyer and, as a result, increased Buyer's purchase price for

the assets by $72,089.45 and tripled the contemplated initial cash payment of $35,000.00 to be paid at or around the time of Closing.

17. While Buyer has no actual or legal obligation to make the payroll payment pursuant to the APA, the practical outcome is that CareNationknew it may not be able to retain its staff if the employees did not receive the wages that they had earned prior to closing.

18. In order to retain these employees of the Debtor post-closing, on July 24, 2020, Buyer made the business decision to advance a payment of $72,089.45 to cover the pre-closing payroll expenses of Debtor.

19. By intentionally failing to disclose its plans to pauperize the Seller as of the closing date by sweeping all DIP funds without any reserve for app pre-closing payroll expenses, including all attendant tax obligations, Newtek acted in bad faith and in derogation of the APA.

20. This Court must exercise its equitable powers to correct this omission by finding that either an implied agreement arose on the part of Newtek to fully fund all Debtor's ordinary expenses through the Closing Date, or alternatively, that a constructive trust should be impressed on the Debtor's DIP account balance swept by Newtek.

21. Alternatively, the doctrine of promissory estoppel necessitates that Newtek uphold its prior consistent course of dealing in releasing its collateral to fund Debtor's operations through Closing, as was understood and agreed upon by all parties throughout the negotiations for this purchase between Buyer, Seller, and Newtek.

WHEREFORE, CareNation moves for the entry of an order compelling Newtek to reimburse CareNation for the final pre-closing payroll expense of $72,089.45 in keeping with its consistent course of dealing from the expiration of the DIP Lending facility on June 15, 2020,

through the closing date of July 20, 2020 and granting of such other and further relief as the Court deems proper.

Respectfully submitted,

/s/ Matthew R. Murphy
Matthew R. Murphy, No. 24627
Smythe Huff & Murphy PC
1222 16th Avenue South, Suite 301
Nashville, Tennessee 37212
Phone: (615) 255-4849
Fax: (615) 255-4855
mmurphy@smythehuff.com

*Counsel for CareNation*

## CERTIFICATE OF SERVICE

I hereby certify that I have sent a true and exact copy of the foregoing to the United Megan Seliber, Trial Attorney for the United States Trustee, Daniel H. Puryear, Attorney for Newtek, David W. Houston, IV, Attorney for Debtor, and all other parties of record to receive notice electronically via the U.S. Bankruptcy Court's CM/ECF filing system, on August 4, 2020.

/s/ Matthew R. Murphy