21. **Holding Over.** If Tenant fails to vacate the Premises at the end of the Term, then Tenant shall be a tenant at sufferance and, in addition to all other damages and remedies to which Landlord may be entitled for such holding over, (a) Tenant shall pay, in addition to the other Rent, Basic Rent equal to 150% of the Basic Rent payable during the last month of the Term, and (b) Tenant shall otherwise continue to be subject to all of Tenant's obligations under this Lease. The provisions of this Section 211 shall not be deemed to limit or constitute a waiver of any other rights or remedies of Landlord provided herein or at law. If Tenant holds over without Landlord's consent and after demand by Landlord fails to surrender the Premises upon the termination or expiration of this Lease, in addition to any other liabilities to Landlord accruing therefrom, Tenant shall protect, defend, indemnify and hold Landlord harmless from all loss, costs (including reasonable attorneys' fees) and liability resulting from such failure, including any claims made by any succeeding tenant founded upon such failure to surrender, and any lost profits to Landlord resulting therefrom.

22. **Certain Rights Reserved by Landlord.** Provided that the exercise of such rights does not unreasonably interfere with Tenant's occupancy of the Premises, Landlord shall have the following rights:

(a) **Building Operations**. To enter upon the Premises (after giving Tenant reasonable notice thereof, which may be oral notice, except in cases of real or apparent emergency, in which case no notice shall be required) in order to make inspections or for the purpose of effecting repairs, alterations, additions, changes, or improvements, whether structural or otherwise, in and about the Premises, or any part thereof, that Landlord is required to make or that Tenant has failed to make, pursuant to the terms of this Lease, and, during the continuance of any such work, to temporarily close doors, entryways, public space, and corridors in the Building; to interrupt or temporarily suspend Building services and facilities;

(b) **Security**. To take such reasonable measures as Landlord deems advisable for (without the express or implied obligation to do so) the security of the Building and its occupants; evacuating the Building for cause, suspected cause, or for drill purposes; temporarily denying access to the Building; and closing the Building after normal business hours and on Sundays and holidays, subject, however, to Tenant's right to enter when the Building is closed after normal business hours under such reasonable regulations as Landlord may prescribe from time to time (Tenant acknowledges and agrees that as of the Commencement Date, Landlord is not providing any security services with respect to the Premises or Tenant's Off-Premises Equipment and that Landlord shall not be liable to Tenant for, and Tenant waives any claim against Landlord with respect to, any loss by theft or any other damage suffered or incurred by Tenant in connection with any unauthorized entry into or onto the Premises or any area where Tenant's Off-Premises Equipment is located or any other breach of security with respect to the Premises or Tenant's Off-Premises Equipment);

(c) **Prospective Purchasers and Lenders**. To enter the Premises at all reasonable hours following advance notice to Tenant to show the Premises to prospective purchasers or lenders; and

(d) **Prospective Tenants**. At any time during the last 12 months of the Term (or earlier if Tenant has notified Landlord in writing that it does not desire to renew the Term) or at any time following the occurrence of an Event of Default, to enter the Premises at all reasonable hours to show the Premises to prospective tenants.

23. **Miscellaneous.**

(a) **Landlord Transfer**. Landlord may transfer any portion of the Building and any of its rights under this Lease. If Landlord assigns its rights under this Lease, then Landlord shall thereby be released from any further obligations hereunder arising after the date of transfer, provided that the assignee assumes Landlord's obligations hereunder in writing.

(b) **Landlord's Liability**. The liability of Landlord (and its partners, shareholders or members) to Tenant (or any person or entity claiming by, through or under Tenant) for any default by Landlord under the terms of this Lease or any matter relating to or arising out of the occupancy or use of the Premises and/or other areas of the Building shall be limited to Tenant's actual direct, but not consequential, damages therefore and shall be recoverable only from the interest of Landlord in the Building (including rent or other income from the Building and insurance proceeds), and Landlord (and its partners, shareholders or members) shall not be personally liable for any deficiency.

17

(c) **Force Majeure**. Other than for Tenant's obligations under this Lease that can be performed by the payment of money (e.g., payment of Rent and maintenance of insurance), whenever a period of time is herein prescribed for action to be taken by either party hereto, such party shall not be liable or responsible for, and there shall be excluded from the computation of any such period of time, any delays due to strikes, riots, acts of God, shortages of labor or materials, war, governmental laws, regulations, or restrictions, or any other causes of any kind whatsoever which are beyond the control of such party.

(d) **Brokerage**. Neither Landlord nor Tenant has dealt with any broker or agent in connection with the negotiation or execution of this Lease, other than Alliant Commercial Realty Services, LLC ("Broker"), which shall be compensated by Landlord pursuant to separate agreement. Tenant and Landlord shall each indemnify the other against all costs, expenses, attorneys' fees, liens and other liability for commissions or other compensation claimed by any broker or agent claiming the same by, through, or under the indemnifying party, other than Broker.

(e) **Estoppel Certificates**. From time to time, Tenant shall furnish to any party designated by Landlord, within ten (10) days after Landlord has made a request therefore, a certificate signed by Tenant confirming and containing such factual certifications and representations as to this Lease as Landlord may reasonably request. Unless otherwise required by Landlord's Mortgagee or a prospective purchaser or mortgagee of the Building, the initial form of estoppel certificate to be signed by Tenant is attached hereto as Exhibit F.

