# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| In re: | ) |
| | ) Case No. 3:19-bk-1971 |
| **CAPSTONE PEDIATRICS, PLLC,** | ) |
| | ) Chapter 11 |
| Debtor. | ) |
| | ) |
| | ) |
| **CDS BUSINESS SERVICES, INC. d/b/a** | ) |
| **NEWTEK BUSINESS CREDIT,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Adv. Proc. No. 3:20-ap-90140 |
| | ) |
| **AMERICA CARES TRUST d/b/a** | ) |
| **CARENATION,** | ) |
| | ) |
| Defendant. | ) |

## AMENDED ANSWER AND COUNTERCLAIM OF
## DEFENDANT, AMERICA CARES TRUST, INC. D/B/A CARENATION

For Answer and Counterclaim to "Complaint For Damages and Injunctive Relief" (Doc. 1) (the "**Complaint**") filed by the Plaintiff, CDS Business Services, Inc. d/b/a Newtek Business Credit (hereinafter the "**Plaintiff**" or "**CDS**"), Defendant America Cares Trust, Inc. d/b/a CareNation (hereinafter "**CareNation**" or "**Defendant**"), by and through the undersigned counsel, states the following admissions, denials, defenses and claims.

CareNation files this Amended Answer and Counterclaim pursuant to Fed. R. Bankr. P. 7015 and Fed. R. Civ. P. 15(a)(2), having received written consent from counsel of record for CDS to this filing on December 11, 2020.

## I. ANSWER -- JURISDICTION

1. For answer to Paragraph 1 of the Complaint, CareNation admits that this Court enjoys personal jurisdiction over the Defendant in this matter.

2. Defendant admits the allegations contained in Paragraph 2 of the Complaint.

3. Defendant admits the allegations contained in Paragraph 3 of the Complaint.

4. Defendant admits the allegations contained in Paragraph 4 of the Complaint.

## II. ANSWER -- FACTUAL BACKGROUND

5. Defendant admits the allegations contained in Paragraph 5 of the Complaint.

6. Defendant admits the allegations contained in Paragraph 6 of the Complaint.

7. For answer to Paragraph 7 of the Complaint, CareNation admits that Capstone Pediatrics, PLLC (the "**Debtor**") filed certain "First Day Motions" including a certain "Expedited Motion For Order Authorizing Debtor to Retain Existing Bank Accounts, Cash Management Systems and Business Forms" (3:19-bk-1971, Doc. 5). CareNation refers to said "**Bank Account and Cash Management Motion**" for its true meaning and effect, including the nature and purpose of the "**Payroll Account**" (account no. XXXXXX7579), the "**Operating Account**" (account no. XXXXXX6837), the "**DIP Facility**" and the "**Carve Out Account**." CareNation further admits that this Court entered an Order granting the Bank Account and Cash Management Motion on April 4, 2019) (3:19-bk-1971 Doc. 43), and CareNation refers to said April 4, 2019 Order for its true meaning and effect. CareNation denies the allegations contained in Paragraph 7 of the Complaint to the extent that they are inconsistent with this Paragraph.

8. For answer to Paragraph 8 of the Complaint, CareNation admits that Capstone Pediatrics, PLLC (the "**Debtor**") filed certain "**First Day Motions**" including a certain motion to appoint an independent Chief Restructuring Officer and Turnaround Advisory Firm (3:19-bk-18971 Doc.

7), and such Motion was granted by (i) an interim Order entered on April 6, 2019 (*Id.* at Doc. 56) and the "**CRO/Turnaround Advisory Firm Order**" dated May 17, 2019 (*Id.* at Doc. 109). CareNation refers to said Motion and Orders for their true meaning and effect. CareNation denies the allegations contained in Paragraph 8 of the Complaint to the extent that they are inconsistent with this Paragraph.

9. For answer to Paragraph 9 of the CareNation refers to the CRO/Turnaround Advisory Firm Order for its true meaning and effect, and denies the allegations contained in Paragraph 9 of the Complaint to the extent they are inconsistent with said order.

10. Defendant admits the allegations contained in Paragraph 10 of the Complaint.

11. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 11 of the Complaint and footnote accompanying same. CareNation refers to the DIP Facility and DIP Financing Orders for their true meanings and effects.