(f) **Notices**. All notices and other communications given pursuant to this Lease shall be in writing and shall be (1) mailed by first class, United States Mail, postage prepaid, certified, with return receipt requested, and addressed to the parties hereto at the address specified in the Basic Lease Information, (2) hand delivered to the intended addressee, (3) sent by a nationally recognized overnight courier service, or (4) sent by facsimile transmission during normal business hours followed by a confirmatory letter sent in another manner permitted hereunder. All notices shall be effective upon delivery to the address of the addressee. The parties hereto may change their addresses by giving notice thereof to the other in conformity with this provision.

(g) **Separability**. If any clause or provision of this Lease is illegal, invalid, or unenforceable under present or future laws, then the remainder of this Lease shall not be affected thereby and in lieu of such clause or provision, there shall be added as a part of this Lease a clause or provision as similar in terms to such illegal, invalid, or unenforceable clause or provision as may be possible and be legal, valid, and enforceable.

(h) **Amendments; Binding Effect**. This Lease may not be amended except by instrument in writing signed by Landlord and Tenant. No provision of this Lease shall be deemed to have been waived by either Landlord or Tenant unless such waiver is in writing signed by such party, and no custom or practice which may evolve between the parties in the administration of the terms hereof shall waive or diminish the right of Landlord or Tenant to insist upon the performance in strict accordance with the terms hereof. The terms and conditions contained in this Lease shall inure to the benefit of and be binding upon the parties hereto, and upon their respective successors in interest and legal representatives, except as otherwise herein expressly provided. This Lease is for the sole benefit of Landlord and Tenant, and, other than Landlord's Mortgagee, no third party shall be deemed a third party beneficiary hereof.

(i) **Quiet Enjoyment**. Provided Tenant has performed all of its obligations hereunder, Tenant shall peaceably and quietly hold and enjoy the Premises for the Term, without hindrance from Landlord or any party claiming by, through, or under Landlord, but not otherwise, subject to the terms and conditions of this Lease.

(j) **No Merger**. There shall be no merger of the leasehold estate hereby created with the fee estate in the Premises or any part thereof if the same person acquires or holds, directly or indirectly, this Lease or any interest in this Lease and the fee estate in the leasehold Premises or any interest in such fee estate.

(k) **No Offer**. The submission of this Lease to Tenant shall not be construed as an offer, and Tenant shall not have any rights under this Lease unless Landlord executes a copy of this Lease and delivers it to Tenant.

18

Case 3:19-bk-01971   Doc 269-2   Filed 08/25/20   Entered 08/25/20 16:34:58   Desc
Exhibit A-Lease Agreement (part 2 of 2)    Page 2 of 19

(l) **Entire Agreement**. This Lease constitutes the entire agreement between Landlord and Tenant regarding the subject matter hereof and supersedes all oral statements and prior writings relating thereto. Except for those set forth in this Lease, no representations, warranties, or agreements have been made by Landlord or Tenant to the other with respect to this Lease or the obligations of Landlord or Tenant in connection therewith. The normal rule of construction that any ambiguities be resolved against the drafting party shall not apply to the interpretation of this Lease or any exhibits or amendments hereto.

(m) **Waiver of Jury Trial**. TO THE MAXIMUM EXTENT PERMITTED BY LAW, LANDLORD AND TENANT EACH WAIVE ANY RIGHT TO TRIAL BY JURY IN ANY LITIGATION OR TO HAVE A JURY PARTICIPATE IN RESOLVING ANY DISPUTE ARISING OUT OF OR WITH RESPECT TO THIS LEASE OR ANY OTHER INSTRUMENT, DOCUMENT OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION HEREWITH OR THE TRANSACTIONS RELATED HERETO.

(n) **Governing Law**. This Lease shall be governed by and construed in accordance with the laws of the State of Tennessee.

(o) **Recording**. Tenant shall not record this Lease or any memorandum of this Lease without the prior written consent of Landlord, which consent may be withheld or denied in the sole and absolute discretion of Landlord.

(p) **Joint and Several Liability**. If Tenant is comprised of more than one party, each such party shall be jointly and severally liable for Tenant's obligations under this Lease. All unperformed obligations of Tenant hereunder not fully performed at the end of the Term shall survive the end of the Term, including payment obligations with respect to Rent and all obligations concerning the condition and repair of the Premises.

(q) **Financial Reports**. Within 15 days after Landlord's request, Tenant will furnish Tenant's most recent audited financial statements (including any notes to them) to Landlord, or, if no such audited statements have been prepared, such other financial statements (and notes to them) as may have been prepared by an independent certified public accountant or, failing those, Tenant's internally prepared financial statements. If Tenant is a publicly traded corporation, Tenant may satisfy its obligations hereunder by providing to Landlord Tenant's most recent annual and quarterly reports. Tenant will discuss its financial statements with Landlord and, following the occurrence of an Event of Default hereunder, will give Landlord access to Tenant's books and records in order to enable Landlord to verify the financial statements. Landlord will not disclose any aspect of Tenant's financial statements that Tenant designates to Landlord as confidential except (1) to Landlord's Mortgagee or prospective mortgagees or purchasers of the Building, (2) in litigation between Landlord and Tenant, and (3) if required by court order. Tenant shall not be required to deliver the financial statements required under this Section 23(q) more than once in any 12-month period unless requested by Landlord's Mortgagee or a prospective buyer or lender of the Building or an Event of Default occurs.