12. Defendant admits the allegations contained in Paragraph 12 of the Complaint, and further states as follows. Debtor was one (1) of the largest independent privately held pediatric practices in the Middle Tennessee region. Its mission was to deliver personalized, quality care to improve and maintain its patients' health and wellbeing. At the time of the filing of this case, Debtor employed 15 medical professionals and had between 25,000 and 35,000 patients. Debtor had locations in the Middle Tennessee area in Clarksville, Antioch and Smyrna. Debtor had contracts with several Medicare and Medicaid payors.

13. For answer to Paragraph 13 of the Complaint, CareNation states as follows. CareNation Admits that "**Garcia**" was authorized by the "**CRO**" and/or the "**Turnaround Advisory Firm**" to obtain access as a "**Primary Administrator**" of the Debtor's DIP Accounts via the Bank of

America's Cashpro® online platform. CareNation lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 13 of the Complaint.

14. Defendant denies the allegations contained in Paragraph 14 of the Complaint, and further rely on the "**APA**" referred to in Paragraph 14 of the Complaint for its true meaning and effect.

15. Defendant admits the allegations contained in Paragraph 15 of the Complaint.

16. For answer to Paragraph 16 of the Complaint, CareNation admits that its president, Michael Gaw, obtained access to the "**DIP Accounts**" via the Cashpro® online platform. Defendant denies the remaining (conjectural) allegations contained in Paragraph 16 of the Complaint.

17. For answer to Paragraph 17 of the Complaint, CareNation admits that it accessed the DIP Accounts via the Cashpro® online platform to deposit proceeds of its accounts receivable and paying its expenses. CareNation further states as follows. At the time CareNation entered into the APA with Debtor, the only accounts for operating and collection were the Provider Account and the Operating Account. Until such time as CareNation could establish a separate provider payment account and all Medicare and Medicaid payments can be paid to a separate account in the name of CareNation, all Medicare and Medicaid government payments remain directed to the Provider Account. Pursuant to the APA, Debtor is entitled to all accounts receivable as of the closing date of July 20, 2020 ("**Closing Date**"), and CareNation is entitled to all accounts receivable resulting from services rendered and invoices issued after the Closing Date.

18. For answer to Paragraph 18 of the Complaint, CareNation states as follows. CareNation admits that on or about August 14, 2020, it initiated withdrawals from the Operating Account. Specifically, CareNation will show that such withdrawals were comprised of proceeds from

accounts receivable for services rendered after the APA was executed, and such proceeds were the sole property of CareNation. CareNation denies that those withdrawals were made for the express purpose of "preventing CDS from being paid in accordance with the DIP Facility and the DIP Financing Orders." Rather, CareNation will show that those withdrawals were made to ensure CareNation could meet its operating costs and payroll obligations from its own revenues. These withdrawals were made with the express knowledge of the CRO, or otherwise at the instruction of the CRO. CareNation denies the allegations contained in Paragraph 18 of the Complaint to the extent that they are inconsistent with this paragraph.

19. Defendant denies the allegations as stated in Paragraph 19 of the Complaint and demands strict proof thereof. Furthermore, on July 22, 2020, Michael Gaw provided the first page and executed signature page of the Assignment and Assumption Agreement dated July 17, 2020 which clearly states CareNation entered into an Asset Purchase Agreement with Capstone Pediatrics, PLLC on July 8, 2020.

20. For answer to Paragraph 20 of the Complaint, CareNation admits that counsel of record for CDS contacted prior counsel for CareNation prior to the latter's withdrawal. CareNation further admits that the purpose of that contact was to address withdrawals from the Operating Account. CareNation denies the allegations contained in Paragraph 20 of the Complaint to the extent they are inconsistent with this paragraph.

21. Defendant denies the allegations as stated in Paragraph 21 of the Complaint, Defendant states as follows. Defendant denies the allegations related to CareNation's "improperly exercising control" over the DIP Accounts. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 21 of the Complaint, specifically including the actual "writing" referred to therein, which was not attached to the

Complaint.

22. Defendant denies the allegations as stated in Paragraph 22 of the Complaint, and further states as follows. CareNation commenced withdrawals from the Operating Account for the express purpose of funding operating expenses and payroll obligations from revenues generated by services CareNation rendered after the execution of the APA. CareNation did so with the express consent of the CRO, and at the instruction of the CRO, until the entry of a Preliminary Injunction in this matter. CDS was not, and is not, entitled to all funds CareNation withdrew from the Operating Account. A significant portion (if not significantly all) of the funds withdrawn by CareNation were proceeds of post-sale receivables and not subject to any security interest or other priority interest held by CDS as a result of the DIP Facility and the DIP Financing Orders.