(r) **Landlord's Fees**. Whenever Tenant requests Landlord to take any action not required of it hereunder or give any consent required or permitted under this Lease, Tenant will reimburse Landlord for Landlord's reasonable, out-of-pocket costs payable to third party engineers or architects and incurred by Landlord in reviewing the proposed action or consent within 30 days after Landlord's delivery to Tenant of a statement of such costs. Tenant will be obligated to make such reimbursement without regard to whether Landlord consents to any such proposed action. If Landlord reasonably believes that the out-of-pocket costs payable to third parties to be incurred by Landlord in reviewing the proposed action or consent will exceed $1,500, Landlord will first notify Tenant of such cost estimate before proceeding with such third-party expenses. If Tenant fails to consent to such additional costs and expenses within five business days after Landlord's written notification to Tenant thereof, Tenant shall be deemed to have rescinded its request for such action or consent.

(s) **Telecommunications**. Tenant and its telecommunications companies, including local exchange telecommunications companies and alternative access vendor services companies, shall have no right of access to and within the Building, for the installation and operation of telecommunications systems, including voice, video, data, Internet, and any other services provided over wire, fiber optic, microwave, wireless, and any other transmission systems ("**Telecommunications Services**"), for part or all of Tenant's telecommunications within the

19

Building and from the Building to any other location without Landlord's prior written consent. All providers of Telecommunications Services shall be required to comply with the rules and regulations of the Building, applicable Laws and Landlord's policies and practices for the Building. Tenant acknowledges that Landlord shall not be required to provide or arrange for any Telecommunications Services and that Landlord shall have no liability to any Tenant Party in connection with the installation, operation or maintenance of Telecommunications Services or any equipment or facilities relating thereto. Tenant, at its cost and for its own account, shall be solely responsible for obtaining all Telecommunications Services.

(t) **Confidentiality**. Tenant acknowledges that the terms and conditions of this Lease are to remain confidential for Landlord's benefit, and may not be disclosed by Tenant to an un-Affiliated third party, by any manner or means, directly or indirectly, without Landlord's prior written consent. The consent by Landlord to any disclosures shall not be deemed to be a waiver on the part of Landlord of any prohibition against any future disclosure.

(u) **Authority**. Tenant (if a corporation, partnership, limited liability company or other business entity) hereby represents and warrants to Landlord that Tenant is a duly formed and existing entity qualified to do business in the state in which the Premises are located, that Tenant has full right and authority to execute and deliver this Lease, and that each person signing on behalf of Tenant is authorized to do so. Landlord hereby represents and warrants to Tenant that Landlord is a duly formed and existing entity qualified to do business in the state in which the Premises are located, that Landlord has full right and authority to execute and deliver this Lease, and that each person signing on behalf of Landlord is authorized to do so.

(v) **Hazardous Materials**. The term "**Hazardous Materials**" means any substance, material, or waste which is now or hereafter classified or considered to be hazardous, toxic, or dangerous under any Law relating to pollution or the protection or regulation of human health, natural resources or the environment, or poses or threatens to pose a hazard to the health or safety of persons on the Premises or in the Building. Tenant shall not use, generate, store, or dispose of, or permit the use, generation, storage or disposal of Hazardous Materials on or about the Premises or the Building except in a manner and quantity necessary for the ordinary performance of Tenant's business, and then in compliance with all Laws. If Tenant breaches its obligations under this Section 23(v), Landlord may immediately take any and all action reasonably appropriate to remedy the same, including taking all appropriate action to clean up or remediate any contamination resulting from Tenant's use, generation, storage or disposal of Hazardous Materials. Tenant shall defend, indemnify, and hold harmless Landlord and its representatives and agents from and against any and all claims, demands, liabilities, causes of action, suits, judgments, damages and expenses (including reasonable attorneys' fees and cost of clean up and remediation) arising from Tenant's failure to comply with the provisions of this Section 23(v). This indemnity provision shall survive termination or expiration of this Lease.

(w) **Patriot Act**. Tenant, including, but not limited to, its owners, officers, directors, partners, members, managers, employees, principal stockholders and any other constituent entities, is currently in full compliance and during the term of this Lease, including any extension thereof, shall remain in full compliance with all the applicable laws and regulations of the United States of America that prohibit, regulate or restrict financial transactions, including but not limited to, conducting any activity or failing to conduct any activity, if such action or inaction constitutes a money laundering crime, including any money laundering crime prohibited under the Money Laundering Control Act, 18 U.S.C. 1956, 1957, or the Bank Secrecy Act, 31 U.S.C. 5311 et seq. and any amendments or successors thereto and any applicable regulations promulgated thereunder.