### III. ANSWER TO CAUSES OF ACTION

**Count 1 – Conversion.**

23. Defendant hereby incorporates Paragraphs 1 through 22 of this Answer as if fully restated herein.

24. Defendant denies the allegations as stated in Paragraph 24 of the Complaint and demands strict proof thereof.

25. Defendant denies the allegations contained in Paragraph 25 of the Complaint and demands strict proof thereof.

**Count II – Tortious Interference With Contract/Existing Business Relations.**

26. Defendant hereby incorporates Paragraphs 1 through 25 of this Answer as if fully restated herein.

27. For answer to Paragraph 27 of the Complaint, CareNation refers to the DIP Facility and

DIP Financing Orders for their true meanings and effects, and otherwise denies the allegations contained in Paragraph 27 of the Complaint.

28. Defendant denies the allegations contained in Paragraph 28 of the Complaint, and requests a more definite statement as to how, when and by what means "CareNation was aware of the DIP Financing Orders, and the terms and conditions of the DIP Facility approved thereby."

29. CareNation denies the allegations contained in Paragraph 29 of the Complaint, and further states that CareNation's withdrawals from the Operating Account were intended to recover post-sale receivables and not subject to any security interest or other priority interest held by CDS as a result of the DIP Facility and the DIP Financing Orders. Such withdrawals were further intended to meet operating expenses and payroll obligations to ensure continuation of medical services for tens of thousands of pediatric patients in Middle Tennessee.

30. Defendant denies the allegations contained in Paragraph 30 of the Complaint and demands strict proof thereof.

31. Defendant denies the allegations contained in Paragraph 31 of the Complaint and demands strict proof thereof. Defendant further states that the Debtor, by and through the CRO, was aware of and consented to any and all withdrawals Defendant made from the DIP Accounts, and the purposes of such withdrawals.

32. Defendant denies the allegations contained in Paragraph 32 of the Complaint and demands strict proof thereof.

33. Defendant denies the allegations contained in Paragraph 33 of the Complaint and demands strict proof thereof.

34. Defendant denies the allegations contained in Paragraph 34 of the Complaint and

demands strict proof thereof.

**Count III.  Violation of Tenn. Code Ann. § 47-50-109.**

35. Defendant hereby incorporates Paragraphs 1 through 34 of this Answer as if fully restated herein.

36. Defendant denies the allegations contained in Paragraph 36 of the Complaint, which constitute conclusions of law.

37. Defendant denies the allegations contained in Paragraph 37 of the Complaint and demands strict proof thereof.

38. Defendant denies the allegations contained in Paragraph 38 of the Complaint and demands strict proof thereof.

39. Defendant denies the allegations contained in Paragraph 39 of the Complaint and demands strict proof thereof.

**Count IV – Breach of Contract.**

40. Defendant hereby incorporates Paragraphs 1 through 39 of the Answer as if fully restated herein.

41. Defendant denies the allegations contained in Paragraph 41 of the Complaint, which constitute conclusions of law.

42. For answer to Paragraph 42 of the Complaint, Defendant refers to the APA for its true meaning and effect, and otherwise denies the allegations contained in Paragraph 42 of the Complaint.

43. Defendant denies the allegations contained in Paragraph 43 of the Complaint and demands strict proof thereof.

**Count V – Injunctive Relief.**

44. Defendant hereby incorporates Paragraphs 1 through 43 of the Answer as if fully restated herein.

45. For answer to Paragraph 45 of the Complaint, Defendant refers to the DIP Facility for its true meaning and effect, and otherwise denies the allegations contained in Paragraph 42 of the Complaint.

46. Defendant denies the allegations contained in Paragraph 46 of the Complaint, demands strict proof thereof, and further moves to STRIKE the scandalous allegations characterizing CareNation's conduct as "nefarious, bad faith actions" pursuant to Fed. R. Civ. P. 8(f)(2).

47. Defendant denies the allegations and prayer for injunctive relief contained in Paragraph 47 of the Complaint.

**Response to Prayer for Relief**

For response to the prayer for relief contained on page 11 of the Complaint, CareNation denies that the Plaintiff is entitled to any relief whatsoever.

**Denial of Allegations not Specifically Admitted**

Unless specifically admitted by CareNation in the foregoing paragraphs to this Answer herein, all other allegations not otherwise addressed therein are hereby **DENIED.**

## FIRST DEFENSE

The Complaint fails to state a claim upon which relief may be granted.