Tenant, including, but not limited to, its owners, officers, directors, partners, members, managers, and employees (i) have not been designated as a "specifically designated national and blocked person", as designated by the U.S. Department of the Treasury's Office of Foreign Asset Control (ii) is currently in compliance with and will at all times during the term of this Lease, including any extension thereof, remain in compliance with the regulations of the Office of Foreign Asset Control, under the Foreign Asset Control Regulation, 31 C.F.R. Section 500 et seq., and any statute, executive order (including the September 24, 2001, Executive Order Blocking People and Prohibiting Transactions with Persons Who Commit, Threaten to Commit, or Support Terrorism), or other governmental action relating thereto; and (iii) has not used and will not use funds from illegal activities, including but not limited to obtaining funds from specially designated national and blocked persons, for any payment under this Lease.

20

Case 3:19-bk-01971    Doc 269-2    Filed 08/25/20    Entered 08/25/20 16:34:58    Desc
Exhibit A-Lease Agreement (part 2 of 2)    Page 4 of 19

Tenant acknowledges that it understands the requirements of the applicable laws of the Money Laundering Control Act, 18 U.S.C. 1956, 1957, the Bank Secrecy Act 31, U.S.C. 5311 et seq., and the Foreign Asset Control Regulation, 31 C.F.R. Section 500 et seq. under the USA Patriot Act of 2001.

Tenant shall notify Landlord immediately upon receipt of any information indicating a breach of this section or if Tenant, including, but not limited to, its owners, officers, directors, partners, members, managers, employees, principal stockholders and any other constituent entities, is custodially detained on charges relating to money laundering. Landlord shall be entitled to take all actions necessary so that Landlord is in compliance with all regulations and requirements of law herein.

(x) **Attorney's Fees.**

If it becomes necessary for either party to employ an attorney because of the breach of any provisions of this Lease, or for any other relief against the other party hereunder, then all costs and expenses, including reasonable attorneys' fees, whether or not suit is filed, incurred shall be paid by the defaulting party, which obligation on the part of the defaulting party shall be deemed to have accrued on the date of the commencement of such action and shall be enforceable whether the action is prosecuted to judgment.

(y) **List of Exhibits**. All exhibits and attachments attached hereto are incorporated herein by this reference.

| Exhibit A - | Site Plan |
| Exhibit B - | Description of the Land |
| Exhibit C - | Building Rules and Regulations |
| Exhibit D - | Tenant Finish-Work Letter |
| Exhibit E - | Form of Confirmation of Commencement Date Letter |
| Exhibit F - | Form of Tenant Estoppel Certificate |
| Exhibit G- | Building Floor Plan |
| Exhibit H- | Lease Guaranty |

## 24. Renewal Option.

Provided Tenant is not then in default with respect to this Lease, Tenant shall have the right and option, by giving Landlord written notice of its intention at least nine (9) months before the expiration date of the Term hereof to extend the Term of this Lease for two (2) additional five (5) year periods from the date of termination of this Lease (or such first option period, as applicable), which notice of exercise of this option shall be given separately and shall only be effective if in writing and sent to Landlord as provided herein for the mailing of notices. Such lease extension shall be upon identical terms and conditions as set forth in this Lease, except that the rental to be paid by the Tenant hereunder shall be at the then current market rate (as negotiated between Landlord and Tenant). If Landlord and Tenant are not able to agree to the then current market rate within thirty (30) days of the date of Tenant's written notice, then the renewal option shall be null and void and the Lease shall terminate on such date as provided herein.

21

LANDLORD AND TENANT EXPRESSLY DISCLAIM ANY IMPLIED WARRANTY THAT THE PREMISES ARE SUITABLE FOR TENANT'S INTENDED COMMERCIAL PURPOSE, EXCEPT AS OTHERWISE EXPRESSLY PROVIDED HEREIN, TENANT SHALL CONTINUE TO PAY THE RENT, WITHOUT ABATEMENT, DEMAND, SETOFF OR DEDUCTION, NOTWITHSTANDING ANY BREACH BY LANDLORD OF ITS DUTIES OR OBLIGATIONS HEREUNDER, WHETHER EXPRESS OR IMPLIED.

This Lease is executed on the respective dates set forth below, but for reference purposes, this Lease shall be dated as of the date first above written. If the execution date is left blank, this Lease shall be deemed executed as of the date first written above.

LANDLORD: _____ **FOUR PLUS CORPORATION**

By: _[signature]_
Name: D. Whitt/ Joyner
Title: President
Execution Date: 10/31/16

TENANT: _____ **CAPSTONE PEDIATRICS, PLLC**

By: _[signature]_
Name: Dionne R-BW
Title: COO
Execution Date: _____

**Exhibit A**

## SITE PLAN



**Exhibit B**

## DESCRIPTION OF THE LAND

Being a tract of land known as Lot 2 of the Final Plat of Smyrna MOB as recorded in Plat Book 28, Page 54 Registers Office Rutherford County (RORC). Said lot lying in the northern portion of Rutherford County, lying in the 3rd Civil District of Smyrna, Tennessee. Bounded on the north by Nashville Gastrointestinal Specialists, Inc. as recorded in Book 139, Page 2468 RORC, on the east by Donnie Williams as recorded in Book 531, Page 236 RORC, on the south by TC Nashville Medical 1, LLC as recorded in Book 372, Page 239, also known as Lot 1 of the previously mentioned plat, on the west by Right-of-Way (ROW) of Stonecrest Parkway (ROW varies). Tract being described as follows:

POINT OF COMMENCEMENT being the southern ROW of Cedar Heath Grove Road; from said point of commencement South 5°29'56" West 439.93 feet to the TRUE POINT OF BEGINNING being a set point on the easterly ROW margin of Stonecrest Parkway, said point being the northwest corner of the lot being described; thence leaving said ROW South 85°33'19" East 405.98 feet to a set point; thence South 5°41'40" West 205.00 feet to a set point on the common line of the previously mentioned Lot 1; thence with said common line North 85°33'19" West 405.64 feet to a set point on the easterly ROW margin of Stonecrest Parkway; thence with said ROW margin North 5°35'57" East 204.99 feet to the true point of beginning.

Containing 83,170 square feet or 1.91 acres.

Exhibit C

## BUILDING RULES AND REGULATIONS

The following rules and regulations shall apply to the Premises, the Building, the parking garage associated therewith, and the appurtenances thereto:

1. Sidewalks, doorways, vestibules, halls, stairways, and other similar areas shall not be obstructed by tenants or used by any tenant for purposes other than ingress and egress to and from their respective leased premises and for going from one to another part of the Building.

2. Plumbing, fixtures and appliances shall be used only for the purposes for which designed, and no sweepings, rubbish, rags or other unsuitable material shall be thrown or deposited therein. Damage resulting to any such fixtures or appliances from misuse by a tenant or its agents, employees or invitees, shall be paid by such tenant.

3. No signs, advertisements or notices (other than those that are not visible outside the Premises) shall be painted or affixed on or to any windows or doors or other part of the Building without the prior written consent of Landlord. No nails, hooks or screws (other than those which are necessary to hang paintings, prints, pictures, or other similar items on the Premises' interior walls) shall be driven or inserted in any part of the Building except by Building maintenance personnel. No curtains or other window treatments shall be placed between the glass and the Building standard window treatments.

4. Landlord may prescribe weight limitations and determine the locations for imaging devices and other heavy equipment or items, which shall in all cases be placed in the Building so as to distribute weight in a manner acceptable to Landlord which may include the use of such supporting devices as Landlord may require. All damages to the Building caused by the installation or removal of any property of a tenant, or done by a tenant's property while in the Building, shall be repaired at the expense of such tenant.

5. Corridor doors, when not in use, shall be kept closed. Nothing shall be swept or thrown into the corridors, halls, elevator shafts or stairways. No birds or animals (other than seeing-eye dogs) shall be brought into or kept in, on or about any tenant's leased premises. No portion of any tenant's leased premises shall at any time be used or occupied as sleeping or lodging quarters.

6. Tenant shall not make or permit any vibration or improper, objectionable or unpleasant noises or odors in the Building or otherwise interfere in any way with other tenants or persons having business with them.

7. No machinery of any kind (other than normal office equipment) shall be operated by any tenant on its leased area without Landlord's prior written consent, nor shall any tenant use or keep in the Building any flammable or explosive fluid or substance (other than typical office supplies *[e.g., photocopier toner]* used in compliance with all Laws).

8. Landlord will not be responsible for lost or stolen personal property, money or jewelry from tenant's leased premises or public or common areas regardless of whether such loss occurs when the area is locked against entry or not.

9. Tenant shall not conduct any activity on or about the Premises or Building which will draw pickets, demonstrators, or the like.

10. All vehicles are to be currently licensed, in good operating condition, parked for business purposes having to do with Tenant's business operated in the Premises, parked within designated parking spaces, one vehicle to each space. No vehicle shall be parked as a "billboard" vehicle in the parking lot. Any vehicle parked improperly may be towed away. Tenant, Tenant's agents, employees, vendors and customers who do not operate or park their vehicles as required shall subject the vehicle to being towed at the expense of the owner or driver. Landlord may place a "boot" on the vehicle to immobilize it and may levy a charge of $50.00 to remove the "boot." Tenant shall indemnify, hold and save harmless Landlord of any liability arising from the towing or booting of any vehicles belonging to a Tenant Party.

11. No tenant may enter into phone rooms, electrical rooms, mechanical rooms, or other service areas of the Building unless accompanied by Landlord or the Building manager.

12. Tenant shall not permit its employees, invitees or guests to smoke in the Premises or the lobbies, passages, corridors, elevators, vending rooms, rest rooms, stairways or any other area shared in common with other tenants in the Building. Nor shall the tenant permit its employees, invitees, or guests to loiter at the Building entrances for the purposes of smoking. Landlord may, but shall not be required to, designate an area for smoking outside the Building.

2

Case 3:19-bk-01971   Doc 269-2   Filed 08/25/20   Entered 08/25/20 16:34:58   Desc
Exhibit A-Lease Agreement (part 2 of 2)   Page 10 of 19

**Exhibit D**

## TENANT FINISH-WORK LETTER

[Tenant performs work with Allowance provided by Landlord]

This Exhibit is attached to and made a part of the Lease Agreement dated ~~August~~ October 31, 2016 (the "Lease"), by and between Four Plus Corporation ("Landlord") and Capstone Pediatrics, PLLC ("Tenant") for space in the Building located at 537 Stonecrest Parkway, Smyrna, Tennessee.