## SECOND DEFENSE

The Complaint must be dismissed for failure to name or otherwise join indispensable parties, i.e., the Debtor, the CRO and the Turnaround Advisory Firm.

## THIRD DEFENSE

CDS lacks standing to assert a cause of action for breach of contract against CareNation.

## FOURTH DEFENSE

CDS lacks privity of contract with CareNation.

## FIFTH DEFENSE

CDS is barred from asserting causes of action against CareNation in accordance with the defense of unclean hands.

## SIXTH DEFENSE

CDS is barred from asserting causes of action against CareNation in accordance with the doctrines of estoppel and equitable estoppel.

## SEVENTH DEFENSE

CareNation acted in good faith and reasonably relied on the instructions of the CRO and/or the Turnaround Advisory Firm with regard to any transactions involving the DIP Accounts.

## EIGHTH DEFENSE

CareNation is entitled to a credit or offset against an award of damages to CDS in an amount equal to all proceeds of accounts receivable for services rendered by CareNation after the execution of the APA that were improperly converted by CDS in "sweeps" of the DIP Accounts CDS conducted in excess of its rights under the DIP Facility and DIP Financing Orders.

## NINETH DEFENSE

The Plaintiff is not entitled to recover punitive or special damages under any

circumstances and has failed to allege facts sufficient to state a claim for punitive or special damages under any theory of recovery. Moreover, the conduct complained of by the Plaintiff, if performed or carried out, was performed or carried out in good faith based upon reasonable grounds for believing that such conduct was not in violation of law, and therefore, the Plaintiff fails to state a claim for punitive damages.

## TENTH DEFENSE

CDS has failed to mitigate its damages in this matter.

## ELEVENTH DEFENSE

Defendant hereby reserves the right to supplement its defenses based upon information obtained through discovery.

**WHEREFORE,** Defendant America Cares Trust, Inc. d/b/a CareNation respectfully prays that the Complaint be dismissed with prejudice, that the Plaintiff have and recover nothing under such Complaint with costs taxed to the Plaintiff, for which execution may issue, if necessary, and that this Court award such other and further relief to CareNation as this Court deems proper.

*The rest of this page is intentionally left blank.*

# COUNTERCLAIM

For its Counterclaim against Plaintiff, CDS Business Services, Inc d/b/a Newtek Business Credit ("**CDS**") the Defendant America Cares Trust, Inc. d/b/a CareNation ("**CareNation**"), by and through the undersigned counsel, states as follows:

## I. INCORPORATION OF ANSWER

48. The Defendant hereby incorporates Paragraphs 1 through 47 of his Answer as if fully restated herein.

## II. PARTIES

49. CareNation is a Tennessee nonprofit corporation formed in September 2009. Since the execution of the APA, CareNation has operated the former practice of Debtor as Capstone Pediatrics, a division of CareNation ("**Capstone Division**"). All employees are treated as employees of the Capstone Division. Since execution of the APA and approval of the Asset Sale Order, the Capstone Division has continued to provide pediatric medical services on a not-for-profit basis. Capstone Division currently employs 15 medical professionals, including board certified pediatricians and pediatric nurse practitioners. Capstone Division also has a hospitalist program, with two physician hospitalists and two pediatric nurse practitioner hospitalists. Capstone Division currently provides primary pediatric care for a patient base comprised of approximately 25,000 to 35,000 patients in Middle Tennessee. (Case No. 3:18-bk-1971 at Docket Entry No. 8 at p. 4 ¶ 14.) Capstone Division's areas of specialty include Developmental-Behavioral Pediatrics, Audiology-Diagnostics and Behavioral Health. Capstone Division's "payor mix" includes TennCare, which provides insurance coverage to a larger number of

Capstone Division's patients. Consequently, Capstone Division provides care to indigent patients who, although TennCare beneficiaries, have limited options for pediatric care, as many pediatric practices do not accept TennCare patients.

50. On information and belief, CDS is a Delaware corporation with principal offices in West Hempstead, New York.

### III. JURISDICTION AND VENUE

51. This court may exercise personal jurisdiction over CDS because, by virtue of the DIP Facility and DIP Financing Orders previously entered into and approved by this Court, and by filing the current action, it expressly consented to the jurisdiction of this Court to resolve any disputes related to the transactions at issue in this matter.