Tenant, following the delivery of the Premises by Landlord and the full and final execution and delivery of this Lease and all prepaid Rent and security deposits required hereunder, shall have the right to perform alterations and improvements in the Premises (the "Initial Alterations"). Notwithstanding the foregoing, Tenant and its contractors shall not have the right to perform Initial Alterations in the Premises unless and until Tenant has complied with all of the terms and conditions of Article 7 of this Lease. Tenant shall be responsible for all elements of the design of Tenant's plans (including, without limitation, compliance with law, functionality of design, the structural integrity of the design, the configuration of the premises and the placement of Tenant's furniture, appliances and equipment), and Landlord's approval of Tenant's plans shall in no event relieve Tenant of the responsibility for such design. Landlord's approval of the contractors to perform the Initial Alterations shall not be unreasonably withheld.

Provided Tenant is not in default, Landlord agrees to contribute the sum of One Hundred Twenty Thousand Dollars ($120,000.00) (the "Allowance") toward the cost of performing the Initial Alterations in preparation of Tenant's occupancy of the Premises.

The Allowance may only be used for the cost of preparing design and construction documents and mechanical and electrical plans for the Initial Alterations and for hard costs in connection with the Initial Alterations. The Allowance shall be paid to Tenant or, at Landlord's option, to the order of the general contractor that performed the Initial Alterations, or to the Tenant and such general contractor, jointly, within thirty (30) days following Tenant opening for business from the Premises and receipt by Landlord of (1) receipted bills covering all labor and materials expended and used in the Initial Alterations; (2) a request to disburse from Tenant containing an approval by Tenant of the work done; (3) full and final waivers of lien from the general contractor and any subcontractor for which payment in excess of $10,000 was made; (4) as-built plans of the Initial Alterations; and (5) a temporary or permanent certificate of occupancy for the Premises. Notwithstanding anything herein to the contrary, Landlord shall not be obligated to disburse any portion of the Allowance during the continuance of an uncured default under the Lease, and Landlord's obligation to disburse shall only resume when and if such default is cured.

Tenant covenants and agrees that its general contractor must waive and/or release any liens, charges, or encumbrances against the Premises and the Building upon full payment by Landlord of the Allowance.

In no event shall the Allowance be used for the purchase of equipment, furniture or other items of personal property of Tenant. In the event Tenant does not use the entire Allowance as part of the Initial Alterations, any unused amount shall accrue to the sole benefit of Landlord, it being understood that Tenant shall not be entitled to any credit, abatement or other concession in connection therewith. Tenant shall be responsible for all applicable state sales or use taxes, if any, payable in connection with the Initial Alterations and/or Allowance.

Tenant agrees to accept the Premises in its "as-is" condition and configuration, it being agreed that Landlord shall not be required to perform any work ("Landlord's Work") or, except as provided above with respect to the Allowance, incur any costs in connection with the construction or demolition of any improvements in the Premises.

This Exhibit shall not be deemed applicable to any additional space added to the original Premises at any time or from time to time, whether by any options under the Lease or otherwise, or to any portion of the original Premises or

1

any additions to the Premises in the event of a renewal or extension of the original Term of this Lease, whether by any options under the Lease or otherwise, unless expressly so provided in the Lease or any amendment or supplement to the Lease.

2
Case 3:19-bk-01971    Doc 269-2    Filed 08/25/20    Entered 08/25/20 16:34:58    Desc
Exhibit A-Lease Agreement (part 2 of 2)    Page 12 of 19

**Exhibit E**

# CONFIRMATION OF COMMENCEMENT DATE

_____, 200_

Re: Lease Agreement (the "**Lease**") dated _____, 200__, between **FOUR PLUS CORPORATION** ("**Landlord**"), and _____ ("**Tenant**"). Capitalized terms used herein but not defined shall be given the meanings assigned to them in the Lease.

Ladies and Gentlemen:

Landlord and Tenant agree as follows:

1. **Condition of Premises**. Tenant has accepted possession of the Premises pursuant to the Lease. Any improvements required by the terms of the Lease to be made by Landlord have been completed to the full and complete satisfaction of Tenant in all respects and Landlord has fulfilled all of its duties under the Lease with respect to such initial tenant improvements. Furthermore, Tenant acknowledges that the Premises are suitable for the Permitted Use.

2. **Commencement Date**. The Commencement Date of the Lease is _____, 200__.

3. **Expiration Date**. The Term is scheduled to expire on the last day of the ___ full calendar month of the Term, which date is _____, 200__.

4. **Contact Person**. Tenant's contact person in the Premises is:

5. **Ratification**. Tenant hereby ratifies and confirms its obligations under the Lease. Additionally, Tenant further confirms and ratifies that, as of the date hereof, (a) the Lease is and remains in good standing and in full force and effect, and (b) Tenant has not asserted any claims, counterclaims, set-offs or defenses against Landlord arising out of the Lease or in any way relating thereto or arising out of any other transaction between Landlord and Tenant.