52. This Court has original subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334(b).

53. Venue is proper in this court pursuant to 28 U.S.C. § 1409(a).

54. This case is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O).

### IV. ADDITIONAL FACTS

55. Pursuant to the terms of the DIP Facility, and the approval of the Account and Cash Management Motion on April 4, 2019, CDS was granted the right to conduct automatic daily sweeps of the Operating Account. Upon acquisition of the assets of the Debtor, CareNation made certain disbursements from the DIP Accounts as part of the continuing operations of its medical practice. However, as conceded by CDS, Capstone Division also "deposited the proceeds of [Capstone Division] accounts receivable in to the Carve-Out Account and paying expenses of [Capstone Division] from monies deposited into the Carve-Out Account." (Doc. 4 at p. 6 ¶ 13.)

56. In addition to the accounts receivable proceeds mentioned hereinabove, Capstone Division also deposited into the Carve-Out Account the proceeds of a certain loan it received from Bank of America pursuant to the "Paycheck Protection Program" in the amount of $636,386.00 (the "**PPP Loan**"). Capstone Division took out the PPP Loan to fund essential payroll and approved operational costs in the wake of the economic crisis caused by the COVID-19 Pandemic. Capstone Division took out the PPP Loan address its prospective economic needs, not to finance the Debtor's estate or otherwise satisfy any amounts due and owing to CDS by virtue of the DIP Facility.

57. At the time of the filing of CDS' Motion for Preliminary Injunction on September 11, 2020, the DIP Accounts contained certain proceeds that represent cash assets of CareNation earned after the entry of the Sale Order. At the time the Preliminary Injunction was issued on September 18, 2020, CDS had no right, title or interest in the proceeds of the PPP Loan.

58. Capstone Division's operations depend greatly on an influx of payments on TennCare medical claims, which are paid by the Center for Medicare and Medicaid Services (**CMS**). CareNation has been advised that, as a successor provider to Debtor, CMS will need approximately two (2) to four (4) months to process TennCare payments on CareNation's outstanding claims. In the interim, CareNation has relied heavily on payments received from other providers and "self-pay" patients within its "payor mix," as well as the proceeds of the PPP Loan, to meet its operating expenses, including payroll for its medical professionals and staff.

59. Since entry of the Preliminary Injunction in this matter, CareNation has conducted its own accounting of DIP Account transactions since the APA was executed. CareNation estimates that, between July 20, 2020 and August 10, 2020, CDS collected approximately $117,832.58 from automatic daily sweeps from the Operating Account and/or other DIP accounts.

{02152833.3 }  14
Case 3:19-bk-01971    Doc 308    Filed 12/18/20    Entered 12/18/20 12:17:54    Desc Main
Document    Page 14 of 19

CareNation further estimates that CDS is entitled to only approximately $78,098.70 of the funds it actually swept.

## V. THEORIES OF RECOVERY

### Count I – Declaratory Relief.

60. The Defendant hereby incorporates Paragraphs 1 through 59 of this Answer and Counterclaim as if fully restated herein.

61. After the execution of the APA, CDS collected funds from the DIP Accounts that exceeded the amounts to which CDS was entitled under the DIP Facility and DIP Financing Orders. Those excess funds were, and remain, due and owing to CareNation.

62. **WHEREFORE,** CareNation seeks declaratory relief pursuant to Tenn. Code Ann. §§29-14-103 to 104:

   a. That CDS collected an amount not less than $117,832.58 from automatic daily sweeps from the Operating Account and/or other DIP Accounts;

   b. That the DIP Facility and DIP Financing Orders entitled CDS to not more than $78,000.00 of the funds it actually swept from the Operating Account and/or other DIP Accounts; and

   c. That CDS has a right to recoupment of all funds swept by CDS in excess of the amounts to which it was entitled under the DIP Facility and DIP Financing Orders.

### Count II – Conversion.

63. The Defendant hereby incorporates Paragraphs 1 through 62 of this Answer and Counterclaim as if Fully restated herein.

64. By improperly sweeping funds from the DIP Accounts in excess of the amounts to

which it was entitled under the DIP Facility and Dip Financing Orders, CDS has claimed funds due and owing to CareNation which are not subject to CDS' "properly perfected senior security interest and to which it is entitled to payment via the standing sweep order approved by the DIP Financing Orders." (Doc. 1 at ¶ 24.) CDS knew or otherwise should have known of these facts at the time it filed this suit and applied for temporary injunctive relief. CDS has therefore improperly and knowingly exercised control over, and has appropriated to its use and benefit, the property of CareNation.

65. To date, CareNation has been directly harmed by CDS' conversion in an amount not less than $39,733.88. The damages to CareNation continue to accrue daily as the Capstone Division continues to be deprived of operating funds necessary for the provision of primary pediatric care to tens of thousands of patients.