6. **Binding Effect; Governing Law**. Except as modified hereby, the Lease shall remain in full effect and this letter shall be binding upon Landlord and Tenant and their respective successors and assigns. If any inconsistency exists or arises between the terms of this letter and the terms of the Lease, the terms of this letter shall prevail. This letter shall be governed by the laws of the state in which the Premises are located.

Please indicate your agreement to the above matters by signing this letter in the space indicated below and returning an executed original to us.

Sincerely,

**FOUR PLUS CORPORATION**
By: _____
Name: _____
Title: _____

3
Case 3:19-bk-01971   Doc 269-2   Filed 08/25/20   Entered 08/25/20 16:34:58   Desc
Exhibit A-Lease Agreement (part 2 of 2)   Page 13 of 19

Agreed and accepted:

_____


By:_____
Name:_____
Title:_____

**Exhibit F**

## FORM OF TENANT ESTOPPEL CERTIFICATE

The undersigned is the Tenant under the Lease (defined below) between _____, a _____, as Landlord, and the undersigned as Tenant, for the Premises on the _____ floor(s) of the office building located at _____, _____ and commonly known as _____, and hereby certifies as follows:

1. The Lease consists of the original Lease Agreement dated as of _____, 200___ between Tenant and Landlord *['s predecessor-in-interest]* and the following amendments or modifications thereto (if none, please state "none"):

_____
_____
_____

The documents listed above are herein collectively referred to as the "Lease" and represent the entire agreement between the parties with respect to the Premises. All capitalized terms used herein but not defined shall be given the meaning assigned to them in the Lease.

2. The Lease is in full force and effect and has not been modified, supplemented or amended in any way except as provided in Section 1 above.

3. The Term commenced on _____, 200__ and the Term expires, excluding any renewal options, on _____, 200__, and Tenant has no option to purchase all or any part of the Premises or the Building or, except as expressly set forth in the Lease, any option to terminate or cancel the Lease.

4. Tenant currently occupies the Premises described in the Lease and Tenant has not transferred, assigned, or sublet any portion of the Premises nor entered into any license or concession agreements with respect thereto except as follows (if none, please state "none"):

_____
_____
_____

5. All monthly installments of Basic Rent, all Additional Rent and all monthly installments of estimated Additional Rent have been paid when due through _____. The current monthly installment of Basic Rent is $_____.

6. All conditions of the Lease to be performed by Landlord necessary to the enforceability of the Lease have been satisfied and Landlord is not in default thereunder. In addition, Tenant has not delivered any notice to Landlord regarding a default by Landlord thereunder.

7. As of the date hereof, there are no existing defenses or offsets, or, to the undersigned's knowledge, claims or any basis for a claim, that the undersigned has against Landlord and no event has occurred and no condition exists, which, with the giving of notice or the passage of time, or both, will constitute a default under the Lease.

8. No rental has been paid more than 30 days in advance and no security deposit has been delivered to Landlord except as provided in the Lease.

9. If Tenant is a corporation, partnership, limited liability company or other business entity, each individual executing this Estoppel Certificate on behalf of Tenant hereby represents and warrants that Tenant is a duly formed and existing entity qualified to do business in the state in which the Premises are located and that Tenant has full right and authority to execute and deliver this Estoppel Certificate and that each person signing on behalf of Tenant is authorized to do so.

10. There are no actions pending against Tenant under any bankruptcy or similar laws of the United States or any state.

11. Other than in compliance with all applicable laws and incidental to the ordinary course of the use of the Premises, the undersigned has not used or stored any hazardous substances in the Premises.

12. All tenant improvement work to be performed by Landlord under the Lease has been completed in accordance with the Lease and has been accepted by the undersigned and all reimbursements and allowances due to the undersigned under the Lease in connection with any tenant improvement work have been paid in full.

Tenant acknowledges that this Estoppel Certificate may be delivered to Landlord, Landlord's Mortgagee or to a prospective mortgagee or prospective purchaser, and their respective successors and assigns, and acknowledges that Landlord, Landlord's Mortgagee and/or such prospective mortgagee or prospective purchaser will be relying upon the statements contained herein in disbursing loan advances or making a new loan or acquiring the property of which the Premises are a part and that receipt by it of this certificate is a condition of disbursing loan advances or making such loan or acquiring such property.

Executed as of _____, 200_.

TENANT: _____, a
_____

By: _____
Name: _____
Title: _____

## BUILDING FLOOR PLAN



Exhibit H

## LEASE GUARANTY

THIS LEASE GUARANTY is made as of October 31, 2016, by **GARY G. GRIFFIETH, M.D.** and **WINNIE TOLER, Ph.D.** (collectively, "Guarantor"), having an address at 310 25th Avenue North, Suite 201, Nashville, Tennessee 37203, to Four Plus Corporation ("Landlord)" having an address at 5251 Hampstead High Street, Suite 300, Montgomery, AL 36116.

WHEREAS, Landlord has leased to Capstone Pediatrics, PLLC ("Tenant"), certain space (the "Premises") located in Smyrna Physicians Pavilion, pursuant to that certain lease by and between Landlord and Tenant of even date herewith (the "Lease"); and

WHEREAS, Guarantor is materially benefited by the Lease, and Guarantor's executing this Guaranty is a material inducement to Landlord to enter into the Lease.