66. **WHEREFORE,** CDS is liable to CareNation for Conversion.

## Count III – Unjust Enrichment.

67. The Defendant hereby incorporates Paragraphs 1 through 66 of this Answer and Counterclaim as if fully restated herein.

68. As stated more fully hereinabove, CDS has claimed funds due and owing to CareNation which are not subject to CDS' "properly perfected senior security interest and to which it is entitled to payment via the standing sweep order approved by the DIP Financing Orders." (Doc. 1 at ¶ 24.) It would be inequitable for CDS to retain the unjust benefit of funds that are the property of CareNation, solely by virtue of the automatic daily sweep authority granted to CDS under the DIP Facility and DIP Financing Orders. Thus, CDS has been, and remains, unjustly enriched by funds due and owing to CareNation, and CareNation is entitled to recover the value of those funds to which it was, and remains, entitled.

69. **WHEREFORE,** CDS is liable to CareNation for unjust enrichment arising from its automatic daily sweeps of funds due and owing to CareNation from the DIP Accounts.

## PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED,** Defendant, America Cares Trust, Inc. d/b/a CareNation prays for the following relief:

1. That, if necessary, proper process issue requiring the Plaintiff, CDS Business Services, Inc. d/b/a Newtek Business Credit, to respond to the Counterclaim within the time prescribed by law.

2. That this Court award Defendant declaratory relief pursuant to Tenn. Code Ann. §§ 29-14-103 to 104:

    a. That CDS collected an amount not less than $117,832.58 from automatic daily sweeps from the Operating Account and/or other DIP Accounts;

    b. That the DIP Facility and DIP Financing Orders entitled CDS to not more than $78,000.00 of the funds it actually swept from the Operating Account and/or other DIP Accounts; and

    c. That CDS has a right to recoupment of all funds swept by CDS in excess of the amounts to which it was entitled under the DIP Facility and DIP Financing Orders.

3. That CareNation be awarded compensatory damages in an amount not less than $39,733.88, plus prejudgment and post judgment interest, in addition to any and all other consequential, special, and punitive damages to which CareNation may be entitled by law.

4. That all court costs and discretionary costs in this cause be taxed to the Plaintiff,

CDS Business Services, Inc. d/b/a Newtek Business Credit, for which execution may issue, if necessary.

5. That this Court award CareNation such other and further relief as this Court deems necessary and proper.

<div style="margin-left: 50%;">

Respectfully submitted,

**BONE McALLESTER NORTON PLLC**

*/s/ William J. Haynes, III*
Sam J. McAllester III, #03461
William J. Haynes III, #17398
511 Union Street, Suite 1600
Nashville, Tennessee 37219
(615) 238-6300 Phone
(615) 238-6301 Facsimile
Email: smcallester@bonelaw.com
       whaynes@bonelaw.com

*Attorney for America Cares Trust, d/b/a CareNation*

</div>

# CERTIFICATE OF SERVICE

      I hereby certify that a true and correct copy of the foregoing was filed electronically on December 18, 2020. Notice of this filing was sent by operation of the Court's electronic filing system to all those parties specifically requesting electronic service and as indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system. In addition, notice was sent in the manner set forth in section 3, above.

    Daniel H. Puryear
    **Puryear Law Group PLLC**
    104 Woodmont Boulevard, Suite 201
    Nashville, TN 37205
    *Counsel for the Plaintiff,*
    *CDS Business Services, Inc.*
    *d/b/a Newtek Business Credit*

    David W. Houston IV
    **Burr & Forman LLP**
    222 Second Avenue South, Suite 2000
    Nashville, TN 37201
    dhouston@burr.com
    *Counsel for Capstone Pediatrics, PLLC*

    Daniel Fleming
    **Wong Fleming**
    821 Alexander Road, Suite 200
    Princeton, NJ 08540
    dfleming@wongfleming.com
    *Counsel for Bank of America, NA*

    Megan Seliber
    **Office of the U.S. Trustee, Trial Attorney**
    318 Customs House, 701 Broadway
    Nashville, TN 37203
    megan.seliber@usdoj.com
    *Counsel for the United States Trustee*

    Michael Gigandet
    **Law Office of Michael Gigandet**
    208 Centre Street
    Pleasant View, Tennessee 37146
    michael@mgigandet.com
    *Chapter 7 Trustee*

                                    */s/William J. Haynes, III*
                                        William J. Haynes, III