NOW THEREFORE, Guarantor agrees with Landlord as follows:

1. Guarantor unconditionally and irrevocably guarantees that all rent due, all other charges, costs and expenses, due by or from Tenant pursuant to the terms of the Lease, shall be promptly paid in full when due in accordance with the Lease and that Tenant shall perform and observe its covenants thereunder. If any such sum or covenant or obligation is not timely paid, performed or observed, then Guarantor shall, promptly after notice thereof and prior to the expiration of any applicable race period specified in the Lease, pay the same regardless of: (a) any defense or right of offset or counterclaim which Tenant or Guarantor may have or assert against Landlord, (b) whether Landlord shall have taken any steps to enforce any rights against Tenant or any other person, (c) termination of the Lease as a result of Tenant's default, or (d) any other condition or contingency. Guarantor shall also pay all expenses of collecting such sum or any part thereof or of otherwise enforcing this Guaranty, including reasonable attorneys' fees and court costs. This Guaranty is irrevocable, unconditional and absolute. .

2. Guarantor's obligations and covenants under this Guaranty shall in no way be affected or impaired by reason of the happening from time to time of any of the following, whether or not Guarantor has been notified thereof or consented thereto: (a) Landlord's waiver of the performance of observance by Tenant, Guarantor or any other party, of any covenant or condition contained in the Lease or this Guaranty; (b) any extension, in whole or in part, of the time for payment by Tenant or Guarantor of any sums owing or payable under the Lease or this Guaranty, or of any other sums or obligations under or arising out of or on account of the Lease or this Guaranty, or the renewal of the Lease or of this Guaranty; (c) any assignment of the lease or subletting of the Premises or any part thereof; (d) any modification or amendment (whether material or otherwise) of any of the obligations of Tenant or Guarantor under the Lease or this Guaranty; (e) any extension or renewal of the Lease; (f) any expansion or reduction in the size of the Premises; (g) the doing or the omission of any act referred to in the Lease or this Guaranty (including the giving of any consent referred to in the Lease or this Guaranty); (h) Landlord's failure or delay to exercise any right or remedy available to Landlord or any action on the part of Landlord granting indulgence or extension in any form whatsoever; (i) the voluntary or involuntary liquidation, dissolution, sale of any or all of the assets, marshaling of assets and liabilities, receivership, conservatorship, insolvency, bankruptcy, assignment for the benefit of creditors, reorganization, arrangement, composition or readjustment of, or other similar proceeding affecting Tenant or Guarantor or any of Tenant's or Guarantor's assets; or (j) the release of Tenant or Guarantor from the performance or observation of any covenant or condition contained in the Lease or this Guaranty by operation of law.

3. If the Lease is rejected or disaffirmed by Tenant or Tenant's trustee in bankruptcy pursuant to bankruptcy law or any other law affecting creditors rights, then Guarantor shall, and does hereby (without the necessity of any further agreement or act) assume all obligations and liabilities of Tenant under the Lease to the same extent as if the original tenant hereunder, and Guarantor shall, upon Landlord's request promptly confirm in writing such assumption.

4. Notice of acceptance of this Guaranty and notice of any obligations or liabilities contracted or incurred by Tenant are hereby waived by Guarantor. Guarantor hereby waives presentment, notice of dishonor, protest and notice of non-payment or non-performance.

5. This Guaranty (a) shall be governed by the laws of the State of Tennessee, (b) may not be modified or amended except by a written agreement duly executed by the parties, and (c) shall be binding upon, and inure the benefit of, the parties hereto and their respective heirs, personal representatives, successors and assigns.

6. Guarantor's liability shall be primary and joint and several with that of Tenant. Landlord may proceed against Guarantor under this Guaranty without initiating or exhausting any remedy against Tenant, and may proceed against Tenant and Guarantor, separately or concurrently. If more than one natural person and/or entity shall constitute Guarantor, then the liability of each such person and/or entity shall be joint and several.

7. Within five (5) days after the Landlords written request, Guarantor shall execute and deliver to Landlord a written statement certifying any matter concerning this Guaranty or the Lease as Landlord may request.

8. All claims which Guarantor may have against Tenant by reasons of the Guaranty, whether by way of subrogation to any positions of Landlord or for contribution or reimbursement, shall be subordinate to any outstanding claims which Landlord may have against Tenant. Guarantor hereby releases Landlord from any and all liability to Guarantor or Tenant for failing to recognize, observe or protect any legal or equitable rights Guarantor may have with respect to Tenant, the Premises or the Lease. No such failure on the part of Landlord shall release Guarantor of any of its liability under this Guaranty.

9. Any notice which Landlord may elect to send shall be binding upon guarantor if mailed to Guarantor's address set forth above or last address known to Landlord, by United States certified mail return receipt requested.

10. This Guaranty is absolute and is not conditioned in any way upon the genuineness, validity or enforceability of the Lease.

11. Time is of the essence with respect to each obligation of Guarantor.

IN WITNESS WHEREOF, Guarantor has caused this Guaranty to be executed as of the date first above written.

WITNESS:

GUARANTOR:

_____
Name: GARY G. GRIFFIETH, M.D.

_____
Name: WINNIE TOLER, Ph.D.